# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JEFFERY LYNN BORDEN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | |
| | ) | **2:04-CV-1335-VEH-TMP** |
| **RICHARD ALLEN, Commissioner** | ) | |
| **of the Alabama Department of** | ) | |
| **Corrections,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OF OPINION

This action seeks *habeas corpus* relief with respect to petitioner Jeffery Lynn Borden's ("Borden") state court conviction and death sentence on a charge of capital murder.  *See* 28 U.S.C. § 2254.

## PROCEDURAL HISTORY

On September 14, 1995, Borden was convicted on Count I of an indictment charging him with the capital offense of murder wherein two or more persons were murdered by one act or pursuant to one scheme or course of conduct, as set out in Ala. Code  § 13A-5-40(a)(10) (1975).[1]  That afternoon, the court convened the

---

[1]  Borden was charged with two counts of capital murder.  In addition to being found guilty of Count I, he also was found guilty of the lesser-included offense of non-capital intentional murder as to Count II of the indictment.  However, because Borden's Count II conviction was vacated on

penalty phase of trial, and the next day the jury returned with a 10-2 recommendation that Borden be sentenced to death.

At the sentencing hearing held on November 13, 1995, no additional evidence was presented and the trial court sentenced Borden to death.  (R.  Vol. 7, p. 1200).[2]

_____

direct appeal, it is not at issue in the present petition, and no further discussion is devoted to it here, except in this procedural history given by the Alabama Supreme Court on direct appeal:

> Count I of the indictment charged Borden with the capital offense of murder wherein two or more persons are murdered by one act or pursuant to one scheme or course of conduct.  Ala. Code 1975, § 13A-5-40(a)(10).  Count II of the indictment charged Borden with the capital offense of murder committed by or through the use of a deadly weapon fired from outside a dwelling while the victim was inside the dwelling.  Ala. Code 1975, § 13A-5-40(a)(16).  The jury found Borden guilty of capital murder, as charged in Count I of the indictment, and guilty of intentional murder, a lesser included offense of the capital murder charge of Count II of the indictment.  See Ala. Code 1975, § 13A-6-2(a)(1).  Borden was sentenced to death for the capital murder conviction under Count I of the indictment and to life imprisonment for the intentional murder conviction under Count II of the indictment.  The Court of Criminal Appeals affirmed the conviction as to the capital murder and the corresponding sentence in Count I, but reversed the conviction as to the intentional murder and the corresponding sentence in Count II and remanded the case to the trial court with directions to vacate its judgment as to the intentional murder conviction under Count II.

*Ex parte Borden*, 711 So. 2d 506 (Ala. 1998).

[2] Reference to state court records and transcript excerpts in this opinion are identified in the following manner: "(R. Vol _____ ) " refers to the entire record on direct appeal, and "(Rule 32 R. Vol. _____)" refers to the entire post-conviction record, with the volume numbers being those designated by respondent's submission.  Where helpful, tab numbers also are used to assist the reader, particularly since the page numbers relied on by this court for citation purposes, due to the state of the record, are not always found in the upper right corner of the document referenced.

The court is aware that on direct and collateral review the record was supplemented for various reasons, including the need to compile a complete record and to take into account remand and return proceedings.  However, since there are numerous issues addressed in the state court (and documents associated therewith) that are immaterial to the present petition, there is no need to encumber this opinion with a confusing array of other complicated references.

In a written sentencing order dated September 26, 1996, the trial court identified one aggravating circumstance and two statutory mitigating circumstances, but found that "the aggravating circumstance ... outweighs the mitigating circumstances noted and the jury's 10 to 2 recommendation for death is the appropriate sentence." (R. Vol. 7, pp. 12-14).

The Alabama Court of Criminal Appeals affirmed Borden's capital conviction and death sentence on June 20, 1997. *Borden v. State*, 711 So. 2d 498 (Ala. Crim. App. 1997). The Alabama Supreme Court affirmed this conviction and sentence on January 23, 1998. *Ex Parte Borden*, 711 So. 2d 506 (Ala. 1998). After examining the *certiorari* petition and accompanying briefs, the Alabama Supreme Court approved the appellate court's resolution of the issues. *Id.* The Court also found no plain error after an "exhaustive" review of the entire record. *Id.*

---

Another reason this reference manner is chosen is because Borden asserts that many documents from the state record, as compiled by respondent for *habeas* review, are missing simply because they are not recorded on the respondent's 'Habeas Checklist,' a document filed along with 14 volumes of state court records. After a careful reading of over 400 pages of exhibits that Borden claims are missing records (*see* Doc. 26, Exhibits 1-34), and comparing them to the State's fourteen-volume submission purporting to be the record on direct and collateral review, this court has come to the conclusion that almost all of the documents about which Borden complains can been found in Volumes 9-11 of the State's submission. Admittedly, the performance of the clerks entrusted at various levels of the state proceedings to compile, organize, and certify the record was not perfect. However, the fact remains that almost all of the documents Borden complains about have been submitted. Additionally, those documents *not* included in the State's compilation of the record do not contain information material or relevant to any disputed issue in the *habeas* petition. Thus, there is no need to cross-reference Borden's exhibits with the State's submission, nor is there a need to unravel and revamp the State's rendition of the record in a way that makes better organizational sense.

The petition for a writ of *certiorari* was denied by the United States Supreme Court on October 5, 1998. *Borden v. Alabama*, 525 U.S. 845 (1998).

On August 30, 1999, Borden filed a Petition for Relief from Judgment Pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. (Rule 32 R. Vol. 9, Tab. 37, pp. 26-54). On October 5, 1999, the State of Alabama filed an answer to the petition. (Rule 32 R. Vol. 9, Tab. 38, pp. 115-60). Three days later, on October 8, 1999, the State filed separate Motions for Partial Dismissal based upon Rules 32.2(a) and 32.6(b) of the Alabama Rules of Criminal Procedure. (Rule 32 R. Vol. 9, pp. 161-66 & 180-90, respectively).

On November 1, 1999, Borden filed a response to the State's Motions for Dismissal. (Rule 32 R. Vol. 9-10, pp. 199-207). On November 15, 1999, Borden filed a Motion for Discovery to obtain certain institutional records pertaining to his medical and mental health. (Rule 32 R. Vol. 9, pp. 191-98).

Six months later, on May 15, 2000, the circuit court, in separate orders, granted the State's motions for partial dismissal. (Rule 32 R. Vol. 9, pp. 167-75 and 176-79, respectively). As a result, in one order, all of Borden's ineffective assistance of counsel claims and a *Brady* claim were dismissed pursuant to Rule 32.6(b)[3] of the

---

[3] Alabama Rule of Criminal Procedure 32.6(b) requires "[t]he petition [to] contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of the grounds. A bare allegation that a constitutional right has been violated and mere

4

Alabama Rules of Criminal Procedure.  (Rule 32 R. Vol. 9,  pp. 167-75).  However, the last paragraph of that order gave Borden 30 days to amend the petition in order to comply with the rule.  (*Id.* at 174).  Additionally, by way of minute entry dated May 31, 2000, the court again granted Borden "30 days [to] respon[d] or to amend [the] petition. . . ." (Rule 32 R. Vol. 9,  p. 15).  In the second dismissal order, the trial court dismissed Borden's remaining claims pursuant to Rule 32.2(a)(2), (3) and/or (5)[4] of the Alabama Rules of Criminal Procedure.

On September 20, 2000[5], Borden's counsel filed an amended Rule 32 petition. (Rule 32 R. Vol. 9, Tab. 39, pp. 57-94).  On September 22, 2000, the circuit court granted Borden discovery of Alabama Department of Corrections' records and prosecution files.   (Rule 32 R. Vol. 10, pp. 221-23).

On October 24, 2000, the State of Alabama again filed an answer to the amended petition.  (Rule 32 R. Vol. 10, Tab. 40, pp. 4-47).  On the same date, the

---

conclusions of law shall not be sufficient to warrant any further proceedings."

[4] This is a preclusionary rule that prevents collateral examination of claims that either were or could have been raised and examined at trial or on direct appeal of the conviction.  It is noted that two of Borden's claims that were dismissed pursuant to Rule 32.6(b) were also dismissed pursuant to Rule 32.2(a)(3) and (5).  Those claims are: (1) that trial counsel were ineffective because of grossly inadequate compensation, and (2) a *Brady* claim.  *Id.* at 176 & 179.

[5] Borden alleges an amended petition was not filed within the time ordered because counsel was not given notice of the order to amend and was unaware of its existence until several months later.  (Doc. 1, p. 5).  However, the trial court did not penalize him for filing outside of the time limitation.

State also filed a separate motion for partial dismissal pursuant to Rule 32.6(b) of the

Alabama Rules of Criminal Procedure.  *Id.* at 48-55.   Borden responded to this

motion on November 9, 2000, and argued that his ineffective-assistance claims, as

pled in the amended petition, were sufficiently specific and thus in compliance with

Rule 32.6(b).  (Rule 32 R. Vol. 10,  pp. 224-28).

On February 28, 2001, the trial court granted the State's motion, and then

proceeded to dismiss the *entire* petition in the following minute entry:

> The Court having considered the pleadings of the parties and the
> record of the Court grants the State's Motion to Dismiss all of the
> petitioner's claims alleging ineffective assistance of counsel at the guilt
> phase and the penalty phase of his trial on the following ground.
>
> 1.  The Court tried the petitioner's case and finds that he has
> failed to meet his burden of proof regarding allegations of ineffective
> assistance of counsel.
>
> This Court has also reviewed the District Attorney's file provided
> by the State and finds no discoverable material; however, the Court has
> provided the petitioner with the Grand Jury notes in their file.
>
> The petition for relief from judgment (Rule 32) is dismissed.

(Rule 32 R. Vol. 9, p. 19).

On March 22, 2002, the Alabama Court of Criminal Appeals remanded the case

to the Jefferson County Circuit Court because it found the trial court's order to be

deficient for several reasons.  *Borden v. State*, 891 So.2d 393 (Ala. Crim. App.

6

2002).  First, the appellate court held that the trial court erroneously found that Borden had failed to *prove* his claims at the pleading stage of the proceedings, when in fact, Borden's only burden at that stage was to sufficiently *plead* his claims.  *Id.* at 395-97.  The appellate court also was perplexed that the trial court dismissed the entire petition, when the prosecution had moved only for dismissal of some of Borden's claims.  *Id.* at 396.  Finally, the court found that the trial court's order failed to specifically address all of Borden's claims in detail.  *Id.* at 396-97.  The trial court was instructed to

> determine whether an evidentiary hearing should be held on any of Borden's claims. . . .  If an evidentiary hearing is held, the trial court shall enter specific written findings with regard to each of the claims presented at the hearing.  The trial court should submit a specific written order addressing any claims that are dismissed without a hearing. . . . .

*Id.* at 397.

While in the circuit court on remand, counsel for Borden filed a second amended Rule 32 petition and a motion requesting that licensed health care officials be given access to Borden to conduct a mental health evaluation.  (Rule 32 R. Vol. 11, Tab 41, pp. 11-86).  The State moved to dismiss the second amended petition on the ground that the circuit court had no jurisdiction to grant leave to amend the petition as the remand was limited to the instructions given by the appellate court. *Id.* at Tab 42, pp. 88-93.

7

On August 27, 2002, the circuit court granted, by minute entry, the State's motion to dismiss Borden's second amended Rule 32 petition. (Rule 32 R. Vol. 10, Tab. 40, p. 2 of a docket summary sheet).  The court also entered an Order on Remand in which it denied the first amended Rule 32 petition in its entirety.  (Rule 32 R. Vol. 14, Tab. 59, pp. 1-49).  There was no ruling on the request for mental health professionals to gain access to Borden.

On August 22, 2003, the Alabama Court of Criminal Appeals affirmed the trial court's decisions in an unpublished opinion. *Borden v. State*, CR-00-1379.  (Rule 32 R. Vol. 14, Tab 60, pp. 1-39).  As part of that affirmation, the appellate court found that the trial court properly dismissed Borden's second amended Rule 32 petition. *Id.* at 2-3.  An application for rehearing was denied on November 14, 2003.  On May 28, 2004, the Alabama Supreme Court denied *certiorari* review.

On June 25, 2004, the current petition seeking relief from judgment pursuant to 28 U.S.C. § 2254 was filed in this court.

## FACTUAL BACKGROUND

In its decision on direct appeal, the Alabama Court of Criminal Appeals set out a concise rendition of the facts in this case, as follows:

> The evidence tended to show that on Christmas Eve of 1993, there was a large family gathering at the home of Juanita and Roland Harris in Gardendale.  At around 6:45 p.m., the appellant, who was married to but

8

legally separated from the Harris's daughter, Cheryl Borden, arrived at the Harris's residence with his and Cheryl's three children. The children, who had continued to live with their mother in Gardendale after her separation from the appellant, had spent the previous week visiting the appellant in Huntsville — where the appellant was then residing. The appellant was to return the children to Gardendale in time to spend Christmas with their mother. When the children arrived at their grandparents' house, their grandfather, Roland Harris, came outside to help unload their clothes and Christmas gifts from the appellant's car. Shortly thereafter, the children's mother, Cheryl Borden, arrived at her parents' house and began to help her children move some of their things from the appellant's car to her car. In front of the children, the appellant then took out [a] .380 caliber semiautomatic pistol and shot Cheryl Borden in the back of her head. Cheryl fell to the ground. Her father, Roland Harris, who was also present in the front yard, began to run toward the front door of the house yelling for someone to telephone 911. The appellant chased Harris and fired several shots toward him and in the direction of the house. Harris made it into the house as the appellant continued to shoot at him from the yard. One of the bullets fired from the appellant's gun struck and shattered a glass storm door at the front entrance of the house. Once inside the house, Harris collapsed on the floor. At some point during the shooting, a bullet had struck Harris in his back. As the appellant shot at Harris, the three children ran through the garage of the residence and came into the house through a back entrance, screaming that their father had shot their mother and that she was dead. Several other family members were inside the house during the incident and scrambled to take cover from the gunfire. Cheryl Borden and her father, Roland Harris, were transported to a local hospital, where they died later that evening. The appellant was arrested and charged with their murders.

The pistol used in the shooting incident was recovered at the crime scene. Testimony at trial indicated that the pistol held a total of eight rounds of ammunition and that when it was recovered, it contained one unfired cartridge. There was evidence that at least some of the bullets fired by the appellant entered the living area of the house. [FN1]

> FN1. Under Count I of the indictment returned against the appellant, the appellant was charged with murdering Cheryl Borden and Roland Harris by one act or pursuant to one scheme or course of conduct. § 13A-5-40(a)(10). Under Count II of the indictment, the appellant was charged with murdering Roland Harris by or through the use of a deadly weapon fired from outside a dwelling while Harris was inside the dwelling. § 13A-5-40(a)(16).

*Borden v. State,* 711 So. 2d 498, 500-01 (Ala. Crim. App. 1997).

In its written sentencing Order, the trial court also set out its rendition of the facts, particularly facts regarding Borden's medical and mental health that are material and relevant to Borden's insanity defense at the guilt phase of trial and two statutory mitigating factors at the penalty and sentencing phase of trial. (R. Vol 7, Tab. 27, (sentencing order pp. 1-6)). The court finds it imperative to set out that portion of the sentencing order containing this information because Borden's mental state, and counsel's failure to properly investigate, develop, and present it, are at the heart of the majority of Borden's ineffective-assistance-of-counsel claims in the *habeas* petition before this court. The sentencing order reads, in material part:

## COURT'S WRITTEN SENTENCING ORDER

The Court makes the following finding of facts summarizing the crime and the defendant's participation in it.

. . . .

**DEFENDANT'S CASE**:

Eloise Borden, the defendant's mother gave an extensive history of the defendant's medical and mental problems that began with the death of defendant's brother in an auto accident in 1971.

Defendant had a long history of severe depression and hospitalization and was still being treated on an outpatient basis at the time of the incident.

Dr. Loeb, a clinical psychologist, examined and tested the defendant in February, 1995.  As a result of this examination he opined that the defendant suffered from a moderate or moderately severe psychiatric disorder.  He also opined that the defendant knew right from wrong and was not suffering from an inability to do what was right as opposed to what was wrong because of some uncontrollable urge or impulse.

**STATE'S CASE IN REBUTTAL**:

Dr. Rosencrans, a Certified Forensic Psychologist, examined defendant in August, 1996 and found him competent to aid in his defense.  In his opinion the defendant knew right from wrong and was also not operating under an irresistible impulse or psychotic at the time of the incident.

Pursuant to § 13A-5-47(d) the court makes the following findings concerning aggravating and mitigating circumstances.

### § 13A-5-49 Aggravating Circumstances:

. . . .

3.    The defendant knowingly created a great risk of death to many persons.  This circumstance does exist as evidenced by the following undisputed facts.  When the defendant intentionally

killed Roland Harris, the defendant was standing at the bottom of the front steps repeatedly firing his semi-automatic pistol through the front door of the house.  Immediately inside the house, in the direct path of the projectiles were not only the deceased, Roland Harris, but several family members and their friends.  At least three (3) projectiles were recovered from inside of the house where people were located at the times of the shooting.  Only one round remained in the defendant's eight shot pistol after the incident.

. . . .

### § 13A-5-51 Mitigating Circumstances - Generally:

1.    The defendant has no significant history of prior criminal activity.

      Does exist.

2.    The capital offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.

      Does exist.

. . . .

6.    The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired.

      Does not exist.

See Dr. Rosencrans's testimony at page 905 - pages 945-940 of the transcript where he opined based on his examination of the defendant that the defendant could distinguish between right and wrong and that he was not operating under an irresistible impulse at the time of the incident.

Also see Dr. L[o]eb's testimony at page 776 of the transcript where he said that he agreed with Dr. Rosencrans' findings.

. . . .

**§13A-5-52 Mitigating Circumstances - Inclusion of Defendant's Character, Records, etc.**

Does not exist.

Nothing from proceedings conducted before this court or the presentence report suggests a basis for § 13A-5-52 mitigation.

In conclusion, this court finds that the aggravating circumstance noted above outweighs the mitigating circumstances noted and the jury's 10 to 2 recommendation for death is the appropriate sentence.

It is the judgement and sentence of the court that Jeffrey Lynn Borden be punished by death, said execution to be conducted at such time and place set by the Supreme Court of Alabama.

*Id.*

## SUMMARY OF CLAIMS

Turning to the petition for writ of *habeas corpus* filed in this court, the following is a summary listing of the claims asserted, referenced to the paragraphs of the petition in which the claims are set out:

A.    Borden  received ineffective assistance of counsel during the **penalty** phase of his trial, in violation of his rights guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. (¶¶ 35-114 of the petition).

1.    Introduction.  (¶¶ 35-42 of the petition).

13

2.  Borden's trial counsel failed to identify, investigate, develop, prepare, and present evidence of Borden's mental illness and family and social history as mitigating factors during the penalty phase.  (¶¶ 43-65 of the petition).

3.  Trial counsel failed to present evidence from Borden's treating physicians and mental health professionals and the readily available medical records, and failed to relate that evidence to the mitigating factors during the penalty phase of the trial.  (¶¶ 66-80 of the petition).

4.  Trial counsel failed to meet their duty to adequately investigate Borden's case regarding both the readily available medical evidence and evidence concerning his family and social history.  (¶¶ 81-94 of the petition).

5.  Trial counsel failed to offer evidence that demonstrated the existence of several other mitigating factors.  (¶¶ 95-98 of the petition).

6.  Trial counsel's closing remarks in the penalty phase failed to accomplish necessary objectives in that counsel relied on a "mercy" argument, ignoring other pertinent mitigating evidence.  (¶ 99 of the petition).

7.  Trial counsel failed to object to the State's use of the aggravating factor of "Knowing Endangerment."  (¶¶ 100-01 of the petition).

8.  Trial counsel failed to object to or correct the prosecution's mischaracterization of the law and facts regarding the aggravating factor of knowing endangerment.  (¶¶ 102-05 of the petition).

9.  Trial counsel failed to offer any mitigation evidence concerning Borden's significant religious activities.  (¶¶ 106-07 of the petition).

10.     Trial counsel failed to object to or correct the prosecutor's equating of the jury's rejection of the guilt-phase insanity defense with mitigation-phase mental illness, and he failed to object to or correct the prosecutor's improper argument that the jury had already rejected the mental illness argument. (¶¶ 108-14 of the petition).

B.     Borden received ineffective assistance of counsel during the **guilt** phase of trial in violation of his rights guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. (¶¶ 115-151 of the petition).

1.     Alabama's statutory scheme for compensating attorneys appointed to represent capital defendants, as applied to Borden, violates the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. (¶¶ 116-121 of the petition).

2.     Trial counsel failed to adequately investigate the State's capital murder charge against Borden. (¶¶ 122-125 of the petition).

3.     Trial counsel failed to present necessary evidence concerning the mental state of Borden. (¶¶ 126-127 of the petition).

4.     Trial counsel failed to examine witnesses regarding, or present argument concerning, the appropriate legal standard for insanity. (¶¶ 128-129 of the petition).

5.     Trial counsel failed to inform the jury of the standard for proving Borden not guilty by reason of insanity. (No designated paragraph number).

6.     Trial counsel failed to procure necessary expert assistance. (¶ 130 of the petition).

7.     Trial counsel conducted *voir dire* in a manner that resulted in the accedence to a large number of jurors who had failed to answer any questions during *voir dire*. (¶¶ 131-133 of the petition).

15

8.     Trial counsel erroneously moved, unopposed by the prosecution and immediately granted by the court, to strike a juror who expressed an unwillingness to vote in favor of the death penalty in almost every situation.  (¶ 134 of the petition).

9.     Trial counsel failed to adequately challenge the State's investigation and presentation of the case.  (¶¶ 135-137 of the petition).

10.     Trial counsel failed to prevent or otherwise object to egregious instances of prosecutorial misconduct.  (¶¶ 138-139 of the petition).

11.     Trial counsel failed to challenge the introduction of new evidence in the prosecution's rebuttal case.  (¶¶ 140-142 of the petition).

12.     Trial counsel failed to object to the prosecution's mischaracterization of evidence during closing argument.  (¶ 143 of the petition).

13.     Trial counsel failed to adequately determine if the chain of custody of the alleged murder weapon had been broken.  (¶ 144 of the petition).

14.     Trial counsel failed to adequately examine State's witnesses with regard to their belief that the gun introduced into evidence was the gun used in commission of the crime.  (¶¶ 145-146 of the petition).

15.     Trial counsel failed to request a jury instruction for non-capital murder and for a finding of two separate, unrelated acts of intentional murder.  (¶¶ 147-149 of the petition).

16.     Trial counsel failed to object to improper jury instructions.  (No designated paragraph number).

17.    Trial counsel failed to adequately prepare Borden prior to the preparation of the pre-sentence investigation report. (¶ 150 of the petition).

18.    Trial counsel failed to seek access to the grand jury transcripts or, in the alternative, notes from the grand jury prepared by the district attorney. (¶ 151 of the petition).

19.    Trial counsel admitted during closing arguments that the State had proven its case beyond a reasonable doubt; trial counsel also stated during opening arguments that there was not a lot of dispute as to the underlying facts. (¶¶ 152-54 of the petition).

C.    Pretrial publicity made it impossible for Borden to receive a fair trial in Jefferson County. (¶¶ 155-158 of the petition).

D.    Irrelevant and prejudicial evidence was introduced at trial that denied Borden a fair trial and penalty determination. (¶¶ 159-160 of the petition).

E.    The trial court erroneously admitted items of physical evidence without establishing a chain of custody for the evidence. (¶¶ 161-164 of the petition).

F.    The prosecutor engaged in egregious misconduct, which denied Borden a fair trial and sentencing determination. (¶¶ 165-69 of the petition).

G.    The prosecution's argument violated the Eighth Amendment and state law by preventing the jury from considering relevant mitigating circumstances. (¶¶ 170-72 of the petition).

H.    Borden was denied his right to fully examine each venire member. (¶¶ 173-74 of the petition).

I.    The trial court reversibly erred when it failed to instruct the jury on the lesser-included offenses of manslaughter and intentional murder. (¶¶ 175-78 of the petition).

J.    The trial court reversibly erred when it allowed the jury to decide whether Borden should be sentenced to death notwithstanding the absence of proof as to any aggravating circumstances. (¶¶ 179-82 of the petition).

K.    The trial court reversibly erred, violating the Fifth, Eighth, and Fourteenth Amendments, when it sentenced Borden to death notwithstanding the absence of proof as to any aggravating circumstances. (¶ 183 of the petition).

L.    Alabama's capital sentencing scheme violates the Sixth and Fourteenth Amendment principles articulated in *Ring v. Arizona*, 536 U.S. 584 (2002). (¶¶ 184-86 of the petition).

M.    The death penalty constitutes cruel and unusual punishment and violates the Eighth and Fourteenth Amendments to the United States Constitution. (¶¶ 187-89 of the petition).

N.    Appellate counsel was ineffective, and this ineffectiveness resulted in the unjust and unconstitutional upholding of the death penalty and deprived petitioner of his Sixth and Fourteenth Amendment rights. (¶¶ 190-94 of the petition).

O.    The State failed to comply with its discovery obligations under *Brady v. Maryland*. (¶¶ 195-96 of the petition).

P.    The cumulative effect of all the above-listed claims of error prejudiced Borden and entitles him to a new trial and sentencing hearing. (¶ 197 of the petition).

## THE SCOPE OF *HABEAS CORPUS* REVIEW

Pursuant to 28 U.S.C. § 2254(a), a federal district court is prohibited from entertaining a petition for writ of *habeas corpus* "in behalf of a person in custody pursuant to the judgment of a State court . . ." unless the petitioner alleges "he is in

custody in violation of the Constitution or laws or treaties of the United States."  In other words, this court's review of *habeas* claims is strictly limited to federal constitutional questions.  Claims pertaining solely to questions of state law fall outside the parameters of this court's authority.  Thus, unless otherwise stated, use of the word "claim" in this opinion presupposes a claim of federal constitutional proportion.

## I.  Exhaustion and Procedural Default

Prior to seeking relief in federal court from a conviction and sentence occurring in a state court, a *habeas* petitioner is first required to present  his federal claims to the state court by exhausting all of the state's available procedures.  This includes seeking appellate review up to and through the state's court of last resort.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999).  The purpose of this requirement is to ensure that state courts are afforded the first opportunity to correct federal questions affecting the validity of state court convictions.  As explained by the Eleventh Circuit,

> In general, a federal court may not grant habeas corpus relief to a state prisoner who has not exhausted his available state remedies.  28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State. . . .").  "When the process of direct review . . . comes to an end, a presumption of finality

and legality attaches to the conviction. . . .  The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited.  Federal courts are not forums in which to relitigate state trials." *Smith v. Newsome*, 876 F.2d 1461, 1463 (11th Cir. 1989) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).

Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971) (internal quotation marks omitted).  The Supreme Court has written these words:

> The federal claim must be fairly presented to the state courts..., it is not sufficient merely that the federal habeas applicant has been through the state courts....  Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies.

*Picard*, 404 U.S. at 275, 92 S. Ct. at 512.  *See also Duncan*, 513 U.S. at 365, 115 S. Ct. at 888 ("Respondent did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment.").

Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.  "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 5-6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citations omitted).

*Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).

Moreover, if a petitioner fails to raise his federal claim to the state court at the time and in the manner dictated by the state's procedural rules, the state court can

decide the claim is not entitled to a review on the merits, *i.e.,* the claim is procedurally defaulted.  Usually, if the last state court to examine a claim explicitly finds that the claim is defaulted because the petitioner failed to follow state procedural rules, then federal review of the claim is also precluded pursuant to federal procedural default principles.  As explained by the Eleventh Circuit,

> The federal courts' authority to review state court criminal convictions pursuant to writs of habeas corpus is severely restricted when a petitioner has failed to follow applicable state procedural rules in raising a claim, that is, where the claim is procedurally defaulted. Federal review of a petitioner's claim is barred by the procedural default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, *Harris v. Reed*, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989), and that bar provides an adequate and independent state ground for denying relief. *See id.* at 262, 109 S. Ct. at 1042-43; *Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S. Ct. 1981, 1987, 100 L. Ed. 2d 575 (1988).  The doctrine serves to ensure petitioners will first seek relief in accordance with state procedures, *see Presnell v. Kemp*, 835 F.2d 1567, 1578-79 (11th Cir. 1988), *cert. denied*, 488 U.S. 1050, 109 S. Ct. 882, 102 L. Ed. 2d 1004 (1989), and to "lessen the injury to a State that results through reexamination of a state conviction on a ground that a State did not have the opportunity to address at a prior, appropriate time." *McCleskey v. Zant*, 499 U.S. 467, 111 S. Ct. 1454, 1470, 113 L. Ed. 2d 517 (1991).

*Johnson v. Singletary*, 938 F.2d 1166, 1173 (11th Cir. 1991).  Federal deference to a state court's clear finding of procedural default under its own rules is so strong that a

> ". . . state court need not fear reaching the merits of a federal claim in an *alternative* holding.  Through its very definition, the adequate and

independent state ground doctrine requires the federal court to honor a
state holding that is a sufficient basis for the state court's judgment,
even when the state court also relies on federal law." *Harris*, 489 U.S.
at 264 n. 10, 109 S. Ct. 1038 (emphasis in original). *See also Alderman
v. Zant*, 22 F.3d 1541, 1549-51 (11th Cir. (where a Georgia habeas
corpus court found that the petitioner's claims were procedurally barred
as successive, but also noted that the claims lack merit based on the
evidence, "this ruling in the alternative did not have an effect... of
blurring the clear determination by the [Georgia habeas corpus] court
that the allegations was procedurally barred"), *cert. denied*, 513 U.S.
1061, 115 S. Ct. 673, 130 L. Ed. 2d 606 (1994).

*Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999).

The Supreme Court defines an "adequate and independent" state court decision
as one "'[which] rests on a state law ground that is *independent* of the federal
question and *adequate* to support the judgment.'" *Lee v. Kemna,* 534 U.S. 362, 375
(2002) (quoting *Coleman v. Thompson,* 501 U.S. 722, 729 (1991) (emphases added)).
Whether a state procedural rule is "adequate and independent," so as to have a
preclusive effect on federal review of a claim, "'is itself a federal question.'" *Id.*
(quoting *Douglas v. Alabama*, 380 U.S. 415, 422 (1965)).  Thus, notwithstanding a
state court's determination that a claim was not presented in accordance with state
procedural rules, it is for the federal court to determine whether that finding is
sufficiently "adequate" and "independent" of federal law to merit a preclusive effect.

A state procedural rule is "independent of the federal question" when it "rests
solidly on state law grounds [that are] not intertwined with an interpretation of federal

law." *Judd v. Haley,* 250 F.3d 1308, 1313 (11th Cir. 2001) (quoting *Card v. Dugger*,

911 F.2d 1494, 1516 (11th Cir. 1990)).   To be considered "adequate," by a federal

court, the state procedural rule must be "'firmly established and regularly followed.'"

*Lee v. Kemna,* 534 U.S. at 375 (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984).

In other words, the rule must be "clear [and] closely hewn to" by the state for a

federal court to find it to be adequate.   *James v. Kentucky*, 466 U.S. at 345.   This

does not mean that the procedural rule must be applied rigidly in every instance, or

that occasional failure to do so eliminates its "adequacy."   Rather, the "adequacy"

requirement means only that the procedural rule "must not be applied in an arbitrary

or unprecedented fashion."   *Judd v. Haley* 250 F.3d at 1313.   If the rule is adequate,

federal review of a defaulted claim will be foreclosed.   If however, the rule is not

firmly established, or if it is applied in an arbitrary, unprecedented, and manifestly

unfair fashion, it is not adequate to preclude federal review.   *Card v. Dugger*, 911

F.2d at 1517.

The state procedural rules at issue in this case are Alabama Rules of Criminal

Procedure 32.2(a)(2), (3), and (5), 32.3, 32.6(b), and 32.7(b).   Borden does not

dispute that Rule 32.2 generally has been considered an adequate and independent

state procedural rule for federal preclusion purposes.   However, he argues that

Rule 32.6(b) is not entitled to the same federal deference.   (Doc. 25, pp. 26-48).

23

This court disagrees.  First, persuasive authority for finding that Rule 32.6(b) is an adequate and independent state procedural rule is found in the following excerpt from the Eleventh Circuit's unpublished opinion in *Jenkins v. Bullard*, No. 06-1046 2006 WL 3635410 at *5, (11th Cir., Dec. 13, 2006):

> Rule[]... 32.6(b) ha[s] been firmly established and regularly followed by the Alabama courts.  The Court of Criminal Appeals has consistently affirmed, as it did with Jenkins, lower court decisions that have summarily dismissed Rule 32 petitions that do not include specific facts which would entitle the petitioner to collateral relief.  *See, e.g., Shaw v. State*, 949 So.2d 184, ___ (Ala. Crim. App. 2006); *Tubbs v. State,* 931 So. 2d 66, 68 (Ala. Crim. App. 2005); *Boyd v. State*, 913 So. 2d 1113, 1126-32 (Ala. Crim. App. 2003); *Chambers v. State*, 884 So. 2d 15, 18-19 (Ala. Crim. App. 2003).[6]

Thus, the Alabama courts have recognized and accepted the established and adequate nature of Rule 32.6(b).  Insofar as the Alabama courts declined consideration of a claim on the basis of this rule, this court must consider that the claim is procedurally defaulted.

---

[6] It is also clear that Alabama courts have regularly followed and applied this requirement of Rule 32.6(b) since well before Borden's Rule 32 petition was filed in 1999.  *See Wilson v. State*, 650 So. 2d 587 (Ala. Crim. App. 1994); *Johnson v. State*, 675 So. 2d 85 (Ala. Crim. App. 1995); *McNair v. State*, 706 So. 2d 828 (Ala. Crim. App. 1997); *Bryant v. State*, 739 So. 2d 1138 (Ala. Crim. App. 1998).  The Alabama courts also have consistently applied Rule 32.6(b) in the interim, since Borden's collateral petition was filed, as can be seen in the cases cited above by the Eleventh Circuit as well as the following cases: *Duncan v. State*, 925 So. 2d 245 (Ala. Crim. App. 2005); *Thomas v. State*, 908 So. 2d 308 (Ala. Crim. App.  2004); *Taylor v. State*, 879 So. 2d 1210 (Ala. Crim. App. 2003); *Burgin v. State*, 857 So. 2d 162 (Ala. Crim. App. 2002).  Thus, the rule appears to be "firmly established and regularly followed."

Borden also argues that the Alabama trial court erred when it refused to consider his second amended petition, filed after the Alabama Court of Criminal Appeals remanded the trial court's dismissal of the first amended petition to the trial court for clarification. (Doc. 25. pp. 37-38). Borden does not argue that Rule 32.7(b) is neither firmly established nor regularly followed. Rather, he draws the court's attention to the portion of Rule 32.7(b) that allows for liberal amendments to post-conviction pleadings. He makes no mention of and takes no issue with the Alabama Court of Criminal Appeals' factual and legal findings concerning the application of the rule in his particular case in its return from remand.

In the state courts, the Alabama Court of Criminal Appeals addressed Borden's argument in this way:

> Borden argues that the circuit court erred when it dismissed a second amended petition filed subsequent to this Court's March 22, 2002, opinion remanding the cause for further proceedings. The State had moved to dismiss the second amended petition, arguing that this Court had jurisdiction over the case, and that the circuit court no longer had jurisdiction and could not entertain the second amended petition. The circuit court found that the State's motion was well taken and dismissed the second amended petition.
>
> Rule 32.7(b), Ala. R. Crim. P., provides that post-conviction pleadings may be amended "prior to entry of judgment." On February 28, 2001, the circuit court entered a judgment order dismissing the first amended petition and Borden filed a notice of appeal on April 4, 2001. The scope of our remand order included only directions to clarify that order or to conduct a hearing on the claim raised in the amended petition, if... the court deemed a hearing necessary. Consideration of a

second amended petition clearly was not within the scope of our directions on remand. Therefore, the trial court did not err when it dismissed the second amended petition.

In a case presenting similar circumstances, *Payne v. State*, 791 So. 2d 383 (Ala. Crim. App. 1999), we stated that an amended petition could not be filed after jurisdiction rested with this Court following the trial court's dismissal of a petition and filing of the notice of appeal as to that dismissal. As we said in *Payne*,

> "[B]ecause the court denied the petition and because Payne filed his notice of appeal on September 21, 1998, removing jurisdiction from the circuit court, Payne was foreclosed from amending the petition. See Rule 32.7(b), Ala. R. Crim. P. ('Amendments to pleadings may be permitted at any stage of the proceedings *prior* to entry of judgment' (emphasis added)... . That court, however, did not have jurisdiction because Payne's appeal was pending; therefore, that filing, as well as all subsequent filings, were void."

*Id.* at 394. For the reasons expressed in *Payne*, the trial court here correctly dismissed Borden's second amended petition.

To the extent Borden, in his brief on appeal, cites to and relied on allegations he raised only in the second amended petition and not in the first amended petition — the denial of which is before us for review — we note that those allegations are not properly before us, and that we will not consider those allegations in our resolution of this appeal.

*Borden v. State*, mem. op., (Vol. 14, Tab. 60, pp. 2-3). The limited nature of the

remand from the Alabama Court of Criminal Appeals precluded the trial court from

considering claims not raised in the first amended Rule 32 petition. The trial court

simply lacked jurisdiction to allow a second amended petition that raised entirely new claims.

There also are instances when the doctrines of procedural default and exhaustion intertwine.  For instance, if a petitioner's federal claim is unexhausted, then the district court will traditionally dismiss it without prejudice or stay the cause of action in order to allow the petitioner to first avail himself of his state remedies. However, "if it is clear from state law that any future attempts at exhaustion [in state court] would be futile [under the state's own procedural rules,]" the federal court can simply find that the claim is "procedurally defaulted, even absent a state court determination to that effect[.]"  *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (citing *Picard v. Connor,* 404 U.S. 270, 276 (1971), and *Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir. 1998)).

There are only two circumstances in which an otherwise valid state-law ground will not bar a federal *habeas* court from considering a constitutional claim that was procedurally defaulted in state court: (1) where the petitioner had good "cause" for not following the state procedural rule and was actually "prejudiced" by not having done so, and (2) where failure to consider the petitioner's claims will result in a "fundamental miscarriage of justice."  *See Edwards v. Carpenter*, 529 U.S. 446, 455 (2000) (Breyer, J., concurring); *see also*, *e.g.*, *Coleman v. Thompson*, 501 U.S. at 749-

50 (holding that a state procedural default "will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice  attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice") (citations and internal quotation marks omitted); *Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]here a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."); *Smith v. Murray*, 477 U.S. 527, 537 (1986) (same); *Davis v. Terry*, 465 F.3d 1249, 1252 n.4 (11th Cir. 2006) ("It would be considered a fundamental miscarriage of justice if 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'") (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (in turn quoting *Murray v. Carrier*, 477 U.S. at 496))).

## A.    The "Cause and Prejudice" Standard

As the "cause *and* prejudice" standard clearly is framed in the conjunctive, a petitioner must prove both parts. *Johnson v. Singletary*, 938 F. 2d 1166, 1175 (11th Cir. 1991) (*en ban*) ("Because [petitioner] has failed to establish one element of the cause and prejudice exception, he cannot show the exception applies.")  To show cause, a petitioner must prove that "some objective  factor external to the defense

impeded counsel's efforts" to raise the claim previously. *Murray v. Carrier*, 477 U.S.

478, 488 (1986). The Supreme Court has explained:

> Objective factors that constitute cause include "'interference by officials'" that makes compliance with the State's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." *Ibid*. In addition, constitutionally "[i]neffective assistance of counsel... is cause." *Ibid*. Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. *Id*., at 486-488, 106 S. Ct., at 2644-45.

*McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). *See also Murray v. Carrier*, 477

U.S. at 488-89 ("Ineffective assistance of counsel ... is cause for a procedural

default."); *Reed v. Ross*, 468 U.S. 1, 16 (1984) ("[W]here a constitutional claim is so

novel that its legal basis is not reasonably available to counsel, a defendant has cause

for his failure to raise the claim in accordance with applicable state procedures."). To

constitute "cause," ineffective assistance of counsel must itself be a basis for relief

in the sense that it is a violation of the Sixth Amendment right to effective counsel

and it was exhausted and not procedurally defaulted. *See Edwards v. Carpenter*, 529

U.S. 446 (2000).

Once cause is shown, a *habeas* petitioner also must prove prejudice. Such a

showing must go beyond proof "that the errors at his trial created a *possibility* of

prejudice, but that they worked to his *actual* and substantial disadvantage, infecting

his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

One assertion of "cause and prejudice" made by the petitioner in this case requires consideration; that is, that the state Rule 32 court denied him a hearing and thereby deprived him of the opportunity to prove his claims. (*See* Doc. 25, p. 33). The problem with this contention is that it ignores the nature of the procedural default found by the state courts to be a reason to deny a hearing. The state courts determined that petitioner failed to plead his claims with sufficient factual specificity under Rule 32.6(b). Without sufficient pleading of the *facts* supporting his claims, petitioner was not entitled to a hearing. In order to get a hearing, a Rule 32 petitioner must *allege* facts that, if *proven* to be true at a subsequent hearing, show him to be entitled to legal relief. Rule 32 courts are not required to accept a petitioner's conclusory assertion that facts not pled in the petition will be proven later. To do so would mean that every Rule 32 petitioner, regardless of how meritless and factually unsupported his claims may be, is entitled to a hearing simply by alleging that the facts will be shown later at the hearing. To screen petitions with no factual support, and to preserve scarce judicial resources, courts may insist that the *facts* to be proven first be alleged in the Rule 32 petition. This enables courts to determine on the pleadings themselves whether a claim is capable of being proven and, if proven,

whether it legally entitles the petitioner to relief.  Thus, the denial of a hearing was not the "cause" of petitioner's procedural default.  The default occurred in the pleading of the claims, not in the lack of a later opportunity to prove what had not adequately been alleged.

### B.    The "Fundamental Miscarriage of Justice" Standard

In a "rare," "extraordinary,"[7] and "narrow class of cases,"[8] a federal court may consider a procedurally defaulted claim in the absence of a showing of "cause" for the procedural default, if (1) a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent," *Smith v. Murray*, 477 U.S. 527, 537-38 (1986) (quoting, respectively, *Engle v. Isaac*, 456 U.S. 107, 135 (1982), and *Murray v. Carrier*, 477 U.S. at 496),[9] or if (2) the petitioner shows "by clear and convincing evidence that[,] but for a constitutional error, no reasonable juror would

---

[7] *Schlup v. Delo*, 513 U.S. 298, 321 (1995) ("To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, this Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.").

[8] *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) ("Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default.  These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.  We have described this class of cases as implicating a fundamental miscarriage of justice.") (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986)).

[9] Specifically, the *Murray v. Carrier* Court observed that, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."  477 U.S. at 496.

31

have found the petitioner eligible for the death penalty." *Schlup v. Delo*, 513 U.S. 298, 323-27 & n.44 (1995) (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)); *see also, e.g., Smith v. Murray*, 477 U.S. at 537-38.

## II.    Rules Governing *Habeas Corpus* Cases under § 2254

### A.    28 U.S.C. § 2254(d) and (e)

Even when exhaustion and procedural default are not at issue, federal review of a claim decided on the merits by a state court is constrained by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  When it was enacted, Congress significantly limited the circumstances under which a *habeas* petitioner may obtain relief.  Indeed, under AEDPA, a petitioner is entitled to relief on a federal claim only if he shows that the state court's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or that the court's rulings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) and (2).  *See also Williams v. Taylor*, 529 U.S. 362, 404 (2000); *Brown v. Payton*, 544 U.S. 133 (2005); *Miller-El v. Dretke*, 545 U.S. 231 (2005); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  "Moreover, a state court's factual determinations are presumed correct unless rebutted by clear and

32

convincing evidence." *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005)

(citing 28 U.S.C. § 2254(e)(1)).

A state court's adjudication of a claim will be sustained under § 2254(d)(1)

unless it is "contrary to" clearly established, controlling Supreme Court precedent,

or it is an "unreasonable application" of that law.  These are two different inquiries,

not to be confused or conflated, as the Supreme Court explained in *Williams v.*

*Taylor*, 529 U.S. 362 (2000), saying:

> Section 2254(d)(1) defines two categories of cases in which a state
> prisoner may obtain federal habeas relief with respect to a claim
> adjudicated on the merits in state court.  Under the statute, a federal
> court may grant a writ of habeas corpus if the relevant state-court
> decision was either (1) "*contrary to*... clearly established Federal law, as
> determined by the Supreme Court of the United States," or (2) "*involved*
> *an unreasonable application of*... clearly established Federal law, as
> determined by the Supreme Court of the United States."

*Williams,* 529 U.S. at 404 (emphasis added).  The statute limits the source from which

"clearly established Federal law" can be drawn to "holdings, as opposed to the dicta,

of the [Supreme] Court's decisions as of the time of the relevant state-court decision."

*Id*. at 412; *see Jones v. Jamrog*, 414 F.3d 585 (6th Cir. 2005); *Sevencan v. Herbert*,

342 F.3d 69 (2d Cir. 2003); *Warren v. Kyler*, 422 F.3d 132, 138 (3d Cir. 2005)

("[W]e do not consider those holdings as they exist today, but rather as they existed

as of the time of the relevant state-court decision.") (internal quotation marks and

citation omitted).

A state-court determination can be "contrary to" clearly established Supreme Court precedent in either of two ways:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Likewise, a state-court determination can be an "unreasonable application" of clearly established Supreme Court precedent in either of two ways:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id*. at 407; *see also Putman v. Head*, 268 F.3d 1223 (11th Cir. 2001). The question of whether a particular application was "reasonable" turns not on subjective factors, but on whether the application of Supreme Court precedent at issue was "objectively unreasonable." The question is not whether the state court "correctly" decided the issue, but whether its determination was "reasonable," even if incorrect. *See Bell v. Cone*, 535 U.S. 685, 694 (2002).

34

### B.    Procedural Rules Governing *Habeas Corpus* Cases under § 2254

Having explained the scope of this court's authority to review state court decisions, it is now appropriate to examine the federal procedural rules applicable to the controversy presently before the court.  Since "*habeas corpus* review exists only to review errors of constitutional dimension," a *habeas corpus* petition must meet the "heightened pleading requirements [of] 28 U.S.C. § 2254 Rule 2(c)."  *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (other citations omitted).  The petitioner must specify all grounds for relief available to the petitioner, state the facts supporting each ground, and state the relief requested.  28 U.S.C. § 2254, Rules 2(c)(1),(2), and (3) of the *Rules Governing Section 2254 Cases in the United States District Courts*.  A "general reference to the transcripts, case records and brief on appeal patently fails to comply with Rule 2(c)."  *Phillips v. Dormire*,  2006 WL 744387, at *1 (E.D. Mo., 2006) (citing *Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990)).

With regard to the facts supporting his case, the burden of proof is on the *habeas* petitioner to establish a factual basis for the relief he seeks.  *Hill v. Linahan*, 697 F.2d 1032, 1034 (11th Cir. 1983); *Corn v. Zant*, 708 F.2d 549, reh'g denied, 714 F.2d 159 (11th Cir. 1983).  Consequently, a petitioner must provide substantial evidence to meet his burden of proof to show why federal post-conviction relief should be awarded.  *Douglas v. Wainwright*, 714 F.2d 1532, reh'g denied, 719 F.2d

35

406 (11th Cir. 1983), vacated on other grounds, 468 U.S. 1206 (1984) and 468 U.S. 1212 (1984), on remand 739 F.2d 531 (11th Cir. 1984).   That burden is to demonstrate at least *prima facie* evidence establishing the alleged constitutional violation.   The mere assertion of a ground for relief, without more factual detail, does not satisfy petitioner's burden of proof or the requirements of 28 U.S.C. § 2254(e)(2) and Rule 2(c), *Rules Governing § 2254 Cases*.

## INTRODUCTION TO THE DISCUSSION OF THE CLAIMS

With these elemental precepts in mind, the court now turns to petitioner's claims. Petitioner's first two broad claims (Claims A and B) assert various sub-claims of ineffective assistance of counsel during, first, the penalty phase of the trial and, second, the guilt phase of the trial.   In addition to these two categories of claims of ineffective assistance, petitioner also alleges fourteen other claims (Claims C through P) for substantive violations of his constitutional rights, including a claim of ineffective assistance of appellate counsel at Claim N.   Each of these claims is addressed, first, with respect to whether it is procedurally defaulted, and then whether any merits resolution of the claim by the state courts is entitled to deference in accordance with 28 U.S.C. § 2254(d).

# THE INEFFECTIVE-ASSISTANCE CLAIMS

The first two broad categories of claims raised by petitioner assert forms of ineffective assistance of counsel, one focused on the *penalty* phase of trial and the other concentrating on the *guilt* phase of trial.  In general terms, these claims allege the following:

> **Claim A**.    *Borden received ineffective assistance of counsel during the* **penalty** *phase of his trial, in violation of his rights guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.*

> **Claim B**.    *Borden received ineffective assistance of counsel during the* **guilt** *phase of trial in violation of his rights guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.*

Although both of these claims involve multiple sub-allegations, they are subject to common basic principles applicable to all claims of ineffective assistance of counsel.  Before the court begins its discussion of Claims A and B and their respective sub-claims, a prefatory explanation of the general constitutional standard applicable to ineffective-assistance-of-counsel claims is helpful.

## I.    The Standard for Ineffective Assistance of Counsel

The Supreme Court has established a two-pronged standard for judging, under the Sixth Amendment, the effectiveness of attorneys who represent criminal

defendants at trial or on direct appeal.  In *Strickland v. Washington*, 466 U.S. 668

(1984),[10] the Court explained:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  *First*, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  *Second*, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

---

[10]  Ineffective assistance of counsel claims are specifically limited to the performance of attorneys who represented a defendant at trial or on direct appeal from the conviction.  *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings.  Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.") (citations omitted).

> The [*Coleman*] Court went on to conclude that because errors of post-conviction counsel cannot be *constitutionally ineffective*, a petitioner "must 'bear the risk of attorney error that results in a procedural default.'"  Thus, because [petitioner] had no constitutional right to counsel during his post-conviction proceedings, his attorneys' errors during those proceedings cannot constitute cause to excuse his procedural default.

*Johnson v. Singletary*, 938 F.2d at 1175 (emphasis supplied) (quoting *Coleman*, 501 U.S. at 752 (in turn quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)), and citing *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982)).

*Id*. at 687 (emphasis supplied); *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000) (same).  The two parts of the *Strickland* standard are conjunctive, and a petitioner accordingly bears the burden of proving *both* "deficient performance" *and* "prejudice" by "a preponderance of competent evidence." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*).  Thus, a court is not required to address both aspects of the *Strickland* standard when a *habeas* petitioner makes an insufficient showing on either one of the two prongs.  *See*, *e.g.*, *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

## A.     The Performance Prong

To establish that counsel's performance was deficient, a defendant "must show that counsel's representation fell below an objective standard of reasonableness":  a rule that is defined in terms of "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688; *see also Williams*, 529 U.S. at 390-91 (same); *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (same).  The *Strickland* Court instructed lower federal courts to be "highly deferential" when engaging in such assessments,

and to "indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance."  The Court explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, *a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance*; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689 (emphasis supplied) (citations and internal quotation marks omitted); *see also*, *e.g.*, *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (holding that, "[w]hen reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate") (internal quotation marks omitted)).  To overcome the presumption that counsel's conduct fell within the wide range of reasonable professional assistance, the *habeas* petitioner "must establish that no competent counsel would have taken the action that

his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*) (footnote and citation omitted).

The reasonableness of counsel's performance is judged from the perspective of the attorney at the time of the alleged error and in light of all the circumstances then existing.  *See*, *e.g.*, *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) (giving lawyers "the benefit of the doubt for 'heat of the battle' tactical decisions"); *Mills v. Singletary*, 161 F.3d 1273, 1285-86 (11th Cir. 1998) (noting that *Strickland* performance review is a "deferential review of all of the circumstances from the perspective of counsel at the time of the alleged errors").  The rationale underlying the deferential standard recognizes the unpredictable circumstances counsel face. One court has said:

> Under this standard, there are no "absolute rules" dictating what reasonable performance is or what line of defense must be asserted. [*Chandler*, 218 F.3d] at 1317.   Indeed, as we have recognized, "[a]bsolute rules would interfere with counsel's independence — which is also constitutionally protected — and would restrict the wide latitude counsel have in making tactical decisions."  *Putman v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).

*Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005).  "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that *no* reasonable lawyer, in the

circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (emphasis supplied).

In short, an attorney's performance will be deemed deficient only if it is objectively unreasonable (*i.e.*, falls below the wide range of competence demanded of attorneys in criminal cases), and it is shown that no competent attorney would have taken the action that petitioner's counsel took. *See, e.g.*, *Chandler*, 218 F.3d at 1315; *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990). The fact that an attorney's strategic or tactical decision failed does not itself prove that the decision amounts to ineffectiveness.

## B.    The Prejudice Prong

In addition to showing deficient performance by counsel, a petitioner must show prejudice. To satisfy the prejudice prong, a *habeas* petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Williams*, 529 U.S. at 391 (same). Stated somewhat differently, "[a] finding of prejudice requires proof of unprofessional errors so egregious that the trial was rendered unfair and the verdict rendered suspect." *Johnson v. Alabama*, 256 F.3d 1156, 1177 (11th Cir. 2001) (quoting *Eddmonds v. Peters*, 93 F.3d 1307, 1313

42

(7th Cir. 1996) (in turn quoting *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) (internal quotation marks omitted)); *see also*, *e.g.*, *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (holding that, to show prejudice, "a defendant must show that counsel's errors were so serious that they rendered the defendant's trial unfair or unreliable, not merely that the outcome would have been different").

A *habeas* petitioner "must affirmatively prove prejudice, because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.'" *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (quoting *Strickland*, 466 U.S. at 693). The fact that counsel's error may have "had some conceivable effect on the outcome of the proceeding" is not sufficient to show prejudice. *Strickland*, 466 U.S. at 693; *see also Gilreath*, 234 F.3d at 551 (same); *Tompkins v. Moore*, 193 F.3d 1327, 1336 (11th Cir. 1999) (same). Instead, a petitioner must present competent evidence proving "that trial counsel's deficient performance deprived him of 'a trial whose result is reliable.'" *Brown v. Jones*, 255 F.3d 1272, 1278 (11th Cir. 2001) (quoting *Strickland*, 466 U.S. at 687). In summary, "[t]he benchmark for judging any claims of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [or subsequent direct appeal] cannot be relied upon as having produced a just result." *Strickland*, 466 U.S. at 686.

### C.    Deference Accorded State Court Findings of Historical Fact

"Ineffectiveness of counsel is a mixed question of fact and law." *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001) (citing *Meeks v. Moore*, 216 F.3d 951, 959 (11th Cir. 2000)). "State court findings of historical facts made in the course of evaluating an ineffectiveness claim are subject to a presumption of correctness under 28 U.S.C. § 2254(d)." *Thompson*, 255 F.3d at 1297. As explained above, the resolution of these claims by the state courts must be given deference, unless that resolution is based on an unreasonable determination of the facts in light of the record evidence, or the resolution is contrary to or an unreasonable application of binding Supreme Court precedent.

## II.    **CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL DURING THE PENALTY PHASE**

**Claim A**.    *Borden received ineffective assistance of counsel during the **penalty** phase of his trial, in violation of his rights guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.*

The court turns now to a discussion of the specific sub-claims of ineffective assistance during the **penalty** phase alleged by the petitioner. These sub-claims are arranged in the order set out in the petition, referenced by the paragraphs in which they are pleaded.

1.    *Introduction.*

Since Borden designates this sub-section as an introduction, the court treats it as such.   The introductory portion of the claim fails to set out any factual or legal basis for relief.  Thus, insofar as Borden intends the "introduction" to state a *habeas* claim, it fails to do so.

2.    *Borden's trial counsel failed to identify, investigate, develop, prepare, and present evidence of Borden's [mental] illness.  (¶¶ 43-65).*

3.    *Trial counsel failed to present evidence from Borden's treating physicians and mental health professionals and the readily available medical records, and failed to relate that evidence to the mitigation factors during the penalty phase of the trial.   (¶¶ 66-80)*

4.    *Trial counsel failed to meet their duty to adequately investigate Borden's case regarding both the readily available medical evidence and evidence concerning his family and social history. (¶¶ 81-94).*

Sub-claims A.2., A.3. and A.4 are addressed together, since many of the historical facts supporting those claims are the same and/or substantially interconnected.   In A.2., Borden alleges that if his "trial counsel had properly investigated, developed, prepared, and presented evidence of [his] mental illness, the jury would have heard evidence that would have compelled only one result: a verdict of life without parole." (Doc. 1, p. 11).  Borden then asserts the remaining paragraphs pertaining to this sub-claim contain "overwhelming and compelling evidence" that

would have convinced the jury to recommend life without parole. *Id.* at 11-19 (*See*

¶¶ 44-62).

In sub-claim A.3., Borden alleges that:

Trial counsel's failure to offer testimony from Mr. Borden's treating physicians and mental health professionals addressing the relationship between Mr. Borden's mental illness and various available mitigation factors was compounded by a failure to relate the admitted medical records to the mitigation factors. Due to the profound differences between the standards for legal insanity and the mitigation factors, and to Mr. Borden's vast history of mental illness and psychosis as described in []A.2. above, it was necessary to present this evidence by calling these medical experts to testify at trial in order to explain the relationship between Mr. Borden's mental health condition and the available mitigation factors.

*Id.* at 19.[11] Again, Borden alleges the outcome of his trial would have been different

in that he would not have been sentenced to death if the factually explicit evidence

in the remaining paragraphs relating to this sub-claim had been investigated,

prepared, and properly presented through the testimony of treating physicians and

mental health experts. *Id.* at 19-24. (*See* ¶¶ 67-76).

In sub-claim A.4., Borden alleges that his

---

[11] The court notes that in both A.2 and A.3, Borden alleges that counsel's performance was objectively deficient because they failed to call as witnesses any mental health expert during the penalty phase of trial. After a careful reading of the pleadings on this allegation in both sub-claims, it appears that the particular experts Borden alleges should have been called at the penalty phase were those mental health providers *who had previously treated him*, as distinct from the mental health experts used as witnesses during the guilt phase of trial, who had not been among Borden's treating physicians.

trial counsel failed to adequately investigate, develop, prepare and
present evidence from Mr. Borden's family members, relatives, friends
and acquaintances prior to trial.   These people possessed critical
information about Mr. Borden's mental state and medical history,
including his symptoms of mental illness, his behavior, his history of
taking or not taking medications, and his family and social background.

Mr. Borden's childhood was plagued by physical and mental
abuse, caused by his parents, family members, relatives, and
acquaintances.   Despite the tragic circumstances of Mr. Borden's
childhood, trial counsel failed to present any of this evidence of
mitigation, because counsel failed to identify, investigate, develop,
prepare, and present this evidence. In fact, nowhere is counsel's
ineffectiveness demonstrated more clearly than in the opening statement
on the first day of trial: "You're going to hear evidence that he had a
relatively normal childhood just like everybody else had.   I'm sure he
had his childhood problems but nothing of any great consequence.   And
all of us have experienced childhood problems." This statement
highlights the fact that counsel did not even investigate this potential
mitigating evidence.

*Id.* at 26-27.   Once more, Borden alleges the outcome of his trial would have been

different in that he would not have been sentenced to death had the factually explicit

evidence set out in the remaining paragraphs pertaining to this sub-claim been

investigated, prepared, and properly presented.   *Id.* at 26-29. (*See* ¶¶ 86-92).

The court interprets sub-claim A.2. as being directed to *medical and mental*

*health evidence* that should have been presented at the penalty phase of trial, sub-

claim A.3. as challenging the *manner* in which that evidence was presented at the

penalty phase of trial, and sub-claim A.4 as being focused on Borden's *personal*

*history and background evidence*, which necessarily included lay testimony of Borden's behavior as it pertained to mental health.

Respondent answers and argues that sub-claims A.2, A.3., and A.4 are procedurally defaulted for three reasons: (1) the allegations underlying the claims in the first amended Rule 32 petition were properly dismissed by the state court for lack of specificity and full factual disclosure as required by Rule 32.6(b); (2) other, additional allegations underlying the claims in the second amended petition were properly dismissed by the state court because the additional allegations were not raised until *after* the trial court dismissed the first amended petition and the Alabama Court of Criminal Appeals remanded that dismissal to the trial court for clarification; and (3) still other allegations underlying the claim are being presented for the first time in the present *habeas* petition.  (Doc.  18, pp. 6-14 and Doc. 21, pp. 11-12, 15, 27-28).  Alternatively, respondent asserts that, "to the extent the Alabama courts' determination that th[ese] claim[s] lacked a sufficient factual basis is a merits determination, th[e] claim[s] are without merit[,]" for purposes of 28 U.S.C. § 2254(d) relief.  (Doc. 21, pp. 8 & 11-12).

a.  *Procedural Default*

The Alabama state courts found these claims to be procedurally defaulted in that the Rule 32 petition filed by Borden failed to comply with Rule 32.6(b).  The

48

state courts found that the allegations in the Rule 32 petition lacked factual specificity in the sense that the claims were not supported by specific factual allegations showing the ineffectiveness of counsel.  Addressing this assertion, the court has compared the allegations made in the Rule 32 petition with the extensive factual allegations proffered in support of sub-claims A.2, A.3, and A.4 in the instant *habeas* petition, which are a far cry from those found in Borden's amended Rule 32 petition.   In applying the proper standards of *habeas* review relating to the "adequacy" of the state's procedural rule, this court must view the state courts' disposition of the claims as they were presented to the state courts in the amended Rule 32 petition, not as they are more fully fleshed out in the instant *habeas* action.  (Rule 32 R. Vol. 9, Tab. 39, pp. 15-20).  As set out in the first amended Rule 32 petition, these claims were alleged as follows:

### II.  Trial Counsel was Ineffective During the Penalty Phase of Mr. Borden's Trial, and This Ineffectiveness Resulted in the Unjust and Unconstitutional Imposition of the Death Penalty.

54. . . . . Despite a wealth of mitigating factors — both statutorily enumerated and nonenumerated — trial counsel only called four witnesses, whose extremely brief testimony spans a total of only 25 pages of transcript. . . .[12]

. . . .

---

[12]   The remainder of  ¶¶ 54-57 are dedicated mostly to Borden's explanation of the constitutional standard applicable to ineffectiveness claims.

57. Trial counsel failed to conduct a reasonable independent investigation of the case, failing, among other things, to interview adequately Mr. Borden's family, friends and acquaintances. In addition to failing to investigate facts available [from] individuals then unknown to them, such as Mr. Borden's friends and acquaintances, trial counsel failed to adequately interview the witnesses of which they were then aware. For example, trial counsel failed to sufficiently meet with Mr. Borden's family prior to trial, despite the fact that Mr. Borden's parents both possessed information that would have been useful to Mr. Borden's defense.

58. Had counsel contacted other people who had interacted with Mr. Borden, they would have been able to present a complete portrait of Mr. Borden, which would have lessened his culpability for the crime, revealed numerous mitigating circumstances, and led the jury to impose a lesser sentence of life without the possibility of parole.

59. In addition to defense counsel's failure to contact people who could offer useful mitigation evidence, counsel failed to procure many necessary records documenting Mr. Borden's life. These records include school records, health records, employment records, and religious records of both Mr. Borden and his parents and siblings.

60. If counsel had obtained these records and interviewed even a portion of potential witnesses who were willing to testify for Mr. Borden, counsel could have established numerous mitigating factors that could have swayed the jury to a finding of life in prison rather than death.

61. Trial counsel even failed to present the vast majority of the mitigating evidence that was available to them even without an investigation. For example, trial counsel failed to offer any of the mitigating evidence which tended to show that Mr. Borden had not premeditated the crime and which tended to show that at the time of the crime he was acting under an extreme mental or emotional disturbance and his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired.

50

62.  In addition, counsel was ineffective for not obtaining the services of expert assistance for the penalty phase of the trial.  Medical experts could have explained the likely causes and consequences of Mr. Borden's emotional and physical problems; without such assistance, counsel was in no position to adequately understand or even recognize such evidence if it were encountered during the investigation for Mr. Borden's penalty phase.[13]

A.  *Trial Counsel Failed to Present Any Evidence From Mr. Borden's Father.*

63.  During the penalty phase, trial counsel failed to present any evidence from Mr. Borden's father.  Such evidence would have included valuable information about Mr. Borden's upbringing, about the changes Mr. Borden experienced following his automobile accident, about Mr. Borden's history of taking or not taking the medication prescribed to combat his depression, about the lengths that the family went to keep Mr. Borden from seeing his wife following their separation, and about the coincidental circumstances that led to their meeting the night of the shooting.

64.  During the guilt phase of trial, there may have been valid tactical reasons to keep Mr. Borden's father from testifying.  However, at the penalty phase, those reasons had disappeared.  As a result, any possible harm which could have been caused by calling Mr. Borden's father was vastly outweighed by the beneficial facts that could have been elicited from Mr. Borden's father related to the mitigation of Mr. Borden's sentence.

B.  *Trial Counsel Failed to Call Any Witnesses at All Regarding Mr. Borden's Mental Health.*

---

[13]  At this point in the amended Rule 32 petition, Borden inserted the following footnote: "Of course, counsel did not even conduct a threshold level of investigation, nor did they procure any of the records or interview any of the friends, teachers, professionals, associates, and medical personnel that would have led to information to be assessed by such experts.  (Rule 32 R. Vol. 9, Tab. 39, p. 19 n.3).

65.   During the penalty phase, trial counsel failed to call any witnesses at all with regard to Mr. Borden's mental health.   New testimony was needed since, as discussed more fully below, the legal standards related to Mr. Borden's mental health at the guilt phase are significantly different from those at the penalty phase.   Indeed, during closing arguments of the penalty phase, trial counsel did not even refer to the mental health testimony that had been presented during the guilt phase of Mr. Borden's trial.

66.   As during the guilt phase, trial counsel at the penalty phase failed to present testimonial evidence from any of Mr. Borden's mental health care providers.

67.   Mental health testimony would have played an important part in Mr. Borden's mitigation case, given the reduced level of mental health deficiency necessary to create a mitigating condition.

(Rule 32 R. Vol. 9, Tab. 39, pp. 17-20).

The Alabama Court of Criminal Appeals found that the foregoing claims were properly dismissed pursuant to Rule 32.6(b) in that Borden had failed to plead a sufficient factual basis for the claims.   (Rule 32 R. Vol. 14, Tab. 60, pp. 20-26).   It also made several alternative holdings on the merits of some of those claims.   The pertinent portions of appellate court's opinion reads as follows:

The trial court dismissed the claims contained in paragraphs 54-60 and 62 on grounds that they did not contain a sufficient factual basis. Rule 32.6(b), Ala. R. Crim. P.   For the reasons discussed below, we find that the trial court correctly dismissed the foregoing claims.   We find, furthermore, that the claim in paragraph 61 was due to be dismissed because it did not contain a sufficient factual basis.   In the allegations of the paragraphs which are set out above, Borden made only broad, vague assertions regarding counsel's alleged failures, and he put forth conclusions of law and only bare allegations that his constitutional

52

rights had been violated.  Such vague assertions and unsupported conclusions are insufficient to withstand summary dismissal for they failed to contain the required specificity and a full disclosure of the factual basis.  Rule 32.6(b), Ala. R. Crim. P.

In paragraph 54[14] Borden alleged that trial counsel called too few witnesses at the penalty phase, even though there existed "a wealth of mitigating factors."  In paragraph 55, Borden stated only that counsel's investigative efforts "fell far short" of what is constitutionally required. In paragraph 56, Borden did not allege what specific information counsel failed to obtain, and he alleged only that investigation would have disclosed "a host of mitigating factors."  In paragraph 57, Borden failed to identify even a single name of the many "family friends and acquaintances" who, he alleged, should have been but were not interviewed "adequately."  In paragraph 58, Borden failed to identify any of the "other people" who he alleged should have been contacted. In paragraph 59, [Borden] alleged that counsel should have obtained "many records" including, but apparently not limited to, school, health, employment, and religious records for Borden, his parents and siblings. As with previous claims, Borden failed to allege with any specificity what records should have been obtained.  In paragraph 60, Borden failed to provide the full disclosure of factual basis for his claim that "numerous mitigating factors" could have been established if counsel had obtained "these records" and interviewed the witnesses.  In paragraph 61, he asserted only that counsel "failed to present the vast majority of the mitigating evidence that <u>was</u> available to them even without investigation....  Borden alleged that, for example, defense counsel did not present "any of the mitigating evidence which tended to show that Mr. Borden had not "premeditated the crime" and which indicated that he was acting under extreme emotional disturbance. . . . Borden's claim did not include a delineation of any of the evidence that counsel allegedly knew existed but did not present.  Furthermore, counsel failed to allege any prejudice that resulted from the alleged

---

[14]  The appellate court placed footnote 7 at this reference point, which reads: "The trial court also found the allegations of paragraph 54 were due to be denied on the merits because Borden did not establish deficient performance or prejudice."

deficient performance.[15]  Finally, in paragraph 62, Borden's vague claim failed to specify what type of "medical expert" he alleged counsel should have obtained, whether a nurse, a physician, a psychiatrist, a neurologist, or any of a vast number of other "medical experts." Borden's allegation that the experts could have explained "the likely causes and consequences" of his emotional and physical problems also failed to provide the full disclosure of the factual basis for the claim.

None of Borden's vague claims provided the required full disclosure of the factual basis for the claims, nor did they provide more than mere conclusions of law.  As such, the trial court correctly dismissed paragraphs 54-60 and 62.  Furthermore, paragraph 61 was due to be dismissed on the same grounds.

. . . .

[Paragraphs 63 and 64 were] not pleaded with the specificity required by Rule 32.6(b), Ala. R. Crim. P.  As such, it was due to be summarily dismissed.  Borden offered only general assertions such as that his father would have testified to "valuable information," and about "changes" Borden experienced.  He did not provide any factual detail as to what testimony his father would have given, but provided only "a general statement concerning the nature and effect of those facts." Moore v. State, 502 So.2d 819, 820 (Ala. 1986).  Furthermore, Borden failed to allege how trial counsel's alleged deficiency prejudiced his

--------

[15]  The appellate court placed footnote 8 at this reference point, which reads:

The trial court denied this portion of the claim on the merits.  The court found that, "by setting forth the testimony of three medical professionals and four family members, Borden's trial counsel provided the jurors with more than enough information to enable them to determine whether Borden had established the existence of any mitigating circumstance." (Supp. R. 41).  Thus, the court held, Borden failed to establish deficient performance or prejudice.  The trial court discussed in its order the witnesses and testimony defense counsel presented to the jury.  As the trial court found, defense counsel did, in fact, present substantial evidence in mitigation to the jury.  Therefore, the record refutes this particular allegation of deficient performance.  We adopt the trial court's holding on the merits as an alternate holding to our primary determination that claim was not pleaded with specificity and was due to be dismissed.

defense.  There is no allegation in this claim that, but for counsel's error, the result of the proceeding would have been different. . . .

The trial court addressed this claim on the merits and denied it, finding both that Borden failed to allege any prejudice and that most of the information Borden alleged that his father would have conveyed in his testimony was presented to the jury by other witnesses.  The trial court concluded that no material issue of law or fact existed concerning this claim, and that it was due to be denied pursuant to Rule 32.7(d) of the Ala. R. Crim. P.  We agree with the trial court's analysis of the claim, and adopt its holding as an alternative holding to our primary determination that the claim was not sufficiently pleaded.

In Claim II.B. of the petition, Borden alleged that trial counsel was ineffective for failing to call any witnesses regarding Borden's mental health.  In paragraphs 65 and 66 of Claim II.B., Borden alleged that counsel failed to call any mental health witnesses during the penalty phase.  In paragraph 67, Borden alleged, "Mental health testimony would have played an important part in Mr. Borden's mitigation case, given the reduced level of mental health deficiency necessary to create a mitigating condition." . . .

The trial court correctly dismissed the allegations in Claim II.B. for failing to meet the requirements of Rule 32.6(b) Ala. R. Crim. P. Borden failed to identify what type of mental health expert he believed should have been presented at the sentencing phase, or how that expert's testimony would have differed from the testimony presented at the guilt phase.  He further presented no legal basis to support his claim, only a bare conclusion that the testimony was necessary.  More is required to satisfy the pleading requirements of Rule 32, Ala. R. Crim. P., and dismissal. . . was proper.

*Borden v. Alabama*, CR-00-1379, Return Mem. Op. (Rule 32 C.R. Vol. 14, Tab. 60, pp. 20-26).

After careful consideration, this court finds that sub-claims A.2, A.3, and A.4 are procedurally defaulted because the state court relied upon adequate and independent state procedural rules to support the dismissal (*see Borden v. State*, mem. op., Vol. 14, Tab. 60, pp. 20-26), and that the claims presented for the first time in the instant *habeas* petition are procedurally defaulted because Borden failed to bring them to the state court's attention even though he had adequate opportunities to do so. The conclusion by the Alabama Court of Criminal Appeals that the pleading of these claims in the first amended Rule 32 petition lacked adequate factual specificity constitutes an independent and adequate basis for rejecting the claims on state-law grounds.

A reading of the claims presented in the first amended Rule 32 petition supports the conclusion reached by the Alabama state courts that they are unsupported by any factual allegations and constitute nothing but vague assertions and legal conclusions. The purpose of Rule 32.6(b) is to enable a court to determine, by reference to the alleged facts, if proven to be true, that the petitioner is or is not legally entitled to relief. As explained by the Alabama Court of Criminal Appeals:

> When discussing a petitioner's burden of pleading sufficient grounds to warrant further proceedings in the circuit court, this Court has stated:
>
>> " 'Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.' Boyd v. State, 746 So. 2d 364, 406 (Ala. Crim. App.1999). In other words, it

> is not the pleading of a conclusion 'which, if true, entitle[s] the petitioner to relief.'  Lancaster v. State, 638 So. 2d 1370, 1373 (Ala. Crim. App.1993).  It is the allegation of facts in pleading which, if true, entitle a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala.R.Crim. P., to present evidence proving those alleged facts."

Boyd v. State, 913 So. 2d 1113, 1125 (Ala. Crim. App. 2003).  More recently in Hyde v. State, 950 So. 2d at ___, we stated:

> "The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one.  Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b).  The full factual basis for the claim must be included in the petition itself.  If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b).  See Bracknell v. State, 883 So. 2d 724 (Ala. Crim. App. 2003).  To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must 'identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' Strickland v. Washington, 466 U.S. 668, 690 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' 466 U.S. at 694.  A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient."

Ingram v. State, No. CR-03-1707, 2006 WL 2788984 at *3-4 (Ala. Crim. App., Sept.

29, 2006).  The rule separates factually unsupported allegations from potentially

meritorious ones at an early pleading stage of the petition, saving time and judicial resources that might otherwise be wasted attempting to assess claims that simply cannot be proven or that simply do not entitle the petitioner to relief.

As a matter of federal law, the court finds that the application of the Rule 32.6(b) specificity requirement by the Alabama courts is not an unusual or exorbitant application of the rule. *See Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002) (adequacy of state procedural rule as a basis for procedural default is a matter of federal law). In *Baker v. Holt*, 178 Fed. Appx. 928 (11th Cir. 2006), the court of appeals explained:

> We have set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim. Second, the state court's decision must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.

*Id.* at 930 (internal citations omitted). The Rule 32.6(b) specificity requirement has been regularly and reasonably followed. It is well established in Alabama law, and its use here appears consistent with Alabama law. As such, the requirement is "adequate" as a procedural default.

Thus, to the extent that petitioner alleged claims A.2, A.3, and A.4 in the first amended Rule 32 petition, he did so with insufficient and unspecific factual allegations, and the Alabama courts determined the claims to be procedurally barred under Rule 32.6(b).  As such, the claims are procedurally defaulted in this court also, unless petitioner can establish "cause and prejudice" or a "fundamental miscarriage of justice."

Further, insofar as petitioner alleges a new theory or claim in these sub-claims — that is, a claim not actually alleged in the first amended Rule 32 petition — it is procedurally defaulted because he failed to present it to the state courts, and he is now precluded from doing so by Alabama's successive petition rule (Rule 32.2(b)) and by its one-year limitation for presenting claims (Rule 32.2(c)).  For this reason, such a new claim is also procedurally defaulted in this court, and cannot be a basis for *habeas* relief unless petitioner can show "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default.

As to the "cause and prejudice" excuse, the court finds that Borden has failed to allege facts warranting a finding that he could not have adequately pleaded these claims in state court.  He has not alleged any external factor that prevented him from alleging more specifically the facts necessary to allow a court to judge from the face of the  Rule 32 petition whether the facts alleged, if proven, warrant relief.  Nor has

59

he alleged any basis for asserting that the claims now presented for the first time in the instant *habeas* petition could not have been alleged in the earlier state Rule 32 proceedings. Thus, absent some showing of cause or, at least, the allegation of facts showing the possibility of cause for the defaults, consideration of these claims is precluded by the doctrine of procedural default.[16]

### b. Alternative Merits Consideration

Even if the state courts' procedural default ruling regarding sub-claims A.2, A.3, and A.4, as presented in the first amended Rule 32 petition, can be construed as a decision on the merits, Borden cannot show that the decision was contrary to or an unreasonable application of clearly established federal law, nor can he show that the decision was based upon an unreasonable determination of the facts in light of the evidence before the state courts. The Alabama Court of Criminal Appeals noted, as an alternative to its holding that these claims were defaulted, that petitioner's trial

---

[16] The court notes that petitioner makes no attempt to prove "actual innocence" for purposes of the "fundamental miscarriage of justice" exception. As recited above, the evidence at trial more than plainly shows that petitioner is not factually innocent of the double homicide, and he does not argue that he is. He shot is wife in the back of the head in plain sight of several witnesses, and he fired several more shots through the front door of his in-laws' home, striking and killing his father-in-law. There can be no real question about his factual guilt. Likewise, there is no basis for concluding that petitioner was not legally eligible for the death penalty for purposes of examining whether he is "actually innocent" of the death sentence itself (as distinct from being actually innocent of the crime). By intentionally killing two people in the same criminal transaction, he was clearly eligible for capital punishment. Ala. Code 1975, § 13A-5-40(a)(10). The court will not extend this opinion by further addressing the "fundamental miscarriage of justice" exception in relation to other findings of procedural default.

counsel had presented testimony about petitioner's mental health and family environment through three mental-health witnesses and four family witnesses during the *guilt* phase of trial, and that this evidence was still before the jury during its penalty phase deliberations. Based on this, that court found that trial counsel had not been professionally deficient or unreasonable in their presentation of such evidence for purposes of application of the *Strickland* standard. This conclusion is not contrary to clearly established federal law, nor is it an unreasonable application of Supreme Court precedent.[17]

The court has carefully read each and every piece of "evidence" referenced in the *habeas* petition (disregarding Borden's irrelevant comments[18], opinions[19] and

---

[17] *Strickland*, as the minimum standard of performance under the Sixth Amendment, has never required the very best representation, only professionally reasonable representation. The fact that more mental-health witnesses and records could have been offered into evidence, or that other family members may have been called to testify about petitioner's mental status and background, does not establish that counsel's choice of certain witnesses and records was unreasonable. Effective trial representation does not require that counsel ferret out every possible witness or present every scrap of evidence, as long as counsel's representation at trial is reasonable. Indeed, part of counsel's responsibility to his client is sifting and culling through evidence to select the best to present.

[18] Borden's contention that "To this day, [he] continues to receive treatment for his mental illnesses in prison[]" is immaterial and irrelevant to the issue at hand. *Id.* at 13.

[19] For instance, after relating certain facts arising from Borden's July 1992 stay at Brookwood Medical Center, the petition reads, "Over the next few months Mr. Borden's condition continued to deteriorate." *Id.* at 15. This is argument, not evidence. So is Borden's contention that, "During the week before the shootings Mr. Borden's delusions of persecution were all-but-affirmed by reality." *Id.* at 17.

inferences[20]), has intently read the entire trial record, and has given equal attention to medical and mental-health records some six inches thick that were admitted into evidence by the defense at the guilt phase of trial.  This collection of medical and psychiatric records, presented to the jury during the guilt phase of the trial, consists of over 600 pages, and documents petitioner's medical and psychiatric history from 1977 to just before he committed the double murder.  Having carefully reviewed these parts of the record, the court finds that almost all of the evidence Borden contends should have been investigated, prepared, and presented at the penalty phase of trial was presented during the guilt phase of trial and was referred to at the penalty phase of trial.  It is simply not true that there was any substantial mental-illness evidence that was not presented to the jury and available for their consideration.  The only evidence now proffered by petitioner that cannot be found in some form in the trial record are the following:

> "Mr. Borden's condition was so severe and impaired that [he] became the only patient who was ever forced by Dr. Castellani to submit to Electroconvulsive Therapy."  *Id.* at 16.

---

[20] Borden contends that the week before the shootings, he "learned that his wife's new boyfriend was abusing [his] children." *Id.* Borden's son, Stephen, testified at trial. Stephen testified that "Tim," the mother's boyfriend had sometimes spanked him and also stated when he had been spanked it was because he had done something wrong.  (R. Vol. 4, p. 585).

"In the days leading up to Christmas Eve 1993, while [Borden] had custody of his children, it is highly likely he was no longer taking his anti-psychotic medication." *Id.* at 17.[21]

"[I]f Cheryl Borden was to be at [her parent's home during the time the parties were to exchange the children for visitation], Mr. Borden's parents would drop Mr. Borden off at a nearby park while they would take his children to the Harris home."

On December 24, 1993, Mr. Borden, his children, and Mr. Borden's parents arrived at the Harris home to drop off Mr. Borden's children. The Bordens had checked with the Harris' [sic] to determine if Cheryl was going to be at the house when the children were dropped off and were informed that she was not going to be there. Relying on that information, the Bordens proceeded to the Harris' [sic] home with Mr. Borden in the car rather than dropping him off at the nearby park. When Cheryl Borden unexpectedly arrived at the Harris [sic] home, . . . ." *Id.*

In light of the mental-illness evidence that *was* presented at trial, it cannot be said that failure to present any of the foregoing made any difference in the outcome of the trial. Speculation about whether Borden was or was not taking his anti-psychotic medication would not have been admissible, and testimony concerning the protocols for picking up the children for visitation say nothing about his mental health. Finally, even the evidence relating to Dr. Castellani's treatment of petitioner shows that Borden was suffering from "major depression," but did not have any "overt delusions or hallucinations or a formal thought disorder." (Nashville Memorial Hospital

---

[21] This factual allegation has never been presented prior to the filing of this petition. In any event, it is clearly speculation, not evidence in the form of testimony or medical records.

Psychological Evaluation, May 13, 1993, found at <u>Petitioner's Trial Exhibits Number</u>
<u>4-11</u>).  This evidence would have added little or nothing to that already before the
jury.  Certainly it cannot be said that this evidence would have changed the outcome
of the jury's determination at the penalty stage.

Borden complains that counsel failed to "call any of Mr. Borden's treating
doctors or mental health professionals during the penalty phase of his trial to testify
. . .," particularly as to the time period immediately preceding December 24, 1993.
*Id.* at 18.  Borden asserts counsel did not even contact most of his treating physicians.
*Id*.  He also complains that counsel did not call *any* mental health expert at the penalty
phase,  "rel[ying] instead, upon the brief examinations . . . . and . . . vague memories"
of Borden's mother and three sisters, two of whom "did not even live with [Borden],"
and "were wholly inadequate to provide a complete and accurate portrait of his
mental state."

Borden admits that medical and psychiatric evidence was presented at the guilt
phase of trial, but incorrectly describes it as "limited." *Id.*  He asserts that counsel's
presentation of all mental health evidence solely at the guilt phase of trial was
"grossly deficient" because the evidentiary value of his mental health at the guilt
phase of trial (sanity) and sentencing phase of trial (mitigation) was different.  *Id.* at
18.  Borden concludes that if counsel had obtained and presented an independent

expert at the penalty phase of trial, the outcome of that phase of the trial would have been different and he would not have been sentenced to death. *Id.* at 19.

Borden's claim is completely without merit. Borden murdered his wife in front of his three children and his father-in-law, and then murdered his father-in-law in front of at least three members of the Harris family. Borden described the circumstances surrounding the murder to Dr. Rosencrans, the court appointed mental health expert who was assigned to determine Borden's competency to stand trial, as well as his mental state at the time of the offense. (R. Vol. 6, pp. 895-901). Rosencrans asked Borden to relate what happened and, according to Rosencrans,

> [Borden] told me, from his point of view, what happened, how he felt, what the conversation had been between he [sic] and his estranged wife, I guess. I understand they were separated rather than divorced. And the conversation concerning the holidays with the children's visit, and what he had requested from her; that is, access to the children during the holidays.
>
> . . . .
>
> He said the children were present, and that he — that she said — he reported to me that she said she would think about it. And then she sent the children off elsewhere, and then she had a private conversation with him that [he] related as being that she was going off with her male friend and the children, and he couldn't have the children, and some other words to that effect. And that's what she related personally to him after the children had been sent off.
>
> . . . .

He — I don't how long that went on, but that was fairly brief about that. The next thing he reported to me was that he went over to retrieve a weapon... and returned and then shot her.

. . . .

[P]rior to that he and his father-in-law had been talking together. And after the aforementioned event that the father-in-law turned and began to move toward the house or run toward the house. That [Borden] pursued him not running heavily. I didn't get the impression, but [Borden] was asking him, calling his name and asking him to stop, that he wanted to talk with him.

. . . .

[Borden] didn't report any shots being fired, but that he was moving toward the... away from him up to the house out of the yard. He didn't report firing any at that time to me. He said the father-in-law went inside the house, closed the door. [Borden] yelled asking him to come out, out back, that he wanted to talk with him. And that he then fired through the door low — said not to hit but to try to maybe hit him in the legs or something like that, which he thought he had done.

He reported that the son, I believe, of the father-in-law had — came out and reported that he had just — the father-in-law, that is, had fallen down and was okay. And then that was all up to that point.

(R. Vol. 6, pp. 897-901).

Borden's own father removed the gun from Borden's hands and gave it to members of the Harris family for safekeeping after the murders. The court notes that although Borden's father was probably the one individual most aware of Borden's mental state immediately before, during, and after the time of the offense, he was never called as a witness, and Borden never reveals what information his father would

66

have testified to that would have been so beneficial to the defense had trial counsel done so.  To the extent that Borden now complains that his trial counsel failed to call family members as witnesses during the penalty phase, he has not proffered what these witnesses would have said if they had been called.

What is known is Borden's own rendition of the events as told to Dr. Rosencrans, and the fact that Borden told his brother-in-law at the scene of the crime that his wife "deserved"[22] it.  According to Richard Harris, Borden waited at his vehicle in close proximity to where his wife lay bleeding from the head and did not once approach her or express any remorse.  (R. Vol. 3, pp. 445 & 455).  Borden remained at the scene of the crime until police arrived, and his behavior was apparently so innocuous that the police did not suspect he was in any way the perpetrator of a crime when they initially approached the scene.  (R. Vol. 4, p. 468).

Trial counsel chose to raise an insanity defense.  Under the circumstances of this case, this was the only plausible defense available for the guilt phase of trial. Counsel obtained a massive amount of medical records evidencing a graphic and longstanding history of physical and mental ailments suffered by Borden, spanning almost 20 years. ( See Petitioner's Exhibits 1-22).  These medical records were made

---

[22]  This testimony came from Richard Harris.  (R. Vol. 3, p. 451). Harris also testified that Borden made a statement about wanting to use the gun on himself, to which Harris replied that "that would be too easy." Borden responded, "well you don't know what she's done." *Id.* at 455-456.

available to two mental health experts called by the defense during the guilt phase of trial.  This expert mental-health evidence was proffered to show that Borden indeed suffered from a brain injury stemming from a 1977 car accident, and that Borden was insane at the time he committed the offenses.  (R. Vols. 5-6, pp. 682-872).  Counsel supported the expert testimony and medical records by having Borden's mother testify, during the guilt phase of trial, regarding Borden's physical and mental history.  (R. Vol. 4, pp. 620-679).  At the guilt phase of trial, he also repeatedly requested that the jury review all of the medical records.  (R. Vol. 6, Tab. 13, pp. 997-998).  Borden's characterization that the medical evidence presented at the guilt phase of trial was limited is flatly contradicted by the record.

No extensive amount of time passed between the defense's case at the guilt phase of trial and the penalty phase of trial.  There is no reason to believe that the jury forgot all of the evidence pertaining to Borden's physical and mental health, and they were repeatedly reminded by counsel during the penalty phase to again review the records.  Nor was there any reason to call yet another independent mental health expert at the penalty phase.  The jury had before them the necessary evidence to make a decision, both in writing and by oral testimony, lay and expert — and it is the same evidence that Borden argues should have been presented.  Ultimately, the jury simply was not persuaded that Borden was legally insane, nor were 10 jurors persuaded that

Borden's mental health issues, offered by the defense as two statutory mitigating factors, outweighed the aggravating factor argued by the State.

Contrary to Borden's contention, there is no reasonable probability that the testimony of any of his treating physicians would have changed the outcome of the penalty phase. Any information that could have been proffered by these experts was already before the jury in the medical records and through the testimony of Borden's mental-health experts. Neither is there any reasonable probability that the testimony of yet another mental-health expert would have resulted in a different recommendation by the jury. Such an expert would have necessarily examined only the same records, conducted the same interviews, and drawn the same opinions as the experts counsel had already presented at trial. A mental-health expert is not qualified to explain the <u>legal</u> effect of any mental health evidence from a mitigation standpoint, and trial counsel adequately explained how the mental health evidence constituted mitigating factors in Borden's case. Counsel were not ineffective in investigating, marshaling, and presenting this evidence for the jury's consideration.

Borden also attacks his counsel's decision to call only his mother and three sisters to testify in his behalf at the penalty phase of trial. This too, fails to persuade the court that counsel was deficient. Counsel began their case-in-chief at the guilt stage of trial with the testimony of Borden's mother, and ended it with expert mental

health testimony.  At the penalty phase of trial, Borden's mother and sisters testified that they had witnessed Borden in the weeks and months prior to the murder.  (R. Vol. 7, pp. 1106-1131).  They testified that he would not bathe or change his clothes, that he would sit in a catatonic state, that he paced the house and yard and did not sleep, that he spoke of people coming to harm his family, that he was delusional, that he was like a "wild man" after nine sessions of electroconvulsive therapy, and that he had short term memory loss.  *Id.*  Such testimony bolstered and tied together all of the other mental health evidence previously presented by Borden during the guilt stage. It also supported the defense theory that Borden's mental state was continually worsening in the weeks and months immediately preceding the murders.  In light of this presentation by counsel at trial, Borden has failed to show that his attorneys were deficient, because the evidence he alleges was not presented at trial in fact *was* presented, and presented in such a manner that it was unnecessary to rehash it before the jury at the penalty phase of the trial.  There is no reasonable probability that additional testimony from Borden's treating physicians and/or an independent mental health expert would have altered the conclusion reached by the jury regarding their penalty recommendation.

Finally, the court is unimpressed with the small percentage of evidence that is absent from the trial record.  Even if Borden were the only patient Dr. Castellini

forced to take electroconvulsive therapy, there is no reasonable probability that this evidence would have convinced the jury to vote for life without parole, when viewed in the context of the tremendous history of Borden's mental health issues already before them.  Additionally, there was evidence before the jury that Borden was often non-compliant with taking his medications, so any testimony that he "likely" was not taking any medication the week before the crime carries no significant weight.  And, considering Borden's own recitation of the crimes he committed at the Harris residence, the fact that Borden's parents would have dropped him off at the park had they known Cheryl Borden would be present at the Harris family home also carries no significant weight.  There simply is no reasonable probability that the outcome of the penalty phase of the trial would have been different had this evidence been presented.  Sub-claims A.2 and A.3 are procedurally defaulted or, in the alternative, due to be denied on the merits under § 2254(d).

This court's conclusion is no different with regard to sub-claim A.4, Borden's assertion that trial counsel failed to investigate and present pertinent information regarding his life history and background.  In this claim, Borden alleges that his aunts, Melba Dickinson, Rita Thomas, and Barbara Hubbard, would have testified about Borden's dysfunctional family and that Borden was a "walking zombie" after his shock treatments.  (Doc. 1, p. 27).   However, Borden fails to reveal how the

family was dysfunctional, nor does he describe any type of physical and psychological abuse purportedly inflicted upon him,[23] and evidence about his zombie-like state was presented at the guilt phase of trial.

Borden contends that Jennifer Cameron, his youngest sister, could have testified that he was not taking his medication during the week prior to the murders, and to his zombie-like state after electroconvulsive treatments.  (Doc. 1, p. 27). Again, this "zombie" information was presented at trial, as was the fact that Borden was often noncompliant with his medication.  Moreover, Jennifer testified at the penalty phase of the trial, and all she testified to was that Borden's behavior was strange around the time of the incident.  (R. Vol. 7, pp. 1111-1119).  Additionally, Borden's other sister, Denise, testified at the penalty phase, and told the jury about his catatonic state and disturbing behavior after electroconvulsive treatments.  (R. Vol. 7, pp. 1119-1125).

Next, Borden alleges that, had counsel investigated the case properly, he would have found a childhood friend of his sister, Denise, named Barbara Tolbert, who could have testified about how physically abusive Borden's parents were.  Also, a proper investigation would have uncovered neighbors Ed and Berline Bowman, who

---

[23]  Borden alleges in his reply brief that he was physically, mentally, and sexually abused by family members.  This allegation is raised for the first time far too late in the proceedings and will not be considered.

could have testified about Borden's father's alcohol abuse from 1966 to1970, and about the Bordens' marital discord.  (Doc. 1, pp. 27-28).  The court finds this alleged evidence to be of little or no import.  Three of Borden's sisters testified at trial, and none asserted that the Borden parents were physically abusive.  Moreover, Borden easily could have informed his counsel about the abuse, and there is absolutely nothing in the  medical records documenting 20 years of mental health treatment in which there is any notation that Borden told anyone he had a bad or abusive childhood.  The absence of such a notation in the records would have led reasonable counsel to discount abuse as a fertile area for investigation.

Borden also contends that counsel could have called Mary White, a Research Project Coordinator at the University of Alabama in Birmingham, to described Borden's debilitating pain as result of orthopaedic injuries, and her observations of his depression.  (Doc. 1, p. 28).  This evidence would have been cumulative of a voluminous amount of medical records, expert testimony, and lay testimony actually presented at trial and, thus, its absence does not undermine confidence in the outcome of the proceeding.

In summary, counsel were not ineffective in their investigation, marshaling, or presentation of evidence relating to Borden's family history and background.  For the

foregoing reasons, sub-claim A.4 is procedurally defaulted or, in the alternative, due to be denied on the merits.

5.      *Trial counsel failed to offer evidence that demonstrated the existence of several other mitigation factors.*

This claim (Claim A.5), as set out in the *habeas* petition, is substantially similar to its Rule 32 predecessor, except that in the *habeas* petition Borden reveals the names of three witnesses who would have testified to information he offers in support of the claim. *See* (Doc. 1, pp. 29-30) and (Rule 32 R. Vol. 9, Tab 39, pp. 23-24).  In his *habeas* petition, Borden alleges that witnesses Jerry Selman, Jerry Bryant and Jennifer Cameron could have presented testimony that would have established the statutory mitigating factors of "extreme mental, emotional disturbance," "impairment of capacity," and "no premeditation."  (Doc. 1, pp. 29-30).  The information Borden contends should have been presented in support of mitigation was that: (1) just before the shooting, he had been terminated from his employment, (2) his divorce attorney withdrew from his case, (3) he was surprised to see his wife at the Harris home, (4) he asked his wife if he could have the children during Christmas, and she declined, and (5) it is "likely" he stopped taking his medications one week before the murders.  *Id*.

When this claim was examined (absent the names of identified witnesses) in the amended Rule 32 petition, the Alabama Court of Criminal Appeals found the claims were due to be dismissed for failure to comply with the pleading requirements

of Rule 32.6(b), because petitioner failed to show how the absence of any of the information   prejudiced his case.  (Rule 32 R. Vol. 14, Tab. 60, p. 28-29).   The appellate court wrote,

> Therefore, Borden has failed to plead this claim with sufficient specificity and has, as a result, failed to state a claim of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984).  The claim was subject to summary dismissal.  We note, furthermore, th[at] most of the information Borden alleges counsel should have been presented was, in fact presented to the jury when Borden's mother testified at trial. (R. 650-52, 678-79.) Therefore, and only in the alternative, we affirm the trial court's determination that the claim was without merit.[24]

*Id.* at 29.

Borden's claim is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss the claim.  Even if the state court's procedural default ruling can be construed as a decision on the merits, *i.e.*, even if it is found that Borden failed to state a claim upon which relief could be granted, for the reasons clearly enunciated in the trial court's order, Borden cannot establish that counsel's evidentiary decisions were objectively deficient, nor can he show that he was prejudiced by counsel's failure to present this evidence.  In fact, all of the information he complains should have been presented at trial *was* presented.  At best, he argues only that the same evidence should have been presented *again*

---

[24]  The trial court's well-supported merits determination can be found at (R. Vol. 14, Tab. 59, pp. 37-40).

during the penalty phase of trial.   Under no circumstances can he satisfy the *Strickland* standard, and he certainly cannot show the state court's alternative decision was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence before it. This claim is procedurally defaulted or, in the alternative, due to be denied.

> 6.   *Trial counsel's closing remarks in the penalty phase failed to accomplish necessary objectives.*

Borden alleges that trial counsel's closing argument was constitutionally ineffective in that he relied almost exclusively upon "boilerplate" religious and mercy themes in attempting to persuade the jury to spare Borden.  (Doc. 1, pp. 31-32). Instead, counsel should have  focused on "extremely persuasive 'real' mitigation evidence." But petitioner never details this evidence.  *Id.* at 32.  Respondent answers that Borden failed to raise this claim at trial or during any collateral proceedings, and as such, it is procedurally defaulted. (Doc. 18, p. 19).

Respondent is correct.  A careful examination of the first amended Rule 32 petition, particularly at pages 15 through 25, fails to reveal any allegation of ineffective assistance of counsel during the penalty phase that is similar to this allegation.  Because this claim has never been presented to the state courts, and it cannot now be presented due to Alabama's successive-petition and time-limitation rules, *see* Alabama Rules of Criminal Procedure 32.2(b) and 32.2(c), the claim is

procedurally defaulted in this court.  The court need not dismiss this action for want of exhaustion of this claim where it is clear that the state courts may not consider the claim due to its successiveness and untimely presentation.  This claim is procedurally defaulted, and petitioner has not attempted to show "cause and prejudice" to excuse the default.  Accordingly, Claim A.6 is due to be denied.

**7.**     *Trial counsel failed to object to the State's use of the aggravating factor of "Knowing Endangerment."*

This claim, as set out in the *habeas* petition, is similar to its Rule 32 predecessor, but contains some minor additional argument, which will be discussed after the court's examination of the state court's disposition of the claim.   *See* (Doc. 1, p. 32) and (Rule 32 R. Vol. 9, Tab 39, p. 20).  The claim, as it appeared in the Rule 32 petition, reads as follows:

> During the penalty phase, the state only presented one aggravating factor: that Mr. Borden allegedly knowingly endangered a number of individuals in the home behind which the shootings occurred.  However, the state never presented any evidence that Mr. Borden knew there were any people in the house.  As a result, the state failed to make the necessary legal showing to prove this factor.

> Notwithstanding the state's failure to present any evidence with regard to this factor, trial counsel failed to object to the state's use of this factor as an aggravating one.  Had trial counsel successfully prevented the admission of this factor, the death penalty would not have even been an option for the jury.

(Rule 32 R. Vol. 9, Tab 39, p. 20).

On collateral review, the Alabama Court of Criminal Appeals affirmed the trial court's summary dismissal of the claim for failure to provide a sufficient factual basis for the claim pursuant to Rule 32.6(b).  (Rule 32. R. Vol. 14, Tab. 60, pp. 26-27).  The appellate court also "note[d]," even if the claim were not procedurally barred,

> that the evidence established that the murders occurred on Christmas Eve while the Harris family was gathered at the Harris family home, where Borden was to leave the children.  When Borden arrived at the residence to drop off the children,[25] Mr. Harris came out of the house and the three children remained in the area.  Cheryl Borden then arrived. It is reasonable to assume that Borden was aware that the additional members of the Harris family were inside the residence at the Christmas Eve family gathering.[26]  Furthermore, as Borden fired shots at Mr. Harris as he chased after Mr. Harris, who was running to the house, Mr. Harris yelled to family members inside to call 911.  Thus, the record contained ample evidence from which the jury could, and did, infer that Borden knowingly created a great risk of death to many persons, which was required by the aggravating circumstance in § 13A-5-49(3), Ala. Code (1975).  There being no ground for objection to the State's reliance on this factor, counsel's failure to object was not deficient performance. Even if the claim had not been subject to dismissal based on inadequate pleading, summary dismissal would have been proper because it was meritless.

---

[25] Although unmentioned by the appellate court, Cheryl Borden's brother, a resident of Louisiana, testified at trial that his car was parked in his parents' driveway and that Mr. Borden also parked his car in the driveway,  behind Richard Harris's car.  (R. Vol. 3, 454).

[26] Mr. Borden's own children ran into the house immediately when their father shot Cheryl Borden.

*Id.* at 26-27.

Borden's claim is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss the claim.  Even if the state court's procedural default ruling can be construed as a decision on the merits, (*i.e.*, even if it is found that Borden stated a claim upon which relief could be granted), for the reasons clearly enunciated in the trial court's order, Borden cannot establish that counsel's failure to object to the use of "knowing endangerment" as an aggravating factor was objectively deficient, nor can he show that he was prejudiced by counsel's failure to do so.

Assuming the appellate court's merits notation is indeed a merits ruling, the appellate court made findings of fact based upon evidence presented at trial that clearly supported the State's assertion of the 'knowing endangerment' aggravating factor.  Borden's only proffer in connection with these factual findings (and offered for the first time in the present petition) are the following examples that the record is "devoid" of such evidence: that there was no evidence "showing whether a person approaching the Harris house could see people in the house, or whether there were cars parked behind the house, or whether anyone had told Mr. Borden there were people in the house, or any other evidence tending to indicate whether Mr. Borden knew there were people in the house."  (Doc. 1, p. 32)

Pursuant to 28 U.S.C. § 2254(d) and (e), the appellate courts' factual findings are presumed to be correct, and Borden has the burden of overcoming that presumption by clear and convincing evidence. This he cannot do. As such, his conclusory assertion that trial counsel was constitutionally ineffective — on the basis that, had counsel objected to the state's presentation of "knowing endangerment" as an aggravating factor, the trial court would have granted his objection, and Borden would not have been eligible for the death penalty — is completely without merit. There is no indication that the state court's decision is contrary to or an unreasonable application of clearly established federal law.

For the foregoing reasons, this claim (Claim 2.7) is procedurally defaulted or, in the alternative, is due to be denied on the merits.

**8**.      *Trial counsel failed to object to or correct the prosecution's mischaracterizations of the law and facts regarding the aggravating factor of knowing endangerment.*

This claim, as set out in the *habeas* petition, is similar to its Rule 32 predecessor, except that, in the amended Rule 32 petition, Borden failed to allege or argue in any way that he was prejudiced by trial counsel's purported deficiency. *See* (Doc. 1, p. 33) and (Rule 32 R. Vol. 9, Tab 39, p. 21). In the amended Rule 32 petition, Borden alleged that

[d]uring the penalty phase, the State mischaracterized the law as to the aggravating factor of knowing endangerment.  The standard at the time of trial was that the defendant "knowingly created a great risk of death to many persons."  Ala. Code § 13-A-5-49 (Michie 1994).

At trial, the prosecutor stated that Mr. Borden sent bullets "blazing though a house" creating a "grave great risk of death to a number of people." (R. 1131-32).  The prosecutor failed to prove this allegation, and trial counsel failed to point out to the jury that (1) no evidence whatsoever was presented as to what Mr. Borden knew directly or through indirect evidence as to the number of people who were in the house, and (2) that the prosecution had argued the wrong legal standard.

The prosecutor's mischaracterization of the law was harmful to Mr. Borden's case because it misrepresented a lower degree of recklessness than what is legally required to meet the elements of this aggravating factor.  Nevertheless, trial counsel failed to object to the mischaracterization.

(Rule 32 R. Vol. 9, Tab 39, p. 21).

In the *habeas* petition, Borden italicized "many" and "number of people," as quoted in the amended Rule 32 petition and added:

Had trial counsel properly objected and prevented the jury from finding the existence of the aggravating factor knowing endangerment, the outcome of Mr. Borden's trial would have been different.  Counsel's failures prejudiced Mr. Borden.  But for trial counsel's deficient performance Mr. Borden would not have been wrongly sentenced to death.

(Doc. 1, p. 33).

On collateral review, the Alabama Court of Criminal Appeals examined the claim and held:

This claim was due to be dismissed because it failed to satisfy the specificity requirements of Rule 32.6(b), Ala. R. Crim. P., and because no material issue of fact or law existed which would have entitled Borden to relief, Rule 32.7(d), Ala. R. Crim. P.

Borden failed to plead any facts indicating how he was prejudiced by trial counsel's failure to object to this alleged mischaracterization of the law. Therefore, the claim was not pleaded with sufficient specificity and it was due to be dismissed without further proceedings. Furthermore, the prosecutor's alleged mischaracterization was not, in fact, a mischaracterization of the law. The prosecutor did not use the exact language contained in the statute, but the phrase he used was very similar and it conveyed the substance of the statute. Thus, there was no basis for an objection by defense counsel, and defense counsel was not deficient for failing to object. Finally, the trial court charged the jury that instructions as to the relevant legal principles would come from the court and the attorneys' argument were not binding on the jury and were not to be considered as evidence. (R. 1054-56). The record establishes that Borden could not establish deficient performance or prejudice as to this claim. No material issue of law or fact existed that would have entitled Borden to relief, so the claim was due to be summarily dismissed.

(Rule 32 R. Vol. 14, Tab. 60, pp. 27-28).

The court has difficulty finding that the application of the Rule 32.6(b) specificity requirement was "adequate" as a basis for disposing of this claim. Although the state courts concluded that petitioner failed to allege a sufficient factual basis for the claim, this court cannot see what other facts were necessary to plead it adequately. Petitioner identified the actual comments made by the prosecutor, pointed out how they were different from the statute, and noted that the prosecutor's comments lowered the state's burden of proving the aggravating circumstance. The

obvious prejudice the petitioner seeks to prove necessarily must be inferred: the jury erroneously found the existence of an aggravating circumstance by applying a standard of proof lower than that authorized by law.  There are no "facts" that can be pled with respect to this prejudice.  Petitioner would not be entitled to call jurors as witnesses to testify that the prosecutor's argument influenced them in reaching their recommendation.  That conclusion must be inferred.  For this reason, this court has difficulty with the state courts' finding that this claim is barred by a failure of the petitioner to plead specific facts in support of the claim.  This appears to be an "exorbitant" or "unreasonable" application of the state procedural rule in this instance. *See Lee v. Kemna, supra*.

Even if the procedural default identified by the state courts is not a proper resolution of this claim, the claim fails on the merits.  Construing the state courts' rulings as a decision on the merits, that is, that  Borden failed to state a claim upon which relief could be granted for the reasons clearly enunciated in the trial court's order, Borden cannot establish that counsel's failure to object to the use of the phrase "a number of people," as opposed to "many people" as used in the statute, was objectively deficient.  The evidence at trial clearly established that Borden knew there were other people present at the Harris home at the time of the shootings.  Nevertheless, he fired multiple shots through the front door of the house, endangering

the people present in the house, whatever that number.  Counsel's failure to object to the prosecutor's phrasing does not undermine confidence in the jury's finding of the aggravating circumstance.  Thus, Borden cannot show that the state courts' decision on the merits of the ineffective assistance claim were contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts in light of the evidence before it.

Additionally, petitioner is not able to show prejudice under *Strickland* because the trial court clearly instructed the jury on the correct standard for finding the aggravating circumstance.   (R. Vol. 7, pp. 1153 and 1173).  Thus, even if counsel were deficient in failing to object to the prosecutor's argument, petitioner suffered no prejudice from it because the court correctly instructed the jury on the standard to apply.  This claim (Claim 2.8) is due to be denied.

**9.** *Trial counsel failed to offer any mitigation evidence concerning petitioner's significant religious activities.*

Borden alleges that his trial counsel did not show that Borden was deeply religious and that he and Ms. Borden were very active in church, so much so that their pastor asked them to establish their own church.  (Doc. 1, p. 34).   According to Borden, "[t]his... was another mitigating factor" that would have counseled the jury against voting for the death penalty, yet his attorney never presented it because he failed to "investigate the case."  *Id.*  Borden opines that the evidence also shows that

84

"if taking his medication, [he] was able at times to successfully cope with his mental illness."  *Id.*[27]  He then concludes that the outcome of his trial could have been different had the jury learned of his deeply religious nature.  *Id.*

Although the Alabama Court of Criminal Appeals questioned whether Borden had sufficiently pleaded this claim in his Rule 32 petition,[28] it affirmed and directly quoted the trial court's dismissal of the claim on the merits, as follows:

> "In Borden's case, his trial counsel made a reasonable strategic decision to focus on the argument that Borden suffered from a severe psychological disorder that rendered him legally insane and incapable of forming the requisite intent to commit the crime of capital murder.  To support this theory, Borden's trial counsel asserted that Borden has a history of mental illness and emphasized that there was a reasonable doubt as to Borden's sanity.  This argument could have been undermined if Borden's trial counsel had also presented evidence to establish that he was an active and competent leader in his church.... [(R. 1027)].  Thus, counsel's decision not to present evidence concerning Borden's religious activities was a reasonable strategic decision because such evidence could well have damaged the defense theory that he was dysfunctional and insane.
>
> Borden has therefore failed to prove deficient performance.  In addition, Borden has not attempted to demonstrate that he was prejudiced by the failure of his trial counsel to present the evidence."

---

[27]  This is the only allegation that is a part of this claim that Borden did not make in his amended Rule 32 petition.

[28]  See (Rule 32. R. Vol. 14, Tab. 60, p. 36, n. 13).

(RR. [Order on Remand, Vol. 14, Tab. 59, pp.] 45-6).

. . . .

> Although we cannot say, based on the record before us, that trial counsel knew about Borden's religious activities and made a decision not to present them, we agree with the trial court that presentation of the evidence could have severely damaged the defense theory.  As such, the trial court correctly determined that Borden could not establish that counsel's failure to present evidence of his religious activities constituted deficient performance.  Borden also could not establish that the failure to present evidence of the religious activities resulted in prejudice to his defense.  There is no reasonable probability that, had the evidence been presented, Borden would not have been sentenced to death.  Therefore, no material issue of law or fact existed and the trial court correctly dismissed the claim.

(Rule 32. R. Vol. 14, Tab. 60, pp. 36-38).

After careful examination of the appellate court's opinion, this court finds that Borden has failed to show that the state court's denial of this claim was contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts in light of the evidence before it.  There is simply no reasonable probability that the jury would have been persuaded to recommend a life sentence based upon Borden's purported religious activities when this information is viewed in light of all other aggravating and mitigating evidence presented at the guilt and penalty phases of trial.  This claim (Claim A.9) is due to be denied.

10. *Trial counsel failed to object to or correct the prosecutor's equating of the jury's finding on guilt-phase sanity with mitigation-phase mental illness, and he failed to object to or correct the prosecutor's improper argument that the jury had already rejected the sanity argument.*

This claim, as set out in the *habeas* petition, is virtually the same as its Rule 32 predecessor. *See* (Doc. 1, pp. 34-35) and (Rule 32 R. Vol. 9, Tab 39, p 22).  Borden declares that, during his penalty phase argument, the prosecutor improperly stated that the question of Borden's sanity had legal relevance as a mitigating factor only if it excused the crime.  (Doc. 1, p. 34).  In other words, the prosecutor improperly informed the jury that it had already considered and rejected insanity as a defense at the guilt phase of the trial, and therefore Borden's mental state could not be a mitigating factor at the penalty phase of the trial.  *Id.*

Borden alleges his trial counsel was ineffective for failing to object to and correct the prosecutor's misstatement, and additionally faults trial counsel for failing to affirmatively explain this very important distinction during his own opening and closing statements to the jury at the penalty phase of trial.  *Id.* at 35.[29]  According to

---

[29]   Borden fails to mention that in his opening argument at the penalty phase of trial the prosecutor explained the aggravating circumstance it was required to prove beyond a reasonable doubt and then said: "Mitigation is much more lenient on behalf of the defendant. And I expect the defense will offer you evidence which they will say tend to mitigate the punishment or militate it in favor of life without parole as opposed to death.  And the judge will give you some instructions on how to weigh those things."  (R. Vol. 7, Tab. 18, pp. 1090-91).  Later on in the argument, the prosecutor again repeated that the jury was to listen to the trial judge's instructions regarding quality, quantity, and weighing of aggravating and mitigating factors.  *Id.* at 1092.

Borden, the jury was left with no understanding of the significance of Borden's mental health evidence at the penalty phase for mitigation purposes. *Id*. He concludes,

> Had trial counsel objected to or corrected these misstatements, the outcome of Mr. Borden's trial would have been different. Counsel's deficient performance prejudiced Mr. Borden. But for counsel's deficient performance the jury would have properly considered and found the existence of one or more mitigation factors. Because of counsel's ineffectiveness Mr. Borden was wrongly sentenced to death.

---

In response to the prosecutor's opening argument, defense counsel also informed the jury that it would be the trial judge who

> will charge you with and the [mitigating] evidence we're going to show you [that Borden had no significant criminal history,].... [and two,] that this offense was committed while he was under the influence of an extreme mental or emotional disturbance. You had evidence that you will have with you. You already have the doctors' testimony. We are readopting and will readopt the evidence that you had before you in this case in the guilt phase.... The third mitigating circumstance that we will show you has to do with the capacity of the defendant, Jeff, to appreciate the criminality of his conduct to the requirements of the law in that it was substantially impaired. Two and three are pretty close together. Those are the mitigating circumstances that we're going to present to you.... His Honor will charge you after we get through... how the law is in this case.

*Id.* at 1096-98.

After the penalty phase case was presented, and before the prosecutor made his alleged misstatement, he still acknowledged that the trial judge was going to instruct the jury regarding extreme mental disturbance as a mitigating factor. *Id.* at Tab. 22, p. 1132. Finally, defense counsel, in his argument made *after* the prosecutor's purported misstatement, again reiterated that the defense was attempting to establish extreme mental or emotional disturbance and lack of capacity as mitigating factors, and pointed the jury to the witnesses and medical records presented by the defense in support of those factors. *Id.* at Tab. 23, pp. 1137-40.

88

*Id.*

On collateral review, the Alabama Court of Criminal Appeals examined the

trial court's denial of this claim and held:

> Borden alleged that defense counsel rendered deficient performance
> when they failed to object to or correct the prosecutor's erroneous
> assertion, made during the penalty phase argument, that the jury had
> already rejected the insanity defense and that this finding would
> somehow carry over to mental health mitigating evidence at the penalty
> phase.  This claim was due to be dismissed  because it failed to meet the
> burden of pleading set forth in Rule 32.3 Ala. R. Crim. P., and it failed
> to satisfy the specificity requirements of Rule 32.6(b),  Ala. R. Crim. P.
> Borden failed to identify the portion of the prosecutor's argument to the
> jury which contained the allegedly erroneous remark.  Borden's petition
> did not present "a clear and specific statement of the grounds upon
> which relief [was] sought, including full disclosure of the factual basis
> of those grounds," as required by Rule 32.6(b).  Instead, the petition
> contained a bare allegation of prosecutorial error and an assertion that
> defense counsel's failure to correct the alleged error "prevented the jury
> from understanding the import of the evidence presented at the
> mitigating phase. . . . (C. 77)."  This provided neither a constitutional
> basis for relief, the full disclosure of the underlying facts, nor any
> allegation of prejudice.
>
> Moreover, the trial court addressed the claim and denied it on the
> merits.  The court identified a portion of the prosecutor's argument that
> it presumed Borden found objectionable:
>
>> "And I believe by your verdict that you've already
>> rejected any severe mental disease or defect on his part.
>> And you've heard no evidence that at the time he
>> committed this act he was under extreme mental or
>> emotional disturbance or that he was severely impaired so
>> as to be unable to understand the criminality of his
>> conduct.  If I'm in error about that, I'm confident [defense
>> counsel] is going to get up here in just a minute and

explain to you how they've proved that.  But I don't think
any of us has heard it."

(T.R. 1136).

The trial court found that the prosecutor's statement was a
reasonable inference based on the jury's rejection of the insanity defense
presented at the guilt phase.  We note, further, that the prosecutor's
argument was based on his interpretation of the evidence or lack of
evidence regarding Borden's mental disturbance.  Trial counsel are free
to present arguments to the jury that are based on inferences from the
evidence.  *E.g., Smith v. State*, 838 So.2d 413, 456-57 (Ala. Crim. App.
2002).  Thus, the trial court determined, the prosecutor's argument was
proper and provided no grounds for objection by defense counsel.
Defense counsel's failure to object did not constitute deficient
performance, the court then concluded, and it denied the claim on the
merits.  We adopt the court's analysis and holding as an alternative to
our holding based on the pleading deficiencies noted above.

In addition to the trial court's analysis regarding the merits of the
claim, we add the following.  It is the duty of the trial court, not counsel,
to instruct the jury on the applicable law, and the jury in this case was
informed that the arguments of counsel were not to be considered as
evidence or law which they were bound to follow.  The trial court
instructed the jury as to the mitigating circumstances in this case . . . .
Finally, we note that the trial court found that Borden  had acted 'under
the influence of extreme mental or emotional disturbance,' and that the
§ 13A-5-51(2), Ala. Code 1975, mitigating circumstance existed. (T.C.
16.)  Therefore, the claim failed to raise a material issue of law or fact,
and summary dismissal was proper.  Therefore, even if the claim had
been pleaded with sufficient specificity, and it was not, we would have
found that summary dismissal was proper.

(Rule 32. R. Vol. 14, Tab. 60, pp. 30-32).

Borden's claim is procedurally defaulted because the state court relied upon

adequate and independent state procedural rules to dismiss the claim.  Even if the

state court's procedural default ruling can be construed as a decision on the merits, Borden cannot establish that counsel's failure to object to the comment was objectively deficient, nor can he show that he was prejudiced by counsel's failure to do so.

As stated earlier, when examining any ineffectiveness claim, *Strickland's* two-prong standard must be applied. Proper application of the first prong means the state court must scrutinize counsel's performance

> [in a] highly deferential [manner]. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf. Engle v. Isaac*, 456 U.S. 107, 133-134, 102 S.Ct. 1558, 1574-1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland v. Washington*, 466 U.S., at 689, 104 S.Ct., at 2065."

*Burger v. Kemp*, 483 U.S. 776, 789 (1987).

In light of all of the circumstances surrounding the prosecutor's alleged improper comment, as recognized by the state court and further explored by this court, Borden cannot show the state court's decision that counsel's failure to object to the comment was objectively deficient or that it prejudiced the penalty phase of his

trial in any manner.[30]  The trial court explicitly instructed the jury during the penalty

phase that the mitigating factors grounded on mental illness were not the same as the

insanity defense used during the guilt phase.  In relation to this particular mitigating

circumstance, the court instructed the jury that:

> A person's capacity to appreciate the criminality of his conduct or to
> conform his conduct to the requirements of law is not the same as his
> ability to know right from wrong generally or to know what he is doing
> is wrong.  A person may indeed know that doing the act that constitutes
> the capital offense is wrong, and still not appreciate its wrongfulness
> because he does not fully comprehend or is not fully sensible to what he
> is doing or how wrong it is.  For this mitigating circumstance to exist,
> the defendant's capacity to appreciate does not have to have been totally
> obliterated.   It is enough that it was substantially lessened or
> substantially diminished.  Finally, this mitigating circumstance would
> exist even if the defendant did appreciate the criminality of his conduct
> if his capacity to conform to the law was substantially impaired since a
> person may appreciate that his actions are wrong and still lack the
> capacity to refrain from doing them.

---

[30]  Even assuming *arguendo*, that the prosecutor's comment was improper:

Improper arguments [only] render the capital sentencing hearing fundamentally
unfair and require reversal when there is a reasonable probability that they changed
the outcome of the case.  *See id.* at 1402.  "'A reasonable probability is a probability
sufficient to undermine confidence in the outcome.'" *Id.* at 1401 *(quoting Strickland
v. Washington*, 466 U.S. 668, 669, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

*Spivey v. Head*,  207 F.3d 1263, 1275-76 (11th Cir. 2000).  Here, "[t]he comment[s] [did not] 'so
infect[] the trial with unfairness as to make the resulting [sentence] a denial of due process.'"
*Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637,
643 (1974)).

(R. Vol. 7, pp. 1157).   In light of this instruction by the court, the prosecutor's

comparison of the insanity defense to the mitigating factor was shown to be false.

Counsel's failure to object to the prosecutor's comparison resulted in no prejudice to

the petitioner because the trial court's instruction correctly informed the jury that the

insanity defense and the mitigating factor of impaired capacity were not the same and,

indeed, that impaired capacity could exist even in the absence of insanity.   Thus,

Borden has failed to show that the trial court's adjudication on the merits was

contrary to or an unreasonable application of clearly established Supreme Court

precedent, nor was it an unreasonable determination of the facts in light of the

evidence before it.   This claim (Claim A.10) is due to be dismissed as procedurally

defaulted or, in the alternative, denied on the merits.

## III.   CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL DURING THE GUILT PHASE

**Claim B**.     *Borden did not receive effective assistance of counsel during the **guilt** phase of trial in violation of his rights guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.*

**1.**     *Alabama's statutory compensation scheme, as applied to petitioner, violates the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.*

This claim (Claim B.1), as set out in the *habeas* petition, is virtually the same

as its Rule 32 predecessor, except that, in his *habeas* petition, Borden attempts to add

93

a new claim[31] to the effect that meager funding for experts deprived of him crucial expert testimony. *See* (Doc. 1, pp. 36-38) and (Rule 32 R. Vol. 9, Tab 39, pp. 4-5). Specifically, Borden alleges that his trial attorneys were ineffective, primarily "because of the insufficient funds provided for the court-appointed attorneys in capital cases. At the time of [his] trial, Alabama Code § 15-12-21 limited court-appointed attorneys trying capital cases to a maximum of $1000 for out-of-court trial preparation for each phase of the capital trial, based on a $20 per hour rate." (Doc. 1, p. 36) (other citation omitted). He contends "such severe compensation limitations" implicate the unconstitutional taking of private property, violations of the separation of powers doctrine, discrimination against the indigent's right to effective counsel, and the Equal Protection Clause. *Id.* at 37. Borden opines that, with such constraints, and the complex nature of his case due to his history of mental illness, defense counsel could not have represented him in such a manner that the result of his trial can be deemed reliable. *Id.*

On collateral review, the Alabama Court of Criminal Appeals found that

---

[31] Borden contends that his counsel was also ineffective because of the "meager funds the State of Alabama permits for experts[,] and concludes legal assistance and due process required that he not be deprived of "crucial expert testimony." *Id.* at 38. (citing *Ake v. Oklahoma*, 470 U.S. 68 (1985). As correctly pointed out by respondent, Borden has *never* raised such a claim until now. (Doc. 18, p. 30-31). Accordingly, it is procedurally defaulted.

> The trial court correctly held that these claims were due to be dismissed because they did not contain a sufficient factual basis. "A bare allegation that a constitutional right has been violated and mere conclusions of law" are not sufficient to warrant further proceedings. Rule 32.6(b), Ala. R. Crim. P. [footnote omitted].

*Borden*, mem. op. CR-00-1379 (Vol. 14, Tab. 60, p. 6).

Respondent answers that the state appellate court's express reliance on an adequate and independent state procedural rule to dismiss the claim precludes federal review of the claim. (Doc. 18, pp. 30-31). Borden offers no specific response to respondent's answer or the appellate court's order. (Doc. 25, pp. 17-21). Instead, he ignores the answer and the state court's decision, and argues that this claim is supported by referencing all other claims of ineffective assistance of counsel during the guilt phase of the trial as set out in paragraphs 122-27 and 130-54[32] of his *habeas* petition. He also encourages the court to give no presumption of correctness to the state court's fact-findings[33] because the findings occurred without petitioner having been afforded the opportunity to be heard on "his claims." (Doc. 25, pp. 17-21).

---

[32]   Again, Borden did not attempt provide any support for this claim during Rule 32 proceedings or his *habeas* petition. He cannot attempt to do so for the first time in a reply brief by referencing all other separate claims of ineffective assistance of counsel during the guilt phase of the proceedings when he failed to present the allegations underlying those claims as support during state post-conviction proceedings. Additionally, as will be seen further within this opinion, the referenced claims are themselves procedurally defaulted pursuant to Rule 32.6(b) and, even if they were not, are due to be dismissed as insufficiently pleaded pursuant to the Rules Governing *Habeas Corpus* Cases.

[33]   No factual findings were ever made by the state court on this claim.

The state appellate court dismissed the claim pursuant to adequate and independent state procedural rules fairly applied.  Accordingly, this court is precluded from federal review of the claim as it is procedurally defaulted, unless petitioner can show "cause and prejudice" or a "fundamental miscarriage of justice," and he has shown neither.

Alternatively, this court has previously rejected ineffective assistance challenges to convictions grounded on the assertion that inadequate compensation to counsel causes ineffectiveness.  Inadequate funding of counsel appointed to represent capital defendants, as unfair as it might be to the attorneys, does not itself amount to ineffective assistance of counsel unless it contributes to actual errors or shortcomings in the performance of counsel.  The *Strickland* standard requires an analysis of specific errors or shortcomings by counsel.  The *Strickland* Court wrote:

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, *the identified acts or omissions* were outside the wide range of professionally competent assistance.  In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. [Italics added for emphasis].

*Id.* at 690. Thus the allegation that compensation caps hindered the ability of counsel to represent a capital defendant has meaning only by reference to specific errors or shortcomings purportedly caused by inadequate defense funding. Only by examining specific errors or shortcomings can it be determined, first, that an error outside the broad scope of competence expected of counsel actually occurred, and second, whether the error caused real prejudice to the defendant. Consequently, as a claim of ineffective assistance divorced from analysis of particular errors or omissions, the assertion that the State of Alabama provides inadequate compensation for capital defense counsel and experts (Claim B.1) fails to state a basis for *habeas* relief, and it is due to be denied.

**2.** *Trial counsel failed to adequately investigate the State's capital murder charge against Borden.*

This claim is virtually the same as its Rule 32 predecessor, with two exceptions in italics below. *See* (Doc. 1, pp. 38-39) and (Rule 32 R. Vol. 9, Tab 39, pp. 5-6). Borden alleges:

> [c]ounsel only met with [him] on a few occasions prior to trial, and they did not adequately establish a relationship of trust that is essential to adequate representation during a capital case and to a full development of a defense theory. Similarly, counsel did not sufficiently meet with [Borden's] family prior to trial, despite the fact [his] parents both possessed information that would have been useful to [Borden's] defense, *as described previously in this Petition*.

*Id.* (italicized portion is absent from the Rule 32 petition). He continues with an assertion that trial counsel did not meet or interview any of the state's witnesses, nor did they attempt to meet most, "if not all," of [petitioner's] prior treating physicians and mental health experts." (Doc. 1, pp. 38-39). He argues that a reasonable investigation "*would have uncovered evidence which likely would have led the jury to find [Borden] not guilty by reason of insanity. . .*" *Id.* (italicized portion is absent from the Rule 32 petition).

Addressing the respondent's invocation of the procedural default doctrine, this court must judge the adequacy of the state courts' procedural-default finding on the basis of the pleadings the state courts had before them. In doing so, the court first turns to the collateral proceedings in which the Alabama Court of Criminal Appeals affirmed the trial court's summary dismissal of the claim, finding that:

> The trial court correctly dismissed this claim on grounds that it did not contain a sufficient factual basis [pursuant to Rule 32.6(b)]. Borden alleged no specific facts supporting the general claims for relief, and he provided no allegations regarding how the additional meetings or interviews would have altered the outcome of the case.

*Borden*, mem. op. CR-00-1379 (Vol. 14, Tab. 60, pp. 6-7). The respondent's answer contends that the state appellate court's express reliance on an adequate and independent state procedural rule to dismiss the claim precludes federal review. (Doc. 18, pp. 31-33). Respondents additionally argues that

This claim is also insufficiently pleaded in this Court . . . . [because]. .
. . Borden does not identify what counsel would have learned from
meeting more with him or what he would have revealed had counsel
developed a relationship of trust with him.   Borden does not identify
what family members counsel should have met with or what specific
information these family members would have revealed.   Borden also
fails to identify which State witnesses counsel should have talked to or
what these conversations would have revealed.   Borden also failed to
identify which treating physicians or mental health providers counsel
failed to meet with or what information these people would have given
counsel.   Bare allegations are insufficient to warrant habeas relief. . . .

 (Doc. 21, pp.  44-45).

    After careful examination, it is clear that the state appellate court dismissed the

claim pursuant to fairly applied, adequate, and independent state procedural rules.

Absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice,"

this procedural default precludes federal review of the claim, and no such showing has

been made.  The requirement that facts supporting a claim be pleaded with specificity

is particularly apt on this claim because petitioner does not deny that trial counsel

engaged in substantial investigation of his family, social, and mental-health history,

but, rather, alleges vaguely that it was not "adequately" investigated.  The factual basis

for the assertion of inadequacy must be made clear.  As the Rule 32 court explained,

petitioner is required to allege what records counsel failed to obtain and present, what

information he failed to elicit in "sensitive" interviews with petitioner's family

members, and how he failed to adequately investigate and interview petitioner's

psychologists and treating physicians.  Without these specific factual allegations, the respondents have no way of answering the petition and the courts have no way of assessing what impact, if any, the alleged inadequacies had on the trial's fairness.

Moreover, the claim fails to satisfy federal pleading requirements.  Rule 2(c) of the Rules Governing § 2254 Proceedings manifestly requires that a *habeas* petition "specify all grounds for relief available to the petitioner," and "state the facts supporting each ground...."  As indicated, no facts have been set forth supporting this claim of inadequate investigation.  Petitioner has not identified any specific fact or evidence that further or better investigation by trial counsel would have unearthed that would have changed the outcome of this case.  It is not enough to allege as a conclusion that a better investigation would have changed the outcome of the case; petitioner must allege the facts that demonstrate such a conclusion, and he has not done so.

Without some factually explicit explanation of what his attorneys did or failed to do that made their representation "inadequate," courts analyzing such claims are placed in the very position that *Strickland v. Washington*, 466 U.S. 668,  104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), says they must avoid, that is, second-guessing the decisions of counsel after the fact.  *Strickland* clearly mandates that courts are to presume that the actions of counsel were reasonable, and that the review of counsel's

representation is "very deferential."  *Id.* at 689; *Jones v. Campbell*, 436 F.3d 1285 (11th Cir. 2006).  Absent some clear explanation by petitioner showing how his attorneys "inadequately" investigated the capital charge against him — something more and different from what they, in fact, did — the court may not speculate about the factual basis of the claim.  Consequently, the failure to plead such a claim with factual specificity undermines the very heart of the *Strickland* analysis.  Simply put, there is no *Strickland* claim for the court to consider when the petitioner fails to plead sufficiently the facts underlying his assertion that counsel failed to do something "adequately."  It is simply too vague to state a *Strickland* claim.

Accordingly, this court is precluded from federal review of the claim as it is procedurally defaulted and insufficiently pleaded under Rule 2(c) of the Rules Governing § 2254 Proceedings.  Claim B.2 is due to be dismissed.

**3.**  *Trial counsel failed to present necessary evidence concerning the mental state of Borden.*

This claim is almost identical to its Rule 32 predecessor*,* the only distinction being that, in his Rule 32 petition, Borden did not refer to "treating physicians" or attempt to incorporate into the claim other allegations in the petition by writing, "as previously described in the Petition."  *See* (Doc. 1, p. 40) and (Rule 32 C.R. Vol. 9, Tab 39, p. 11).

Specifically, Borden alleges trial counsel failed "to present testimonial evidence from any of [petitioner's] treating physicians and mental health care providers, as previously described in this Petition." (Doc. 1, p. 40).  He asserts that these experts could have provided "insight" into petitioner's condition and "laid the groundwork" for his mental-status defense.  *Id.*  Borden also faults his counsel for failing to properly question a defense expert to elicit "helpful testimony" regarding his mental-state defense.  *Id.*  Instead, counsel asked his expert irrelevant questions regarding whether petitioner was "rational."  *Id.*

In assessing the respondent's invocation of the procedural default doctrine, the court must judge the state court's procedural default finding on the basis of the pleadings the state court had before it.  In doing so, the court first turns to the collateral proceedings where the Alabama Court of Criminal Appeals affirmed the trial court's summary dismissal of the claim by finding:

> The trial court correctly dismissed the allegations because they lacked the full disclosure of the factual basis [pursuant to Rule 32.6(b)] required to avoid summary dismissal.  Borden made only general claims without specific facts, and failed to plead even the most basic generalization as to the constitutional rights that were allegedly violated or the prejudice he allegedly suffered.  Borden failed to identify even a single mental health professional who should have been called, and he did not identify which of the "many" who might have provided unspecified "insight" into his mental health condition.  Similarly, given the fact that defense counsel presented extensive testimony from two psychiatric experts, Borden's failure to specify what additional questions might have elicited what he alleged to be "helpful

> information" rendered the claim insufficient to withstand summary dismissal.   These vague claims utterly fail to satisfy the pleading requirements of Rule 32 and they were properly dismissed by the trial court.

*Borden*, mem. op.  CR-00-1379 (Vol. 14, Tab. 60, pp. 13-14).  Respondent's answer asserts that the state appellate court's express reliance on an adequate and independent state procedural rule to dismiss the claim precludes federal review. (Doc. 18, pp. 34-36).  Alternatively, respondent contends the claim is without merit, arguing that

> [t]rial counsel were not ineffective because they failed to call Borden's treating physicians and mental health care providers.  Prior to trial, Borden's attorneys obtained the help of two mental health experts, Dr. Wesley Libb, a clinical psychologist, and Dr. Douglas Sargent, a psychiatrist.  Both of these experts testified at Borden's trial concerning his extensive mental health problems.  (R. 682-776; 778-871) Borden's attorneys also called DeWayne King, a medical assistant in the Jefferson County jail, to testify concerning his observations of Borden.

(R. 872-882).  Borden offers no specific response to respondent's answer or the appellate court's order regarding this claim.

The court finds that consideration of the claim is procedurally defaulted on the basis of the petitioner's failure to plead the claim with specificity, as required by Ala. R. Crim. Proc. 32.6(b).  After careful examination, it is clear the state appellate court dismissed the claim pursuant to fairly applied, adequate, and independent state procedural rules.   For the reasons explained by the Alabama Court of Criminal

Appeals, the pleading specificity requirement is essential to framing the claims seeking relief.  Without such specificity, particularly in the context of a *Strickland* claim, a court is left to guess about the alleged deficiency of counsel and how it caused actual prejudice.  Accordingly, this court is precluded from federal review of the claim as it is  procedurally defaulted, absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice," neither of which has been shown by petitioner.

Likewise, the alternative holding of the state courts that the claim is meritless is not contrary to or an unreasonable application of Supreme Court precedent.  The assessment that trial counsel were not ineffective in relying upon the testimony of three mental health professionals, rather than petitioner's treating physicians, to present the evidence of his mental health problems is not "objectively unreasonable." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  The evidence of petitioner's mental health issues consisted of this testimony, as well as over 600 pages of medical and clinical records and reports.  Petitioner has not identified any specific mental health evidence *not* presented to the jury by counsel.  It simply cannot be said that counsel's presentation of this evidence was deficient.

Petitioner's Claim B.3. is, therefore, due to be denied.

**4.** *Trial counsel failed to examine witnesses regarding, or present argument concerning, the appropriate legal standard for insanity.*

This claim is identical to its Rule 32 predecessor. *See* (Doc. 1, p. 40) and (Rule 32 C.R. Vol. 9, Tab 39, p. 12). Borden's entire claim concerning counsel's purported failure reads as follows:

> [T]he correct legal standard for insanity was whether, as a result of a severe mental defect or disease, the defendant was unable to appreciate the nature and quality or wrongfulness of his acts. Ala. Code § 13A-3-1 (Michie 1994). Nevertheless, trial counsel failed to examine witnesses with regard to this standard or present closing argument to the jury regarding this standard. As a result, trial counsel failed to provide the jury with any evidence or argument concerning the proper legal standard.

(Doc. 1, p. 40).

When this claim was raised on collateral review, the Alabama Court of Criminal Appeals affirmed the trial court's summary dismissal of the claim, finding as follows:

> The trial court correctly dismissed the allegations because they did not provide the full disclosure of the factual basis required to avoid summary dismissal. Borden made only general claims without providing specific facts in support of those claims. Furthermore, Borden failed to identify any witness who should have been but was not examined regarding the legal standard for insanity and he did not identify any portion of closing argument that was allegedly based on the wrong standard. This vague claim was properly dismissed as a result of Borden's failure to plead the claim with specificity.

105

*Borden*, mem. op. (Vol. 14, Tab. 60, pp. 14-15). Respondent's answer contends that the state appellate court's express reliance on an adequate and independent state procedural rule to dismiss the claim precludes federal review. (Doc. 18, pp. 36-38). Respondent also contends that the claim is just as insufficient for federal pleading purposes under Rule 2(c). (Doc. 21, p. 48).

Borden offers no specific response to respondent's answer or the appellate court's order regarding this claim. After careful examination, it is clear the state appellate court dismissed the claim pursuant to fairly applied adequate and independent state procedural rules. Without a showing of "cause and prejudice" to explain his lack of specificity, or a showing of a "fundamental miscarriage of justice," petitioner's claim of ineffective assistance is precluded from review. He has shown neither. Accordingly, this court is precluded from federal review of the claim as it is procedurally defaulted.

Alternatively, the claim is meritless, based on the evidence in the record. Trial counsel presented extensive testimony through petitioner's family members and at least three mental health professionals. Specifically, in examining Dr. Douglas Sargent, a defense psychiatrist with over fifty years of experience, the following exchange with trial counsel occurred:

Q:     All right, sir. Considering again your education, training and experience and your evaluation of Jeff in relation to the medical history that you

have in front of you, do you have an opinion as to whether or not Jeff's actions as — that occurred on December the 24rd [sic], 1993, were as a result of rational behavior?

A:    Do I believe that his actions were rational?

Q:    Yes, sir.

A:    No, I don't.

Q:    All right, sir.   Again, considering your diagnosis and your education and training, and experience, *do you have an opinion as to whether Jeff could appreciate the criminality of his act* on December the 24th, 1993?

A:    I don't think he could at that time.

Q:    All right, sir.  Would you elaborate on why you don't think that he could?

A:    Because I think that he was operating under the control of a very strong impulse that he could not control, that his behavior was disorganized, that he was — that his mood was disordered and that he was therefore unable to — as you say, appreciate his criminality.  I don't think he even thought about the criminality of the act at the time.  I think he acted without thought or regard for the consequences.

(R. Vol. 5, pp. 821-822) (Italics added for emphasis).  It cannot be quibbled that

counsel asked the witness about the correct legal standard for insanity in Alabama.

Alabama law defines the affirmative defense of insanity as existing when "the

defendant, as a result of severe mental disease or defect, was unable to appreciate the

nature and quality or wrongfulness of his acts."  Ala. Code § 13A-3-1 (1975); *Ware*

*v. State*, 584 So. 2d 939, 942 (Ala. Crim. App. 1991) ("While the new § 13A-3-1(a) contains only the 'cognitive' test, the defendant must make a two-part showing to meet this test. 'First, he must establish that he suffered from a serious mental disease or defect at the time of the crime. Second, his mental disease or defect must have prevented him from appreciating the nature and quality or wrongfulness of his acts,'" (quoting *United States v. Knott*, 894 F.2d 1119, 1121 (9th Cir.), cert. denied, 498 U.S. 873, 111 S. Ct. 197, 112 L. Ed. 2d 158 (1990)).  Counsel asked Dr. Sargent whether, due to the petitioner's mental diseases and defects discussed in his testimony and that of Dr. J. Wesley Libb, a psychologist retained by the defense, petitioner could appreciate the "criminality" of his acts.  This phrasing of the question is indistinguishable from asking about the "wrongfulness" of the acts, and certainly falls far short of such a professional deficiency that would rise to the level of ineffective assistance.

Claim B.4 is due to be denied.

**5.**   *Trial counsel failed to inform the jury of the standard for proving petitioner not guilty by reason of insanity.*

In the Rule 32 petition, this entire claim reads, "Borden alleged that since his primary defense was not guilty by reason of mental disease or defect, trial counsel made an egregious error when they failed to inform the jury of the proper standard of proof pertaining to the defense." (Rule 32 C.R. Vol. 9, Tab. 39, p. 11).  Borden then

referred to pages of the trial transcript, with no explanation. *Id.* (citing R. 1027-29).[34] In the *habea*s petition, Borden repeats the post-conviction claim, quotes the legal standard for insanity as set out Alabama Code § 13A-3-1, and adds, "All counsel said was that "'[t]he issue is[,] did [Borden] know right from wrong at the time he pulled that trigger.'" (Doc. 1, p. 41) (with quotation marks but no citation to the record).[35] This, according to Borden, was the wrong standard. *Id.*

The Alabama Court of Criminal Appeals affirmed the circuit court's dismissal of the claim pursuant to Rule 32.6(b), finding as follows:

> The trial court correctly dismissed this claim for failing to satisfy the burden of specific factual pleading required by Rule 32.6(b), Ala. R. Crim. P. Although Borden cites to several record pages in the claim, he has failed to identify with any specificity what in defense counsel's argument he believes was incorrect, nor does he allege what he believes the correct information to be. Furthermore, Borden does not allege how defense counsel's argument prejudiced his case. We note, moreover, that it is the duty of the trial court, not counsel, to instruct the jury on the applicable law, and that the jury in this case was informed that the arguments of counsel were not to be considered as evidence or law

---

[34] At pages 1027-1029 of the trial transcript, defense counsel argued to the jury that they should find "reasonable doubt" about the petitioner's sanity, and that such required the jury to acquit petitioner on the basis of the insanity defense. Certainly this overlooks the fact that, under Alabama law, the insanity defense is an affirmative defense on which defendant bore the burden of proof. This argument, however, attempted, incorrectly, to lighten defendant's burden by suggesting that the existence of any reasonable doubt about the petitioner's sanity required acquittal. It is difficult to see how this argument, even if erroneous, prejudiced the defense because it attempted to make a finding of insanity *easier* for the jury.

[35] Wherever this portion of the record get its derivation, it is certainly not pages 1027-1029, the pages of the record cited without explanation when the claim was raised in the Rule 32 petition.

which they were bound to follow.  Therefore, in addition to failing to plead the claim with sufficient specificity, Borden has failed to state a claim which would have entitled him to relief.

(Rule 32 C.R., Vol. 14, Tab. 60,  p. 13).

Respondent's answer contends that the state appellate court's express reliance on an adequate and independent state procedural rule to dismiss the claim precludes federal review.  (Doc. 18, pp. 36-38).  Respondent also contends that the claim is just as insufficient for federal pleading purposes under Rule 2(c) of the Rules Governing § 2254 Cases.  (Doc. 21, p. 48).

Borden offers no specific response to respondent's answer or the appellate court's order regarding this claim.  After careful examination, it is clear the state appellate court dismissed the claim pursuant to fairly applied, adequate, and independent state procedural rules.  Accordingly, this court is precluded from federal review of the claim as it is  procedurally defaulted.

Alternatively, this claim of ineffective assistance of counsel is meritless.  Under *Strickland*, petitioner can prove neither deficient performance nor prejudice.  During closing argument, counsel told the jury that the issue presented was whether petitioner appreciated the "nature and quality of his act or the wrongfulness of his act."  (R. Vol. 6, p. 998).  But even if this was deficient, the trial court correctly

instructed the jury on the proper standard for consideration of the mental disease or defect defense, as follows:

> [T]he defendant has the burden of proving by clear and convincing evidence to your reasonable satisfaction, one, that at the time of the commission of the alleged acts constituting all or an essential element of the crime with which he is charged, he suffered from a mental disease or defect; and , two, that as a result of such mental disease or defect, he either, one, he was unable to appreciate the nature and the quality of his acts, or, two, was unable to appreciate the wrongfulness of his acts.

(R. Vol. 7, pp. 1065-66).   Hence, even if counsel incorrectly described the legal standard, no prejudice occurred in the consideration of the defense because the court correctly explained it to the jury.   Insofar as petitioner was entitled to an insanity defense, it was thoroughly presented, argued, and explained to the jury.

Petitioner's Claim B.5 is due to be denied.

**6.**   *Trial counsel failed to procure necessary expert assistance.*

This claim is identical to its Rule 32 predecessor.  *See* (Doc. 1, p. 41) and (Rule 32 C.R. Vol. 9, Tab 39, p. 8).   Borden alleges counsel were ineffective for not securing a "juristic psychologist or other expert" to assist with jury selection[]" because an expert could have uncovered hidden prejudices.  (Doc. 1, p. 41).   In examining the claim on collateral review, the Alabama Court of Criminal Appeals held that the claim failed to meet the specificity and full factual disclosure requirements of  Rule 32.6(b), finding

[Borden] failed to specify which veniremember indicated that they had been exposed to publicity, what type of publicity those veniremembers had seen or heard, and he made only a vague assertion that they might have been formed [sic] subtle conceptions about [his] guilt.  He also failed to specify in what ways his defense might have been prejudiced.

(Rule 32 C.R. Vol. 14, Tab 60, pp. 9-10).   As an *alternate* holding, the appellate court affirmed the trial court's ruling that the claim was without merit, because Dr. Allen Sheely, "a well-known expert in this field," did in fact assist trial counsel during the *voir dire* process.  *Id.* at p. 9.

Respondent's answer asserts that the state appellate court's express reliance on an adequate and independent state procedural rule to dismiss the claim precludes federal review.  (Doc. 18, p. 41).  Borden offers no specific response to respondent's answer or the appellate court's order regarding this claim.  After careful examination, it is clear the state appellate court dismissed the claim pursuant to a fairly applied, adequate and independent state procedural rule.  Without a showing of "cause and prejudice" or a "fundamental miscarriage of justice," neither of which has been alleged with facts, this court is precluded from federal review of the claim as it is procedurally defaulted.

The claim also is frivolous.  The finding of fact by the Alabama appellate court that a psychologist did assist the defense team with jury selection is not challenged by the petitioner, and it is entitled to a presumption of correctness.  There has been

no attempt made to show by clear and convincing evidence that the finding is unreasonable in light of the record evidence. As such, § 2254(d) requires this court to presume it to be correct. Therefore, because the defense team was assisted in the very manner the petitioner now alleges it was not, the claim is not only meritless, but frivolous as well. Claim B.6 is due to be denied.

> **7.** *Trial counsel conducted voir dire in a manner which resulted in the accedence to a large number of jurors who had failed to answer any questions during voir dire.*

This claim is identical to its Rule 32 predecessor. *See* ( Doc. 1, pp. 41-42 ) and (Rule 32 C.R. Vol. 9, Tab 39, pp. 8-9). Borden alleges, "Despite the overwhelming importance of *voir dire*, defense counsel conducted *voir dire* in a manner that certain of the venire members were hardly asked any questions at all." *Id.* at 41. In fact, the jurors who actually sat were "only asked one or two questions by defense counsel, if that." *Id.* Borden also alleges counsel failed to "adequately litigate [petitioner's] right" to a jury questionnaire, individual *voir dire*, and fully sequestered *voir dire*. *Id.* at 41-42.[36]

In examining the claim on collateral review, the Alabama Court of Criminal Appeals held that the claim failed to meet the specificity and full factual disclosure requirements of Rule 32.6(b), finding that

---

[36] He ends the claim with the citation, "*See infra.*" It is not the duty of the court to search through the petition and guess what Borden refers to with this citation.

The direct appeal transcript indicates that defense counsel filed motions seeking individual and sequestered voir dire and for a jury questionnaire, among the multitude of motions filed during pretrial proceedings in this case.   The trial court held a hearing on these motions, and the motions were denied.   In his petition Borden fails to put forth a full disclosure of the factual basis to support his very general claims that counsel failed to "adequately" seek individual, sequestered voir dire and a jury questionnaire.   Because Borden alleged only bare legal conclusions with no clear and specific factual basis to support those bare conclusions, the trial court correctly dismissed the allegations. . ."

(Rule 32 C.R. Vol. 14, Tab 60, p.10).

Respondent's answer alleges that the state appellate court's express reliance on an adequate and independent state procedural rule to dismiss the claim precludes federal review.  (Doc. 18,  p. 44).  Borden offers no specific response to respondent's answer or the appellate court's order regarding this claim.  After careful examination, it is clear the state appellate court dismissed the claim pursuant to a fairly applied, adequate, and independent state procedural rule.  Absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice," neither of which has been alleged with facts, this court is precluded from federal review of the claim as it is procedurally defaulted.

Furthermore, the court has read the *voir dire* of the jury pool, and finds that it was thorough and fair.  Although the panel was initially questioned by counsel together in open court, individual *voir dire* of several individual jurors was conducted

114

when they expressed concerns about the death penalty.  The trial court made clear that counsel could ask for individual *voir dire* of any prospective juror whose answers in open court suggested additional questions, and several jurors were privately questioned.  (R. Vol. 2, pp. 225 *et seq*.).   Claim B.7. is due to be denied.

8. *Trial counsel erroneously moved to strike a juror who expressed an unwillingness to vote in favor of the death penalty in almost every situation.  The motion was unopposed by the prosecution and immediately granted by the court.*

The title of this claim is indeed the entire claim.  (Doc. 1, p 41).  It is also identical to its Rule 32 predecessor, except that the Rule 32 petition actually makes a citation to record.  *See id.,* and (Rule 32 C.R. Vol. 9, Tab 39, p. 14) (citing R. 242, 246-47).   In examining the claim on collateral review, the Alabama Court of Criminal Appeals *primarily* held that the claim

was due to be dismissed for failure to comply with the pleading requirements of Rule 32.3, Ala. R. Crim. P., and with the specificity requirements of Rule 32.6(b), Ala. R. Crim. P.  Borden failed to plead any grounds upon which he sought relief, and he failed to allege how counsel's actions prejudiced the defense.   He merely cited his interpretation of the veniremember's feelings about the death penalty, and the fact that defense counsel moved to strike the veniremember.  This allegation failed to satisfy the specificity and pleading requirements, and the claim was due to be summarily dismissed.

The trial court addressed the merits of the claim, finding that the claim was unsupported by the record and, therefore, was without merit.  Specifically, the court noted that defense counsel moved to strike the veniremember because she was uncertain about whether she could vote

to impose the death penalty.[37]  When he struck the veniremember, the trial judge stated that he was doing so because the veniremember was not sure she could follow the law.  (R. 247).  We agree with the court's ruling in its denial of this Rule 32 claim the allegations are not supported by the record, that Borden failed to establish deficient performance, and that the claim had no merit.  We adopt the trial court's holding on the merits and as *alternative* to our holding that the claim was not pleaded sufficiently and was due to be dismissed.

(Rule 32 C.R. Vol. 14, Tab 60, pp. 18-19). (emphasis added).

Respondent's answer asserts that the state appellate court's express reliance on an adequate and independent state procedural rule to dismiss the claim precludes federal review.  (Doc. 18, p. 46).  Borden offers no specific response to respondent's answer or the appellate court's order regarding this claim.  After careful examination, it is clear the state appellate court dismissed the claim pursuant to fairly applied, adequate, and independent state procedural rules.  There has been no attempt made

---

[37]  The trial court explained its finding that the claim was without merit as follows:

> Although the record does establish some apprehension on the part of the potential juror in question, it does not establish that this individual was strongly opposed to the death penalty.  (R. 242-46)  In fact, the record shows that trial counsel moved to strike this juror because they were not able to clearly ascertain her position on the death penalty.  (R. 246-47) The record does not support Borden's assertion that the State was 'obviously unopposed' to the motion to strike the potential juror.  In fact, the record clearly shows the State tried to keep this juror on the venire."  (R. 246-47)

(Rule 32 C.R., Vol. 13, Tab 59, pp. 28-29).

to plead facts showing "cause and prejudice" to excuse the defaults.  Accordingly, this court is precluded from federal review of the claim as it is procedurally defaulted.

Alternatively, this court also finds that the state courts' rejection of the claim on the merits was not contrary to or an unreasonable application of controlling Supreme Court precedent, and, thus, petitioner is not entitled to relief under 28 U.S.C. § 2254(d).  The only prospective juror defense counsel moved to strike due to "equivocation" on the death penalty was juror Reeves.  (R. Vol. 2, pp. 241-247). Immediately before Ms. Reeves's private *voir dire*, juror Peoples expressed adamant opposition to the death penalty, and while juror Peoples was excused by the court, it was over the objection of defense counsel.  Counsel clearly understood and pursued the need to seat jurors who were inclined to oppose the death penalty.  Even though counsel moved to strike juror Reeves on the basis of her equivocation, this was plainly a strategic or tactical decision that cannot be second-guessed.  This claim is meritless, and the determination by the state courts that the claim lacked merit is due deference under § 2254(d).  Claim B.8 is due to be denied.

**9.** *Trial counsel failed to adequately challenge the State's investigation and presentation of the case.*

This claim is identical to its Rule 32 predecessor.  *See* (Doc. 1, pp. 42-43) and (Rule 32 C.R. Vol. 9, Tab 39, pp. 6-7).  Borden alleges the following:

Mr. Borden's defense counsel failed to properly challenge the State's investigation and presentation of its case, failed to adequately cross-examine State witnesses, failed to challenge the testimony of State experts, and failed to object to irrelevant and prejudicial evidence introduced by the State, and therefore abdicated their constitutionally required responsibility to subject the state's case to adversarial testing. *Strickland v. Washington*, 466 U.S. 668 (1984). The errors of counsel allowed the state to present considerable evidence that would have otherwise been suppressed or otherwise properly excluded.

Defense counsel was ineffective in not challenging the admissibility of evidence introduced by the State's witnesses. Though defense counsel routinely made "boilerplate" objections, counsel never supported the objections, either with factual development documenting the State's failures, or with legal argument as to why the evidence should be excluded. Many of the State's exhibits were improperly admitted and thus a well-articulated argument would have presumably kept the evidence excluded. No such arguments were forthcoming, and as a result the exhibits were admitted despite their inadmissibility. See *infra* (detailing the reversible misconduct of the prosecutor)."

In addition to counsel's failure to effectively cross-examine the state witnesses, and its failure to properly object and block inadmissible testimony, counsel was grossly ineffective for failing to secure experts to challenge the State's case and suppress key evidence, as discussed, *infra*.

(Doc. 1, pp. 42-43).

In examining the claim on collateral review, the Alabama Court of Criminal Appeals held that the claim failed to meet the specificity and full factual disclosure requirements of Rule 32.6(b), finding that

The foregoing allegations fail to provide either a clear and specific statement of the grounds upon which relief is sought, or full disclosure of the factual basis for those grounds. The allegations are vague and

118

> represent a 'scattergun' approach that provided the State and the trial
> court with no information about the precise nature of the allegation
> being made.

(Rule 32 C.R. Vol. 14, Tab 60, p. 8).  Respondent's answer argues that the state

appellate court's express reliance on an adequate and independent state procedural

rule to dismiss the claim precludes federal review.  (Doc. 18,  pp. 48-50).  Borden

offers no specific response to respondent's answer or the appellate court's order

regarding this claim.  After careful examination, it is clear the state appellate court

dismissed the claim pursuant to a fairly applied adequate and independent state

procedural rule.  Petitioner has made no attempt to allege facts supporting an

assertion of "cause and prejudice" to excuse the default.  Accordingly, this court is

precluded from federal review of the claim as it is  procedurally defaulted.

The claim is deficiently pleaded under Rule 2(c) of the Rules Governing § 2254

Cases, as well, in that it wholly fails to allege facts consistent with the requirement

in *Strickland* that mistakes and deficiencies in the performance of counsel be

identified and assessed within the context of the entire trial.  As the Eleventh Circuit

has said, even the best attorneys make mistakes in the trial of cases, but it is only

those mistakes that undermine confidence in the fairness of the outcome that warrant

relief.  Without some factually explicit explanation of what his attorneys did or failed

to do that made their representation "inadequate," courts analyzing such claims are

placed in the very position that *Strickland v. Washington*, 466 U.S. 668,  104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), says they must avoid; that is, second-guessing the decisions of counsel after the fact.  *Strickland* very clearly mandates that courts are to presume that the actions of counsel were reasonable, and that the review of counsel's representation is "very deferential."  *Id.* at 689; *Jones v Campbell*, 436 F.3d 1285 (11th Cir. 2006).  Petitioner acknowledges that his attorneys made objections and cross-examined witnesses; he merely contends they did not do so "adequately," without attempting to explain the nature of that inadequacy.  Absent some clear explanation by petitioner about how his attorneys "inadequately" challenged the state's investigation and presentation of the case against him — something more and different from what they, in fact, did — the court may not speculate about the factual basis of the claim.  Consequently, the failure to plead such a claim with factual specificity undermines the very heart of the *Strickland* analysis.  Simply put, there is no *Strickland* claim for the court to consider when the petitioner fails to plead sufficiently the facts underlying his assertion that counsel failed to do something "adequately."  It is simply too vague to state a *Strickland* claim under Rule 2(c).

Claim B.9 is due to be denied.

**10.**   *Trial counsel failed to prevent or otherwise object to egregious instances of prosecutorial misconduct.*

This claim is identical to its Rule 32 predecessor.  *See* (Doc. 1, pp. 43-44) and (Rule 32 C.R. Vol. 14, Tab 39, pp. 9-10 ).  Borden alleges the prosecutor engaged in highly improper and prejudicial misconduct, including making highly inflammatory and prejudicial closing arguments, but counsel failed to object in a timely manner that would have prevented the ongoing behavior and preserved the "reversible error for appellate review."  (Doc. 1, p. 43).  According to Borden,

> Among the numerous instances of misconduct during opening and closing arguments, the district attorney mischaracterized evidence about one of Mr. Borden's suicide attempts, stated that the defense should have given Mr. Borden's records to the prosecution's psychiatrist, argued about the defense's failure to call a witness, cried, and mischaracterized the law regarding the insanity defense.

*Id*.  Petitioner then cites *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974), "[a]s discussed elsewhere," and refers the court to his previous procedurally defaulted prosecutorial-misconduct claim, by writing, "*See infra*."  *Id.*[38]  Borden also alleges that "counsel was ineffective for failing to fully litigate the admission of gruesome

---

[38]  At Claim F in the petition, Borden alleges that misconduct by the prosecutor deprived him of a fair trial.  In particular, he alleges that the prosecutor improperly introduced into evidence numerous, cumulative color photographs of the victims and irrelevant "victim-impact" evidence, simply to inflame the jury.  He also asserts that the prosecutor made inflammatory and improper opening and closing arguments, referring to evidence outside the record, mis-instructing the jury on the elements of the aggravating factor, erroneously instructing the jury regarding the defendant's legal responsibilities, and weeping before the jury.

photographs, " which were cumulative and "served little purpose" but to inflame the jury.  He concludes that his "Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights" were violated.  *Id.* at 44.

In examining the claim on collateral review, the Alabama Court of Criminal Appeals held:

> The trial court correctly dismissed these allegations because Borden failed to provide a full disclosure of the factual basis underlying the claim of error....  Borden made broad statements regarding 'ongoing prejudicial comments' that he alleged constituted cumulative error, but he specified only a few comments and left the others unidentified. Furthermore, Borden failed to allege how the prosecutor's comments prejudiced his case.  Therefore, Borden failed to satisfy the pleading requirements of Rule 32.6(b), Ala.R.Crim.P  Moreover, we note that defense counsel made a motion for a mistrial and numerous objections to the prosecutor's arguments at trial, and specifically objected to the prosecutor crying during his portion of closing arguments.  Therefore, no material issue of law or fact existed that would entitle Borden to relief.  Rule 32.7, Ala. R.Crim.P. , [sic] and that portion of the claim was subject to dismissal on that ground....[sic]

> Similarly,... Borden alleged that counsel failed to 'fully litigate' the objection to the photographs.   Trial counsel objected when the photographs were admitted and Borden fails to identify what additional objections counsel should have raised.  Nor does the petition contain specific information about which photographs Borden believes counsel should have objected to, or what additional grounds should have been raised.  Because Borden failed to plead the claim with sufficient specificity, this portion of the claim was properly dismissed. . . .

(Rule 32 C.R. Vol. 14, Tab 60, pp. 12-13).[39]

---

[39]   The appellate court also wrote, "[f]urthermore" and "moreover," the prosecutor's comments had been examined for plain error on direct review and none was found.  This appears to

Respondent's answer argues that the state appellate court's express reliance on an adequate and independent state procedural rule to dismiss the claim precludes federal review. (Doc. 18, pp. 51-52). Respondent declares that Borden has failed to show any prejudice and did not allege that his trial was rendered fundamentally unfair. As an alternate answer, respondent contends that Borden is not entitled to § 2254(d) relief even on the merits of the claims. Borden offers no specific response to respondent's answer or the appellate court's order regarding this claim.

After careful examination, it is clear the state appellate court dismissed the claim pursuant to fairly applied adequate and independent state procedural rules. Accordingly, this court is precluded from federal review of the claim as it is procedurally defaulted, unless he can establish "cause and prejudice" for failing to plead the claim with more factual specificity during the Rule 32 proceedings. He has not attempted to do so.

Additionally, even if it could be argued that Borden adequately pleaded this claim, he has completely failed to show how the state court's decision to deny the claim on the merits was contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court, nor has he shown the

---

be an alternative holding that the claims lacked merit.

decision was based upon an unreasonable determination of the facts in light of the evidence before it.

Contrary to the petitioner's allegation, the trial record reflects that counsel objected repeatedly to the comments and conduct of the prosecutor during closing argument and rebuttal.  (*See* R. Vol. 6, pp. 978, 1032, 1036, 1040, 1042, 1044, 1045, 1048, 1049, 1051, and 1052).  Even after the close of the arguments, counsel moved for an instruction to the jury that they must not let passion or sympathy sway their deliberations.  The following exchange occurred:

> MR. SHORES:   Your Honor, I'd like to be heard on the matter before you get off the bench.

> THE COURT:    All right.

> MR. SHORES:   Your Honor, we're going to reassert our objection to Mr. Brown's personal conduct before the jury. Obviously this is an emotional case.  It's an emotional case for all of us on every side.  But the view in front of the jury of the prosecutor crying when he's presenting his case before the jury interjects his own personal emotions into the matter, that is highly improper, it's prosecutorial misconduct, it's highly prejudicial.  We're also going to ask the Court instruct the jury on the pattern jury charge on sympathy and emotion.  If the Court hasn't already considered a charge like that, we would certainly move in light of this for a charge from the pattern jury instructions about those issues.

> THE COURT:    Well, I overrule your motion.  Anything else?

MR. SHORES:    Does the Court not intend to give a charge on sympathy and emotion, Your Honor?

THE COURT:    At this point I don't.

MR. SHORES:    We would except to that ruling, Your Honor.

(R. Vol. 6, pp. 1052-53).  Clearly, counsel tried repeatedly to object to what was perceived as prosecutorial misconduct during final arguments, but was rebuffed at every turn by the trial court.  It simply cannot be said that counsel was ineffective in attempting to prevent inflammatory argument by the prosecutor.  The state courts' rejection of this claim under *Strickland* was not contrary to nor an unreasonable application of Supreme Court precedent, and that resolution of the claim is due to be honored under § 2254(d).

The same is true with respect to the allegedly inflammatory photographs.  Once again, counsel objected to them and attempted to prevent them from going to the jury.  (*See* R. Vol. 4, pp. 503 and 504).  Regardless of whether the photographs were gruesome, cumulative, or unnecessary, counsel tried to prevent the photographs from being used, but was unsuccessful.  Counsel was not ineffective.

As a claim of ineffective assistance of counsel, Claim B.10 is due to be denied.

11.     *Trial counsel failed to challenge the introduction of new evidence in the prosecution's rebuttal case.*

This claim is identical to its Rule 32 predecessor.  *See* (Doc. 1, p. 44) and (Rule 32 C.R. Vol. 9, Tab 39, pp. 11-12).  Borden contends that "it is well established that no new evidence may be admitted during a rebuttal case.  *Ellison v. State*, 33 Ala. App. 405, 34 So. 2d 185 (Ala. Ct. App. 1948)."  (Doc. 1, p. 44).   He then alleges counsel was ineffective because "[d]uring the prosecution's rebuttal case, it introduced evidence for the first time that several weeks prior to the incident Mr. Borden allegedly purchased the gun that was used in the shootings[,]" but counsel failed to object to the admission in a timely manner.  *Id.*

In examining the claim on collateral review, the Alabama Court of Criminal Appeals *primarily* held that the claim failed to meet the specificity and full factual disclosure requirements of  Rule 32.6(b), finding:

> This claim failed to satisfy the pleading requirements of Rule 32.3 and Rule 32.6(b), Ala. R. Crim. P.  The petition contained only allegations regarding counsel's failure to object; the petition contained no facts indicating how counsel's performance prejudiced his defense.  Thus, the claim was subject to summary dismissal for failure to satisfy the pleading  requirements.  Moreover, as the trial court found, the claim was meritless.  As the trial court noted, testimony that Borden purchased the murder weapon 10 days before he killed his estranged wife and her father was proper because it was offered to rebut the inference created by Borden's mother's testimony that traumatic events in the week before the murder caused him to kill the victims.[40]  Because the testimony was

---

[40]  *See* (Rule 32 C.R. Vol. 14, Tab 59, pp. 21-23).

> proper, Borden could establish neither deficient performance or [sic] prejudice.  Summary dismissal... was proper for this additional reason.

(Rule 32 C.R. Vol. 14, Tab 60, p.14).

Respondent's answer alleges that the state appellate court's express reliance on an adequate and independent state procedural rule to dismiss the claim precludes federal review.  (Doc. 18, p. 53).  Borden offers no specific response to respondent's answer or the appellate court's order regarding this claim.  After careful examination, it is clear the state appellate court dismissed the claim pursuant to fairly applied adequate and independent state procedural rules.  Accordingly, this court is precluded from federal review of the claim as it is procedurally defaulted and petitioner has not shown "cause and prejudice" excusing the default.

Alternatively, even if it may be argued that Borden adequately pleaded this claim, he has completely failed to show the state court's decision to deny the claim on the merits was contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court, nor has he shown the decision was based upon an unreasonable determination of the facts in light of the evidence before it.  The trial record shows that the issue arose during the rebuttal testimony of Sergeant Eddie Deason.  ( R. Vol. 6, pp. 886-887).  Sergeant Deason testified that the murder weapon was purchased ten days before the shooting.  As the state appellate court noted, this was proper rebuttal evidence "to rebut the inference created by

Borden's mother's testimony that traumatic events in the week before the murder caused him to kill the victims." The evidence clearly indicated that Borden secured the weapon before the "traumatic events" alluded to by defense testimony. As proper rebuttal evidence, there was no sustainable objection counsel could make to the evidence, even though he did argue a hearsay objection. Absent a winnable objection to be made, counsel could not be ineffective in failing to make such an objection. This conclusion by the state appellate court is not contrary to or an unreasonable application of Supreme Court precedent, and this court must accept it. Thus, Claim B.11 is due to be denied.

**12.** *Trial counsel failed to object to the prosecution's mischaracterization of evidence during closing argument.*

This claim is identical to its Rule 32 predecessor, except that in the Rule 32 petition, Borden at least made a citation to the record. *See* ( Doc. 1, pp. 44-45) and (Rule 32 C.R. Vol. 9, Tab 39, p. 13). Borden contends that "[i]t is well-settled that during closing arguments, a prosecutor may not make remarks regarding his personal opinion or the defendant's motives in standing trial." (Doc. 1, p. 45). He argues that the remarks, "if made, are sufficiently prejudicial to deprive the defendant of his constitutional right to a fair trial." *Id.* (citing *Don[n]elly v. [De]Christoforo*, 416

U.S. 637 (1974) (other citations omitted)).[41]   Borden then alleges, "During closing

argument, the prosecutor made statements of personal opinion concerning Mr. Borden

in direct contradiction of the law, as described above." *Id.* at 45.  Although not clear,

the "as described above" appears to refer back to the allegations of prosecutorial

misconduct during closing arguments addressed in Claim B.10.

In examining the claim on collateral review, the Alabama Court of Criminal

Appeals held:

> Borden cites to two pages of the record, but he does not identify which
> of the prosecutor's statements is objectionable."[42]   Nor does he make a
> specific allegation regarding the alleged impropriety of any of the
> prosecutor's statements contained on those two pages.   Furthermore,
> Borden has failed to allege how the prosecutor's remarks resulted in
> prejudice to his case.  The trial court correctly determined that this claim
> was not pleaded with sufficient specificity as required by Rule 32.6(b).
> . . .

---

[41]   This is an incorrect statement of federal law.   Even if the prosecutor's unidentified
comments  were improper,

> [i]t "is not enough that the prosecutors' remarks were undesirable or even universally
> condemned." *Darden v. Wainwright*, 699 F.2d, at 1036.  The relevant question is
> whether the prosecutors' comments "so infected the trial with unfairness as to make
> the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416
> U.S. 637, 94 S.Ct. 1868, 40 L. Ed. 2d 431 (1974).

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

[42] At this juncture, the state appellate court inserted footnote 5, which reads, "Moreover, the
trial transcript reflects that on the first of the two pages cited by counsel on appeal, trial counsel did,
in fact, object to one of the prosecutor's statements."  This appears to be an alternative finding that
the claim also is meritless.

(Rule 32 C.R. Vol. 14, Tab 60, p. 15).

Respondent's answer contends that the state appellate court's express reliance on an adequate and independent state procedural rule to dismiss the claim precludes federal review. (Doc. 18, p. 55). Borden offers no specific response to respondent's answer or the appellate court's order regarding this claim. After careful examination, it is clear the state appellate court dismissed the claim pursuant to fairly applied adequate and independent state procedural rules. Accordingly, this court is precluded from federal review of the claim as it is procedurally defaulted, absent a showing of "cause and prejudice," which petitioner has not attempted.

Alternatively, the finding by the state appellate court that "the trial transcript reflects that on the first of the two pages cited by counsel on appeal, trial counsel did, in fact, object to one of the prosecutor's statements," constitutes a rejection of the claim on the merits. This rejection is not contrary to or an unreasonable application of Supreme Court precedent. Counsel can be faulted only if they failed to make an objection that an objectively reasonable attorney would have made *and* the failure to do so caused actual harm to the defendant. As noted by the state appellate court, counsel *did* object to many of the remarks by the prosecutor, and was overruled on virtually every objection. Not only was counsel not deficient, but there is no reason to believe that any objection they may have urged would have been sustained. The

resolution of this *Strickland* claim by the state appellate court is entitled to deference

under § 2254(d).  Hence, Claim B.12 is due to be denied.

> **13.** *Trial counsel failed to adequately determine if the chain of custody of the alleged murder weapon had been broken*.

This claim is identical to its Rule 32 predecessor.  *See* (Doc. 1, p. 45) and (Rule

32 C.R. Vol. 14, Tab 39, p. 7).  The *entire* claim reads as follows:

> At trial, witnesses for the prosecution presented evidence that they claimed linked the murder weapon to Petitioner.  However, the prosecution failed to adequately present the chain of custody for the gun provided at trial and as a result, large gaps in the chain of custody remained.  Nevertheless, trial counsel failed to object to this failure.

(Doc. 1, p. 45).  In examining the claim on collateral review, the Alabama Court of

Criminal Appeals held that the claim failed to meet the specificity and full-factual

disclosure requirements of  Rule 32.6(b), finding

> This claim did not provide a full disclosure of the factual basis because it did not identify where the alleged gaps in the chain of custody existed. . . . We note, additionally, that the trial record was reviewed for plain error when the case was on direct appeal, and no plain error was identified with regard to the chain of custody for the murder weapon.

(Rule 32 C.R. Vol. 14, Tab 60, p. 8).

Respondent asserts that the state appellate court's express reliance on an

adequate and independent state procedural rule to dismiss the claim precludes federal

review.  (Doc. 18,  p. 57-58).  Borden offers no specific response to respondent's

answer or the appellate court's order regarding this claim.  After careful examination,

it is clear the state appellate court dismissed the claim pursuant to fairly applied adequate, and independent state procedural rules.   Accordingly, this court is precluded from federal review of the claim as it is  procedurally defaulted, unless petitioner is  able to show "cause and prejudice" excusing the default, which he has not done.

Alternatively, the claim is patently meritless.   The defense at trial never involved denying that petitioner was the shooter or that the weapon found at the scene was the murder weapon.   Even today, petitioner does not deny that he used *that* weapon to shoot his wife and father-in-law.   The defense was insanity.   In light of that defense, it was immaterial whether the chain-of-custody for admission of the gun into evidence was scrupulously proven.   The link between the gun and the killings was not a substantial issue in dispute.   There is no assertion, even today, that the gun entered into evidence was *not* the murder weapon or that it was tampered with or otherwise tainted in a way harmful to the defense.   Counsel's failure to more rigorously oppose admission of the gun into evidence was not unreasonable or ineffective assistance. Indeed, it might be argued that such would have distracted the jury from the real defense issue: was petitioner insane?

Hence, on both procedural-default grounds and on the merits, Claim B.13 is due to be denied.

**14.**   *Trial counsel failed to adequately examine state witnesses with regard to their belief that the gun introduced into evidence was the gun used in commission of the crime.*

This claim is identical to its Rule 32 predecessor.  *See* (Doc. 1, p. 45) and (Rule

32 C.R. Vol. 9, Tab 39, pp. 7-8).  The *entire* claim reads as follows:

> At trial, witnesses at the time of the shootings testified that when they received the gun allegedly used in the shootings, they removed all of the remaining bullets from the gun.  However, the witness who asked to authenticate the gun at trial said that when he received the gun, there was still a bullet in the chamber.
>
> This inconsistency created the possibility that the gun introduced at trial was not the gun used in the shootings.  However, trial counsel failed to determine if this was indeed true.

(Doc. 1, p. 45).   In examining the claim on collateral review, the Alabama Court of

Criminal Appeals held

> Borden failed to include a clear and specific statement of the grounds for relief . . . .   Borden failed to specify which witnesses presented the testimony he alleges to be inconsistent.  Moreover, Borden failed to include in the petition any facts tending to indicate how counsel's acts or omissions prejudiced his defense.  Because he failed to satisfy the specificity requirements of Rule 32.6(b) and the pleading requirements of Rule 32.3, the claim was subject to summary dismissal.[43]

---

[43]  At this juncture, the appellate court placed footnote 3, which reads:

> The circuit court addressed the merits of this claim, finding that the evidence overwhelmingly established that Borden murdered two victims and that counsel conceded that fact and focused on a defense of insanity and lack of mental capacity. The trial court determined that Borden could not demonstrate prejudice and that his petition failed to state a claim for relief, so that summary dismissal was appropriate. We adopt the court's findings of fact and conclusions of law as an alternative holding, but find that the claim was not sufficiently pleaded and need not to have

(Rule 32 C.R. Vol. 14, Tab 60, p. 9).

Respondent argues that the state appellate court's express reliance on an adequate and independent state procedural rule to dismiss the claim precludes federal review, or in the alternative, that Borden has not shown he is entitled to 28 U.S.C § 2254(d) relief.  (Doc. 18,   pp. 60-61).   Borden offers no specific response to respondent's answer or the appellate court's order regarding this claim.  After careful examination, it is clear the state appellate court dismissed the claim pursuant to fairly applied adequate and independent state procedural rules.  Accordingly, this court is precluded from federal review of the claim as it is  procedurally defaulted, unless the petitioner can show "cause and prejudice" to excuse the default, which he has not done.

Alternatively, even if it could be argued that Borden adequately pleaded this claim, he has completely failed to show that the state appellate court's decision to deny the claim on the merits was contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court, nor has he shown the decision was based upon an unreasonable determination of the facts in light of the evidence before it.  *See* 28 U.S.C. § 2254(d).  For all of the reasons discussed in the

been addressed on the merits.

preceding section, this claim is simply meritless, and the state appellate court correctly found that it was so. Claim B.14, therefore, is due to be denied.

**15.** *Trial counsel failed to request a jury instruction for non-capital murder and for a finding of two separate, unrelated acts of intentional murder.*

This claim is identical to its Rule 32 predecessor. *See* (Doc. 1, p. 46) and (Rule 32 C.R. Vol. 9, Tab 39, p. 12). Borden contends that, under Alabama law, a capital defendant is entitled to a jury instruction on any lesser-included offense. (Doc. 1, p. 46) (citing *Beck v. Alabama*, 447 U.S. 625, 637 (1980).[44] He then argues that the evidence in his case

> was sufficient to show that Mr. Harris and Ms. Borden died in two separate shootings; their deaths were delayed in time, in different locations and under different circumstances. Under this scenario, Mr. Borden was entitled to a jury instruction that the deaths of Mr. Harris and Ms. Borden were two separate, unrelated acts of murder and therefore did not subject Mr. Borden to a possible death sentence.

> Nevertheless, trial counsel failed to request such an instruction, despite an invitation by the trial court to do so.[45]

*Id.*

---

[44] In Alabama, a defendant is entitled to a jury instruction on any lesser-included offense, if there is any evidence whatsoever to support it. Under *Beck*, "if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction [of a capital offense], Alabama is constitutionally prohibited from withdrawing that option [of returning a verdict on a lesser offense] from the jury in a capital case." *Beck v. Alabama*, 447 U.S. 625, 638, 100 S. Ct. 2382, 2390, 65 L. Ed. 2d 392 (1980).

[45] Borden provides no record citation.

135

In examining the claim on collateral review, the Alabama Court of Criminal Appeals made the following findings of fact and conclusions of law on the merits of the claim:

> Borden alleged that he was entitled to a jury instruction on the lesser-included offense of murder because, he said the victims "died in two separate shootings; their deaths were delayed in time, in different locations and under different circumstances." (C. 67). He alleged that trial counsel was ineffective for failing to request such an instruction. The trial court denied this claim, noting that, at trial, the court suggested that a lesser-included charge on murder as to each victim might be appropriate if the jury found that the victims were not murdered pursuant to a common plan or scheme of conduct. Defense counsel stated that he did not disagree with that. (R. 959).[46] Thus, the court determined, Borden failed to establish deficient performance. We agree.
>
> The trial court further stated that Borden's assertion that the murders were in separate locations and at different times was not supported by the evidence. The trial court was correct; Borden's assertion is utterly baseless. The facts from the record, as stated on direct appeal, demonstrated that Borden fired a shot into the back of Cheryl's head, and when her father ran toward the house yelling for someone to call 911, Borden fired shots at him as he ran. There is no support for Borden's claim that the murders "were delayed in time, in different locations and under different circumstances." The trial court correctly determined that Borden established neither deficient performance nor prejudice as to this claim.
>
> Furthermore, we note that defense counsel also urged the court to charge the jury on the lesser offense of reckless murder as to Count II, involving the death of the father, because Borden's shooting into an occupied dwelling was a reckless act. As to Count I, which charged the murder of two or more persons pursuant to a common plan or scheme,

---

[46] In a footnote, the appellate court added, "We note, additionally, that the trial court charged the jury on the lesser-included offense of murder as to Count II. (R. 1078)." *Id.* at n. 12.

defense counsel argues that a felony-murder instruction should be given as to Cheryl, because the jury could find that she was killed during the course of a felony — the reckless murder of her father.

If the jury returned verdicts for reckless murder and felony-murder, there could be no capital offense, defense counsel argued.  (R. 953, 961).   Thus, the record further reflects that defense counsel requested that the court charge the jury on lesser-included offenses that, under the circumstances, might have eliminated a capital-murder conviction.   This provides additional support for the trial court's determination that Borden failed to establish deficient performance or prejudice as to this claim.

(Rule 32 C.R. Vol. 14, Tab 60, pp. 5-6).

Respondent contends that Borden has not shown the appellate court's affirmation of the trial court's denial of this claim was contrary to or an unreasonable application of clearly established federal law or based upon an unreasonable determination of the facts in light of the evidence before it.   (Doc. 18, pp. 34-36). Borden offers no reply.

After careful review of the record and the decision of the Alabama Court of Criminal Appeals, it is apparent that Borden has failed to show the appellate court's decision was contrary to or an unreasonable application of federal law, or an unreasonable determination of the facts in light of the evidence before it.  The trial record supports the factual findings of the state appellate court with regard to defense counsel's request for lesser-included offense instructions.  That counsel requested the instructions flatly contradicts the assertion that they were constitutionally ineffective

in that regard.  Moreover, even if counsel had not requested the instructions, it would not have been error because the evidence simply did not rationally support such lesser-included instructions.  The fact that petitioner shot his wife in the back of the head and then fired multiple shots at his father-in-law, killing him also, plainly establishes that this capital crime involved the intentional killing of two people during one criminal transaction.  There simply was no other rational view of the evidence.  While petitioner argues that the facts could be viewed as proving a reckless killing of Roland Harris, during which Cheryl Borden was unintentionally killed, this view simply disregards the evidence.  Cheryl was shot first, at very close range in the back of the head, *after* which petitioner began firing at Mr. Harris.  There was no rational view of the evidence supporting the petitioner's requested instructions.  Claim B.15 is due to be denied.

**16.**   *Trial counsel failed to object to improper jury instructions*.

This claim is identical to its Rule 32 predecessor.  *See* (Doc. 1, p. 46) and (Rule 32 C.R. Vol. 9, Tab 39, p.9).  The *entire* claim in the instant petition reads as follows:

> The instructions given to Mr. Borden's jury were incorrect in form and substance.  The instructions were bifurcated, and they misstated the law that the jury was to apply.  Despite these shortcomings, trial counsel failed to properly object to the instructions.

(Doc. 1, p. 46).  In examining the claim on Rule 32 collateral review, the Alabama Court of Criminal Appeals held that the claim failed to meet the specificity and full

138

factual disclosure requirements of Rule 32.6(b), writing, "Borden's vague conclusions of error are unsupported by any allegations of fact and . . . [he] fails to specify even one jury instruction that was faulty." (Rule 32 C.R. Vol. 14, Tab 60, p. 11).

Respondent argues correctly that the state appellate court's express reliance on an adequate and independent state procedural rule to dismiss the claim precludes federal review. (Doc. 18, p. 64). Borden offers no specific response to respondent's answer or the appellate court's order regarding this claim. After careful examination, it is clear the state appellate court dismissed the claim pursuant to fairly applied, adequate, and independent state procedural rules. Accordingly, this court is precluded from federal review of the claim as it is procedurally defaulted, unless the petitioner can show cause and prejudice to excuse the default, which he has not done. Claim B.16 is due to be denied.

**17.** *Trial counsel failed to adequately prepare Borden prior to the preparation of the pre-sentence investigation report.*

This claim is identical to its Rule 32 predecessor. *See* (Doc. 1, p. 46) and (Rule 32 C.R. Vol. 9, Tab 39, p. 13). The *entire* claim reads, "In his presentence investigation report interview, Mr. Borden told the investigator that he believed he should receive the death penalty. Had Mr. Borden been properly prepared by trial counsel for that investigation, he would not have made such a statement." (Doc. 1, p. 46).

139

In examining the claim on Rule 32 collateral review, the Alabama Court of Criminal Appeals held that the claim failed to meet the specificity and full factual disclosure requirements of Rule 32.6(b), finding as follows:

> Borden did not allege what "proper preparation" by trial counsel would have entailed, nor did he identify what specific acts or omissions on the part [of] trial counsel he believed demonstrated deficient performance. He failed to allege how that "proper preparation" would have changed his stated belief that he should receive the death penalty. Borden also failed to include any specific facts regarding how trial counsel's performance prejudiced his defense. Because the claim was not pleaded sufficiently to conform to the requirements set forth in Rule 32, the claim was due to be summarily dismissed.
>
> The trial court determined that the claim was meritless and that it failed to state a claim for which relief could be granted. Notably, the trial judge wrote in its order denying relief on this claim that Borden's statement to the investigator had no effect on him when he imposed sentence on Borden. Because the trial court correctly determined that the claim had no merit, we adopt the trial court's holding as an alternative holding on this issue.

(Rule 32 C.R. Vol. 14, Tab 60, pp. 15-16).

Respondent asserts in its answer that the state appellate court's express reliance on an adequate and independent state procedural rule to dismiss the claim precludes federal review. (Doc. 18, pp. 66-67). Borden offers no specific response to the answer or the appellate court's order regarding this claim. After careful examination, it is clear the state appellate court dismissed the claim pursuant to a fairly applied, adequate, and independent state procedural rule. Accordingly, this court is precluded

from federal review of the claim as it is procedurally defaulted.  Petitioner has not attempted to show any "cause and prejudice" to excuse the default.

Additionally, petitioner has failed to show that the alternative conclusion by the state courts that the claim is meritless is contrary to or an unreasonable application of Supreme Court precedent.  The state courts found that trial counsel were not ineffective in their preparation of petitioner to be interviewed in connection with a presentence report, written following the jury's sentencing recommendation but before the final sentencing hearing before the trial judge.[47]  This conclusion is not "objectively unreasonable" in light of the mental health issues presented by the petitioner.  Prior to the crime, during periods of commitment to hospitals, petitioner repeatedly expressed a desire to die.  It remains unclear what trial counsel could have done to better "prepare" petitioner to express a desire different from what he had expressed many times while in treatment.  Certainly, petitioner's own statement that he deserved the death penalty was not something that was said simply because he was surprised by the questioning, or was tricked or not "prepared" by counsel to answer

---

[47]  It is not clear what factual basis the state courts relied upon in reaching this conclusion, as there is no evidence in the record describing how counsel went about preparing petitioner for the presentence report interview.  Nonetheless, the specific concern raised here is not the product of lack of preparation.  As observed in text, petitioner did not express his belief that he deserved the death penalty because he was ill-prepared.  That is not the type of thing one says in error.  Rather, it appears to have been his firmly held belief.  No amount of "preparation" by counsel is likely to have changed that.  Counsel ethically could not have advised petitioner to answer untruthfully.

the question.  A defendant does not ordinarily express a desire for the death sentence due to error or confusion.  While counsel certainly could have anticipated such a statement, it is not clear what they could have done to prevent or dissuade petitioner from making it.  Absent some real error or omission by counsel, they were not ineffective, and the state court's determination was not objectively unreasonable for the purpose of the application of § 2254(d), and it is due to be honored by this court in addressing the *habeas* claim of ineffective assistance.

Because it was procedurally defaulted and, alternatively, because it was meritless, Claim B.17 is due to be denied.

> **18.**   *Trial counsel failed to seek access to the grand jury transcripts, or in the alternative notes from the grand jury prepared by the district attorney.*

This claim is identical to its Rule 32 predecessor.  *See* (Doc. 1, p. 46) and (Rule 32 C.R. Vol. 9, Tab 39, p. 13).  The *entire* claim reads as follows:

> Trial counsel failed to gather any information concerning the Grand Jury proceedings in which Mr. Borden was indicted.  Those transcripts would have provided trial counsel with considerable information regarding the testimony of the witnesses against Mr. Borden and the prosecution's trial strategy.  In addition, the transcripts would have contained valuable information that would have enabled trial counsel to conduct a more thorough and effective investigation.

(Doc. 1, p. 46).

The Alabama Court of Criminal Appeals held that this claim was due to be dismissed summarily for failure to satisfy the burden of pleading or full factual disclosure requirements of Rules 32.3 and 32.6(b).  The court explained:

> Borden alleged only vague generalities regarding 'valuable information' he believed the grand jury transcript might have contained and an equally vague assertion that 'a more thorough investigation' could have been conducted if counsel had obtained the transcript....  Furthermore, he failed to allege how trial counsel's failure to obtain the transcript prejudiced his defense.
>
> The trial court addressed the merits..., noting that defense counsel were not entitled by law to receive the transcript of the grand jury proceedings, and that counsel was not ineffective for failing to obtain the information.  We adopt that portion of the court's order as an alternative to our holding that the claim was insufficiently pleaded....

(Rule 32 C.R. Vol. 14, Tab 60, pp. 16-17).

Respondent's answer pleads that the state appellate court's express reliance on an adequate and independent state procedural rule to dismiss the claim precludes federal review.  (Doc. 18, p. 69).  Borden offers no specific response to respondent's answer or the appellate court's order regarding this claim.  After careful examination, it is clear the state appellate court dismissed the claim pursuant to a fairly applied adequate and independent state procedural rule.  Accordingly, this court is precluded from federal review of the claim as it is  procedurally defaulted, and petitioner has not attempted to show "cause and prejudice" to excuse the default.

Alternatively, the holding by the state courts that counsel was not ineffective in failing to secure the grand jury transcripts as part of pretrial discovery is neither contrary to nor an unreasonable application of Supreme Court precedent. As the state appellate court pointed out, grand jury transcripts usually remain secret. Defendants are not routinely entitled to review the grand jury transcripts as part of discovery, but, rather, must make a particularized showing of need. *Blackmon v. State*, No. CR-01-2126, 2005 WL 1845273 (Ala. Crim. App. Aug. 5, 2005); *Millican v. State*, 423 So. 2d 268 (Ala. Crim. App. 1982). Here, there has been no such showing, leaving the inevitable conclusion that counsel were not entitled to the grand jury transcripts so that their failure to secure them was not ineffective assistance. Thus, the resolution of this claim by the state courts is not "objectively unreasonable," and it is entitled to deference under § 2254(d). Claim B.18 is due to be denied.

19.   *Trial counsel admitted during closing arguments that the State had proven its case beyond a reasonable doubt; trial counsel also stated during opening arguments that there was not a lot of dispute as to the underlying facts.*

This claim is identical to its Rule 32 predecessor, with two exceptions. First, the Rule 32 petition actually includes citations to the record. *See* (Doc. 1, p. 47) and (Rule 32 C.R. Vol. 9, Tab 39, p. 14) (citing R. 281, 1026-27, 1046). What the Rule 32 petition does not include is the *last* paragraph of the claim as it was set out in the *habeas* petition. *Id.* The claim in the *habeas* petition reads:

144

During opening argument, trial counsel stated that there were not many facts in dispute in the case. This remark, followed soon thereafter by the presentation of the State's case, set the stage for the jury to believe almost everything the State's witnesses told them. It also laid the groundwork for an extraordinary admission by counsel during closing arguments.

During closing argument, trial counsel admitted that the State had proven its case beyond a reasonable doubt. This admission was in turn repeated by the prosecutor during the State's summation further enhancing the egregiousness of trial counsel's error.

*Each of the preceding failures of trial counsel denied Mr. Borden his Sixth Amendment right to effective assistance of counsel, and deprived him of a fair trial and determination of guilt; considered in sum, these errors of counsel mandate that this Court grant Mr. Borden a new trial.[48]*

(Doc. 1, p. 47) (Italics added for emphasis).

In examining the claim on Rule 32 collateral review, the Alabama Court of Criminal Appeals held that the claim

was subject to Rule 32 dismissal for failure to comply with the pleadings requirements of Rule 32. The petition contained no statement of the grounds upon which relief was sought, no allegation that a constitutional right had been violated, and no facts to indicate how counsel's "acts or omissions prejudiced his defense." [citation omitted].

The trial court addressed the merits of this claim and denied it. The court determined that Borden could not establish that defense counsel's performance was deficient because counsel made a reasonable strategic decision, in a case with overwhelming evidence against

---

[48] Again, this paragraph was not a part of the claim in the Rule 32 petition.

Borden, to focus on Borden's insanity defense.[49]  The trial court also stated that Borden had not attempted to demonstrate how he was prejudiced by defense counsel's arguments, and that no material issue of fact or law existed which would entitle Borden to relief.  To the extent trial counsel's finding as to prejudice includes the determination that Borden failed to plead any facts that would establish that portion of the claim, we agree.  Because Borden failed to allege prejudice in his petition, the trial court correctly determined that Borden failed to state a claim for relief.  We adopt that portion of the trial court's holding as an alternative holding to our determination that the claim was not pleaded sufficiently.  Finally, we note that the trial court instructed the jury that any statements or arguments made by the attorneys was [sic] not evidence in the case, and that what the attorneys said was not binding on the jurors.  The court also instructed the jurors that it was their recollection and interpretation of the evidence that controlled in the case.

(Rule 32 C.R. Vol. 14, Tab 60, pp. 18-19).

Respondent's answer pleads that the state appellate court's express reliance on an adequate and independent state procedural rule to dismiss the claim precludes federal review or, in the alternative, that the claim does not merit § 2254(d) relief. (Doc. 18, pp. 71-72 ).  Borden offers no specific reply to respondent's answer or the appellate court's order regarding this claim.  After careful examination, it is clear the state appellate court dismissed the claim pursuant to fairly applied adequate and independent state procedural rules.  Accordingly, this court is precluded from federal

---

[49]   At this juncture, the appellate court stated that it could not agree with the trial court's conclusion regarding defense strategy as there was no evidence in the record that other defense options had been reasonably considered and rejected.  *Id.* at n. 6.

review of the claim as it is  procedurally defaulted, and petitioner has not attempted to show cause and prejudice to excuse the default.

Alternatively, even if it could be argued that Borden adequately pleaded this claim, he has completely failed to show that the state court's decision to deny the claim on the merits was contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court, nor has he shown the decision was based upon an unreasonable determination of the facts in light of the evidence before it.  Counsel made clear strategic choices not to contest the facts of the shooting, but to focus the jury's attention on the insanity defense.   Counsel's credibility on that defense hung in part on their credibility with regard to the rest of the case.  They could not credibly deny that petitioner shot and killed his wife and father-in-law in the presence of their children and several other witnesses.  For them to raise quibbling objections to the evidence relating to these indisputable facts risked losing credibility with the jury on the issue that did matter — the defendant's sanity. The conclusion that counsel made these choices in order to strategically advance the interest of the petitioner is not objectively unreasonable, and it is entitled to deference under § 2254(d).  Hence, Claim B.19 is due to be denied.

## OTHER CLAIMS

All but four of the remaining claims in Borden's *habeas* petition were determined by the state courts to be procedurally defaulted for one reason or another. With the exception of Claims N. and O., which were raised and addressed on direct review, none of the others was raised on direct review, and when raised during post-conviction proceedings, each was summarily dismissed by the state courts pursuant to Alabama Rule of Criminal Procedure 32.2(a)(2)(3) and/or (5), the state procedural rules that require the claims to be raised at trial, on direct appeal, or both. (Rule 32 R. Vol. Tab. 59, pp. 4-7) and (*Borden v. State*, CR -00-1379, Vol. 14, Tab. 60, p. 39, n. 15). Claims L. and P. have been raised in this *habeas* action for the very first time and, for that reason, have not been addressed in the state courts.

Respondent's answer asserts that Claims C. through K. and M. are procedurally defaulted in this action because the claims could have been, but were not, raised on direct appeal. (Doc. 18, pp. 73-85, 87-88). Borden's only worthy reply to this answer is his assertion that

> trial counsel and counsel on direct appeal were ineffective, and but for this ineffectiveness, these claims would have been asserted at the trial or on direct appeal. Trial and appellate counsel's failure to operate under a "reasonable strategy" and the loss of claims that would result constitutes cause and prejudice, and these claims are thus not procedurally defaulted.

(Doc. 25, p. 53).   Such a conclusory and wholly unsupported statement completely fails to convince this court that Borden has satisfied any aspect of the cause and prejudice standard.   While ineffective assistance of counsel certainly can constitute cause within the cause and prejudice standard, it does not do so here for the reasons explained below.

## I.   INEFFECTIVE ASSISTANCE AS "CAUSE"

The question of establishing the requisite "cause" to avoid procedural default by alleging attorney error was addressed by the United States Supreme Court in *Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).   In *Murray*, the petitioner in a *habeas* action attempted to show cause for a procedural default by establishing that his attorney inadvertently failed to raise the claim on appeal.   *Id.* at 481.   The Court explained:

> The mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  *Engle v. Isaac*, 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982).  The question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made.  So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), there is no inequity in requiring him to bear the risk of attorney error that results in a procedural default.

*Id*. at 478-79.   The Supreme Court also has noted, in *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000), that in order to constitute

149

"cause" to excuse a procedural default, counsel's ineffectiveness in failing to raise properly the claim in state court "must have been so ineffective as to violate the Federal Constitution." Thus, to serve as "cause," the errors of counsel must not only rise to the level of satisfying the *Strickland* test, the alleged ineffectiveness must also have been raised and exhausted in state court before it is asserted in the *habeas* action. Alleged ineffectiveness that is itself procedurally defaulted cannot be used as "cause" to excuse procedural default.

In addition to the many claims and sub-claims of ineffective assistance discussed above, petitioner also has asserted in this action and in his Rule 32 petition a claim of ineffective assistance of *appellate* counsel. That claim appears as Claim N in this *habeas* petition, where Borden alleges that his appellate counsel was ineffective because he focused on one narrow issue on appeal "while ignoring numerous inadequacies" of the type alleged elsewhere in the *habeas* petition. (Doc. 1, pp. 60-61). He alleges that appellate counsel "committed numerous errors, potentially waiving a great many of Mr. Borden's appellate rights, including arguments made elsewhere in this petition." *Id.* at 61. Borden then concludes that he was "undoubtedly prejudiced" by these failures in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. *Id.* During the Rule 32 appeal, the state appellate court affirmed the trial court's summary dismissal of the claim pursuant to

Rule 32.6(b) because the claim was nothing more than "bare allegations and conclusions."  (Rule 32 C.R., Vol. 14, Tab 60, pp. 29-30).

As discussed more fully below at Claim N, the court agrees that petitioner's claim is procedurally defaulted and, therefore, cannot establish cause under the cause-and-prejudice standard.  Under *Edwards v. Carpenter*, any failings of counsel on direct appeal cannot serve to excuse the default of claims that could have been raised on direct appeal unless the claim of ineffective assistance of appellate counsel is itself a meritorious and non-defaulted claim.  Because the claim of ineffective assistance of direct-appeal counsel is itself procedurally defaulted for the reasons addressed by the Alabama Court of Criminal Appeals during the Rule 32 appeal, it is precluded from being either a basis for *habeas* relief or "cause" to excuse the default of other claims not raised on direct appeal.  Also, for the same reason, only those claims of ineffectiveness of *trial* counsel actually raised in the Rule 32 petition and not procedurally defaulted themselves can serve as "cause" to excuse the procedural default of substantive claims.  Insofar as any substantive claim is not paralleled by a claim of ineffective assistance of trial counsel, there is no cause to excuse the procedural default of the claim.

## II. **<u>SUBSTANTIVE CLAIMS</u>**

**Claim C.**    *Pretrial publicity made it impossible for petitioner to receive a fair trial in Jefferson County.*

In this claim, petitioner alleges that his arrest and trial were subject to extensive inflammatory pretrial publicity that deprived him of a fair trial when the trial court erroneously failed to grant his motion for change of venue.  (Doc. 1, pp. 47-48). During the Rule 32 proceedings, the trial court dismissed this claim as being procedurally barred because petitioner did not raise it on direct appeal.  The Alabama Court of Criminal Appeals refused to consider this claim on appeal from denial of Rule 32 relief, saying in a footnote:

> The trial court dismissed on procedural grounds several of the claims in Borden's amended petition.  Although Borden states in the conclusion section of his brief on appeal that the circuit court's order should be reversed, he makes no arguments regarding the 19 claims in the amended petition that the court found to be procedurally barred from review pursuant to Rule 32.2(a)(2), (a)(3), (a)(5), Ala. R. Crim. P. Claims not argued in the brief on appeal are deemed waived. ... Because Borden has made no argument regarding the trial court's dismissal of these claims, we need not review them.

(Rule 32 C.R. Vol. 14, Tab 60, p. 39 n. 15).  Thus, it is clear that the state courts determined that the claim was defaulted on direct appeal and, indeed, waived as a claim on Rule 32 appeal.  As such, the claim is procedurally defaulted in this court, unless petitioner can show cause and prejudice to excuse the default.

The only basis for "cause" argued by Borden is alleged ineffective assistance of trial and appellate counsel.  These arguments are unavailing, however, because they are themselves procedurally defaulted.  The court has already noted that

152

petitioner's Rule 32 allegation of ineffective assistance of *appellate* counsel is procedurally defaulted and meritless, and thus, cannot be cause to excuse the default of the substantive claim. Likewise, the petitioner has not alleged as a claim for relief, either in the Rule 32 petition or the instant petition, that *trial* counsel was ineffective in their handling of Borden's motion for change of venue or in arguing the prejudicial effect of the pretrial publicity. Because petitioner has not attempted to show that ineffective assistance of *trial* counsel prevented him from asserting this claim on direct appeal, he has failed to prove cause under the cause-and-prejudice standard. *See Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). Claim C is precluded from consideration in this court due to that default, and it is due to be denied.

**Claim D.**   *Irrelevant and prejudicial evidence was introduced at trial that denied petitioner a fair trial and penalty determination.*

**Claim E.**   *The trial court erroneously admitted items of physical evidence without establishing chain of custody for the evidence.*

In these two claims, petitioner alleges that he was deprived of a fair trial in violation of his constitutional rights because improper evidence was admitted against him at trial. In Claim D, he asserts that "[d]uring the guilt phase of Mr. Borden's trial, the state introduced a tape of Mrs. Harris's phone call to the 911 operator[,] as well as numerous gruesome[, cumulative, and unnecessary] autopsy photographs...,"

153

intended "to inflame the passion and prejudice of the jury." (Doc. 1., p. 49). Similarly, in Claim E, he alleges that the "State failed to establish a proper chain of custody for the gun introduced at Mr. Borden's trial, rendering the evidence irrelevant and prejudicial." (Doc. 1, pp. 49-50). The respondent's answer contends that neither of these claims was raised on direct appeal and, further, each was abandoned during the Rule 32 appeal. (Doc. 18, pp. 74-76). Respondent argues, therefore, that the claims are procedurally barred from review in this court unless petitioner can show cause and prejudice excusing *both* defaults. To obtain review, petitioner must establish why these claims were not raised on direct appeal *and* why they were abandoned in the Rule 32 appeal.[50] Because he has not done so, the claims are procedurally defaulted.

The only "cause" asserted by petitioner for failing to raise these substantive evidence claims on direct appeal is the alleged ineffective assistance of trial and appellate counsel. These arguments are unavailing, however, because they are themselves procedurally defaulted. The court already has noted that petitioner's Rule 32 allegation of ineffective assistance of *appellate* counsel is procedurally defaulted and meritless and, thus, cannot be cause to excuse the default of the substantive claim.

_____

[50] In the Rule 32 appeal, the Alabama Court of Criminal Appeals refused to consider the claim, finding that it had been abandoned. *See* (Rule 32 C.R. Vol. 14, Tab 60, p. 39 n. 15).

Although petitioner asserted in Claim B.10. above that trial counsel were ineffective in failing to "adequately litigate" the admissibility of gruesome autopsy photographs, the court found that claim procedurally defaulted also, thus precluding it, under *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000), from serving as "cause." Moreover, petitioner has not asserted any claim of ineffective assistance with respect to the admissibility of a 911 tape recording, so that any such argument advanced now also is procedurally defaulted and cannot be cause to excuse the default of Claim D on direct appeal. In sum, petitioner has failed to show any undefaulted claim of ineffective assistance of counsel that can be cause to excuse the default of the substantive evidence claim.

Lastly, petitioner has offered no explanation for the abandonment of these claims during the Rule 32 appeal. The trial court denied Rule 32 relief, finding that the claims were procedurally barred because they were not raised on direct appeal. Petitioner acceded to that view by abandoning the claims on appeal to the Alabama Court of Criminal Appeals. (Rule 32 C.R. Vol. 14, Tab 60, pp. 39 n. 15). He advanced no argument as to why the trial court's finding of procedural bar was error, leaving the appellate court no alternative but to find the claims abandoned.

Claims D and E are due to be denied as procedurally defaulted.

**Claim F.**   *The prosecutor engaged in egregious misconduct, which denied petitioner a fair trial and sentencing determination.*

In this claim, Borden argues that he was denied a fair trial in violation of his constitutional rights because the prosecutor engaged in egregious misconduct, including introducing gruesome autopsy photographs, introducing the 911 emergency call made by Mrs. Harris at the time of the shootings, and making inflammatory opening and closing arguments.  (Doc. 1, pp. 51-52).  In the answer, the respondent contends that this claim is procedurally defaulted because it was not raised on direct appeal and was abandoned during the Rule 32 appeal.

The only "cause" asserted by petitioner for failing to raise these substantive claims on direct appeal is the alleged ineffective assistance of trial and appellate counsel.  These arguments are unavailing, however, because they are themselves procedurally defaulted.  The court already has noted that petitioner's Rule 32 allegation of ineffective assistance of *appellate* counsel is procedurally defaulted and meritless and, thus, cannot be cause to excuse the default of the substantive claim.

Although petitioner asserted in Claim B.10. above that trial counsel were ineffective in failing to "adequately litigate" or object to the admissibility of gruesome autopsy photographs, the court found that claim procedurally defaulted, thus precluding it, under *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000), from serving as "cause."  Moreover, petitioner has not

asserted any claim of ineffective assistance with respect to the admission of a 911 tape recording, so that any such argument advanced now also is procedurally defaulted and cannot be cause to excuse the default of Claim F on direct appeal. Additionally, as discussed under Claim B.10 above, it is simply not true that counsel were ineffective when it came to objecting to the prosecutor's conduct. They objected multiple times during the prosecutor's closing argument and requested instructions to the jury. In sum, petitioner has failed to show any undefaulted claim of ineffective assistance of counsel that can be cause to excuse the default of the substantive evidence claim.

Also, petitioner has offered no explanation for the abandonment of these claims during the Rule 32 appeal. The trial court denied Rule 32 relief, finding that the claims were procedurally barred because they were not raised on direct appeal. Petitioner acceded to that view by abandoning the claims on appeal to the Alabama Court of Criminal Appeals. (Rule 32 C.R. Vol. 14, Tab 60, pp. 39 n. 15). He advanced no argument as to why the trial court's finding of procedural bar was error, leaving the appellate court no alternative but to find the claims abandoned.

Claim F is due to be denied as procedurally defaulted.

**Claim G.**      *The prosecution's argument violated the Eighth Amendment and State law by preventing the jury from considering relevant mitigating circumstances.*

In this claim, petitioner alleges that his constitutional rights were violated when the prosecutor argued to the jury during the penalty phase of trial that, by rejecting the insanity defense, the jury also had rejected the petitioner's asserted mitigating circumstance that he acted under extreme mental or emotional disturbance.  He contends that this caused the jury to reject erroneously the mitigating circumstance even though the standard of proof for it was less than that required for a defense of insanity.  Respondent contends that the claim is procedurally defaulted because it was not raised on direct appeal and it was abandoned during the Rule 32 appeal.

The court agrees that the state courts found the claim to be procedurally barred from consideration because it was not raised on direct appeal.  As noted above, the state appellate court also found that petitioner abandoned this issue by failing to make any argument about it during the Rule 32 appeal.  The trial court denied Rule 32 relief, finding that the claims were procedurally barred because they were not raised on direct appeal.  Petitioner acceded to this view by abandoning the claims on appeal to the Alabama Court of Criminal Appeals.  (Rule 32 C.R. Vol. 14, Tab 60, pp. 39 n. 15).  He advanced no argument as to why the trial court's finding of procedural bar was error, leaving the appellate court no alternative but to find the claims abandoned.

Petitioner contends that ineffective assistance of trial and appellate counsel were the cause for the default on direct appeal.  The court already has held that petitioner's Rule 32 allegation of ineffective assistance of *appellate* counsel was procedurally defaulted and meritless and, thus, cannot be cause to excuse the default of the substantive claim.[51]  *See Edwards v. Carpenter*, supra.  Likewise, as discussed above in Claim A.10, the claim that trial counsel were ineffective in failing to object to the remarks of the prosecutor also is procedurally defaulted or, alternatively, meritless because petitioner is unable to show prejudice.  The trial court correctly instructed the jury on the proper weighing of the evidence of the mitigating circumstance and told them that the arguments of counsel were not the law.  Thus,

---

[51] The court also finds that appellate counsel cannot be faulted for choosing not to assert this claim on direct appeal.  After the remarks by the prosecutor, the court properly instructed the jury about weighing the evidence of the mitigating factor, telling them:

> A person's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law is not the same as his ability to know right from wrong generally or to know what he is doing is wrong.  A person may indeed know that doing the act that constitutes the capital offense is wrong, and still not appreciate its wrongfulness because he does not fully comprehend or is not fully sensible to what he is doing or how wrong it is.  For this mitigating circumstance to exist, the defendant's capacity to appreciate does not have to have been totally obliterated.  It is enough that it was substantially lessened or substantially diminished.  Finally, this mitigating circumstance would exist even if the defendant did appreciate the criminality of his conduct  if his capacity to conform to the law was substantially impaired since a person may appreciate that his actions are wrong and still lack the capacity to refrain from doing them.

(R. Vol. 7, pp. 1157-59).  In light of this instruction, appellate counsel could reasonably conclude that this issue would not be productive on appeal.

even if trial counsel can be faulted for not objecting to the prosecutor's argument (which, in fact, they did), the defense suffered no prejudice. Without prejudice under the *Strickland* standard, no ineffectiveness occurred, and there is no "cause" to excuse the default of the substantive claim on direct appeal.

Because the claim is procedurally defaulted and Borden has not shown cause and prejudice to excuse the default, Claim G is due to be denied.

**Claim H.**   *Petitioner was denied his right to fully examine each venire member.*

Borden alleges in this claim that the trial court deprived him of a fair opportunity to select an impartial jury by denying his motion for individual *voir dire* of the jury panel and by denying him the use of a jury questionnaire. He argues that pretrial publicity and the sensitive nature of the offense required individual *voir dire* in order to get candid answers to the questions put to prospective jurors. (Doc. 1, pp. 53-54). This issue was not raised on direct appeal, and the Rule 32 court dismissed the claim as procedurally barred from collateral review because it was not raised on appeal. The Alabama Court of Criminal Appeals also concluded that the claim was abandoned during the Rule 32 appeal when petitioner offered no argument with respect to the rejection of the claim as barred.

For purposes of *habeas* review, the claim is procedurally defaulted unless petitioner can show cause and prejudice to excuse the default. The only cause argued

by petitioner is alleged ineffective assistance of trial and appellate counsel. First, it is clear that *trial* counsel were not ineffective as, in fact, they moved the court to allow individual *voir dire*, which was granted in part, allowing individual *voir dire* only with respect to pretrial publicity issues and jurors' views on the death penalty. (R. Vol. 1, pp. 69-71). Thus, trial counsel preserved the issue for appellate review. Further, for the reasons explained below in Claim N, petitioner's Rule 32 allegation of ineffective assistance of *appellate* counsel is procedurally defaulted and meritless and, thus, cannot be cause to excuse the default of the substantive claim. *See Edwards v. Carpenter*, *supra*. In sum, petitioner is not able to show that ineffective assistance of counsel by either trial or appellate counsel was the cause for his failure to raise this claim on direct appeal. Accordingly, the claim is procedurally defaulted and cannot be reviewed in this court.

Also, petitioner has offered no explanation for the abandonment of this claim during the Rule 32 appeal. The trial court denied Rule 32 relief, finding that the claim was procedurally barred because it was not raised on direct appeal. Petitioner acceded to that view by abandoning the claim on appeal to the Alabama Court of Criminal Appeals. (Rule 32 C.R. Vol. 14, Tab 60, pp. 39 n. 15). He advanced no argument as to why the trial court's finding of procedural bar was error, leaving the appellate court no alternative but to find the claim abandoned.

Claim H is due to be denied.

**Claim I.**    *The trial court reversibly erred when it failed to instruct the jury on the lesser-included offenses of manslaughter and intentional murder.*

In this claim, Borden asserts that, under *Beck v. Alabama*, due process requires that lesser-included offense instructions be given whenever there is "some doubt as to any element" of the capital charge.  (Doc. 1, p. 55).  This claim was not raised on direct appeal, and the Rule 32 court dismissed it as procedurally barred, which was affirmed by the Alabama Court of Criminal Appeals.  Respondent argues here that the claim is procedurally defaulted unless petitioner can show cause and prejudice excusing the failure to assert it on direct appeal.  Petitioner alleges that ineffective assistance of trial and appellate counsel was the cause of the default.

At the outset, it is clear that trial counsel *did* request lesser-included offense instructions, which the trial court denied.  (R. Vol. 1, pp. 24, 38, 39).  In his statement of this claim in the *habeas* petition, Borden admits that trial counsel requested the instructions.  Thus, trial counsel were not ineffective in making the request or preserving it for appeal.  Likewise, for the reasons explained below at Claim N, petitioner's Rule 32 allegation of ineffective assistance of *appellate* counsel was procedurally defaulted and meritless and, thus, cannot be cause to excuse the default of this substantive claim.  *See Edwards v. Carpenter*, *supra*.  Because petitioner has not established the requisite cause and prejudice, this claim is barred from review.

Moreover, alternatively, the claim is meritless.  On the evidence at trial, it is clear that there was no basis for giving lesser-included offense instructions for manslaughter or non-capital intentional murder.  The evidence was beyond dispute, indeed admitted, that petitioner shot his wife in the back of the head and then turned the gun on his father-in-law.  The shootings were a single event, occurring within seconds of each other in the front yard of the Harris home.  Plainly, the evidence showed that the killings were intentional, even premeditated, as shown by the evidence of petitioner buying the murder weapon 10 days before the murders and bringing it with him while returning his children from a visit.  There simply was no evidentiary basis for instructing the jury on lesser-included offenses, and *Beck* does not require giving such instructions when the evidence does not support the possibility of such an offense.  *See Hopper v. Evans*, 456 U.S. 605, 102 S. Ct. 2049, 72 L. Ed. 2d 367 (1982); *Alabama v. Davis*, 457 U.S. 1114, 102 S. Ct. 2921, 73 L. Ed. 2d 1326 (1982); *Davis v. Jones*, 506 F.3d 1325, 1328 n. 3 (11th Cir. 2007).  The claim is simply meritless because the evidence did not support a verdict on either manslaughter or two separate and unrelated intentional murders.  Claim I is due to be denied.

**Claim J.**   *The trial court reversibly erred when it allowed the jury to decide whether petitioner should be sentenced to death notwithstanding the absence of proof as to any aggravating circumstances.*

**Claim K.**    *The trial court reversibly erred, violating the Fifth, Eighth, and Fourteenth Amendments, when it sentenced petitioner to death notwithstanding the absence of proof as to any aggravating circumstances.*

These two claims allege the same essential constitutional error, that no aggravating circumstance existed or was proven to support the death sentence. Claim J focuses on the alleged lack of evidence supporting the jury's recommendation, while Claim K contends that the trial court's sentence of death was not supported by any aggravating circumstance. (Doc. 1, pp. 55-57). Specifically, Borden argues that the evidence was insufficient for either the jury or the court to find the existence of the aggravating circumstance that petitioner "knowingly created a grave risk of death to many persons," and, without that aggravating circumstance, the death sentence cannot constitutionally be imposed.

This claim was not raised on direct appeal, and the Rule 32 court dismissed the claim as procedurally barred from consideration in the Rule 32 proceedings. The Alabama Court of Criminal Appeals affirmed this conclusion. (Rule 32 C.R. Vol. 14, Tab 60, pp. 39 n. 15). Respondent contends that the claim also is procedurally defaulted in this case, absent a showing of cause and prejudice to excuse the default. Petitioner alleges that ineffective assistance of trial and appellate counsel was the cause of the default of the claim.

The court has determined already that neither trial counsel nor appellate counsel were ineffective in their representation of the petitioner, and particularly with respect to this claim.  As the court discussed above at Claim A.7, the state appellate court found the claim not only defaulted, but meritless as well, pointing out the evidence and circumstances upon which a jury and court could find that petitioner knowingly endangered the lives of many people.  Petitioner fired multiple shots into the Harris home, knowing that people were gathered there for Christmas Eve and knowing that his own children had been taken into the house.  While he may not have known the precise number of people in the house, the evidence shows that he knew several people were present to celebrate the holiday, and he fired intentionally into the house where they were gathered.  The contention that there was no evidence supporting the existence of this aggravating circumstance is simply wrong.  Neither trial counsel nor appellate counsel were ineffective for failing to raise this issue because there was no evidentiary basis for making it an issue, either at the penalty phase of trial, the sentencing hearing, or on appeal.

Because counsel were not ineffective in this respect, petitioner has failed to show any cause to excuse the default of these substantive claims.  The claims cannot be reviewed in this *habeas* action because they are procedurally defaulted.  Even if

165

not procedurally defaulted, the claims are meritless on the evidence presented at trial.

For these reasons, Claims J and K are due to be denied.

**Claim L**     *Alabama's capital sentencing scheme violates the Sixth and Fourteenth Amendment principles articulated in* Ring v. Arizona*, 536 U.S. 584 (2002).*

Borden did not raise this claim either at trial or on direct appeal because *Ring* was announced by the Supreme Court in 2002 after his direct appeal was completed. *See Borden v. Alabama*, 525 U.S. 845 (1998) (*certiorari* denied by the United States Supreme Court, making petitioner's conviction and sentence final).   Although respondent asserts that Borden's failure to raise this claim in state court on direct review renders the claim procedurally defaulted (Doc. 18, p. 85-87), the proper question is whether the newly announced rule applies retroactively to Borden's case.

Since the Supreme Court's decision in   *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334, rehearing denied 490 U.S. 1031, 109 S. Ct. 1771, 104 L. Ed. 2d 206 (1989), new constitutional rules of criminal procedure announced by the Supreme Court generally do not apply retroactively to convictions that were final at the time of the announcement of the rule.  In *Espy v. Massac*, 443 F.3d 1362 (11th Cir. 2006), the Eleventh Circuit considered the operation of *Teague*, saying:

> *Teague* holds that new procedural rules announced by the Supreme Court ordinarily should not be applied retroactively to cases on collateral review.  489 U.S. at 305, 109 S. Ct. at 1073.  But, the *Teague* rule has two exceptions.  A new rule applies retroactively if it either (1)

166

immunizes certain private, individual conduct from criminal regulation; or (2) "requires the observance of those procedures that ... are implicit in the concept of ordered liberty." *Id.* at 307, 109 S.Ct. at 1073 (internal citations and quotation marks omitted). The first exception obviously does not apply here. The *Teague* Court limited the application of the second exception to "watershed rules of criminal procedure," *Id.* at 311, 109 S. Ct. at 1076, "without which the likelihood of an accurate conviction is seriously diminished." *Id.* at 313, 109 S. Ct. at 1077.

      The standard for whether a new rule meets the second *Teague* exception is a strict one. Indeed, it is unlikely that the Supreme Court has found any new rule to fit this exception since its announcement. *See Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S.Ct. 2519, 2523, 159 L.Ed.2d 442 (2004).

*Id.* at 1366-67. The court of appeals has explained that to meet the second *Teague* exception requires two elements: "Infringement of the rule must seriously diminish the likelihood of obtaining an accurate conviction, and the rule must alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." *Turner v. Crosby*, 339 F.3d 1247, 1285 (11th Cir. 2003) (quoting *Tyler v. Cain*, 533 U.S. 656, 665, 121 S. Ct. 2478, 2484, 150 L. Ed. 2d 632 (2001)) (emphasis in original).

Pertinent to the instant case, the Supreme Court has determined that the rule announced in *Ring* does not apply retroactively to convictions final before the decision was announced. While *Ring* announced a new rule of constitutional law, it is a procedural rule, not a rule of substantive criminal law. Just two years after *Ring*, the Court considered whether its rule applied retroactively to final convictions. *See*

*Schiro v. Summerlin*, 542 U.S. 348 (2004).  Holding first that "*Ring* announced a new procedural rule," the Court addressed whether it fit the second exception as being a watershed rule of criminal procedure .  Concluding that it did not, the Court explained that a procedural rule requiring that capital sentencing involve fact-finding by juries, as opposed to judges, simply did not implicate seriously the accuracy of fact-finding to the degree necessary to mandate retroactive application.  "When so many presumably reasonable minds continue to disagree over whether juries are better factfinders at all, we cannot confidently say that judicial factfinding seriously diminishes accuracy." *Id*. at 356.  Thus, *Ring* simply does not apply to the instant collateral review of petitioner's conviction and death sentence.  *See also Battle v. United States*, 419 F.3d 1292, 1301 (11th Cir. 2005) ("*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review").

Aside from the question of retroactivity, the claim in this case also is procedurally defaulted as alleged by respondent.  Although *Ring* had not been announced at the time of petitioner's trial and direct appeal, *habeas* petitioners are required to present their claims fairly to the state courts, and failure to do so in violation of a state procedural rule can result in the procedural default of a claim.  In order to assert now the argument that Alabama's capital sentencing scheme violates

168

due process, petitioner was required to present that argument to the state courts, and he did not do so.  The fact that *Ring* was announced later does not relieve the petitioner of the obligation to allege and exhaust the essential nature of the claim.  For example, in *Turner v. Crosby*, 339 F.3d 1247 (11th Cir. 2003), the court of appeals rejected as procedurally defaulted a *Ring* claim made by a petitioner whose conviction was final ten years before *Ring* was decided.  The court wrote:

> Although *Ring* was decided several years subsequent to the termination of [petitioner's] state post-conviction proceedings, he was free, prior to *Ring*, to make a federal constitutional challenge to Florida's capital sentencing structure in the state courts but failed to do so.
>
> "If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim.  Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid."  *Engle v. Isaac*, 456 U.S. 107, 130, 102 S. Ct. 1558, 1573, 71 L. Ed. 2d 783 (1982) (internal footnote omitted).

* * *

> Furthermore, to the extent that [petitioner] argues that he cannot be held to have forfeited his claim because settled law pre-*Ring* did not provide a legal basis for the claim, *see e.g., Barclay*, 463 U.S. 939, 103 S. Ct. 3418, 77 L. Ed. 2d 1134 (upholding Florida's capital sentencing structure), we disagree.  The United States Supreme Court has held that "cause" to excuse a procedural default may exist "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel."  *Reed v. Ross*, 468 U.S. 1, 16, 104 S. Ct. 2901, 2910, 82 L. Ed. 2d 1 (1984).  However, where an argument is not novel, and the "Federal Reporters [are] replete with cases involving [similar] challenges," the default is not excused.  *Bousley v. United States*, 523

169

> U.S. 614, 622-23, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998).  As
> discussed above, there have been repeated constitutional challenges to
> Florida's capital sentencing structure.  [Petitioner's] Sixth Amendment
> or *Ring* claim is not novel, and, therefore, he cannot show the "cause"
> required to overcome the procedural bar to bringing the claim in this
> case.

*Turner v. Crosby*, 339 F.3d 1247, 1281-82 (11th Cir. 2003).  The same is true of the

instant case.  Petitioner remained free, prior to *Ring*, to make the same Sixth

Amendment argument that ultimately prevailed in *Ring*, but he did not.  Because he

failed to preserve the claim, it is now procedurally defaulted, and he has not shown

cause and prejudice to excuse the default.

Petitioner cannot argue that the cause for his procedural default of this claim

was the ineffective assistance of either trial or appellate counsel.  Although not a

novel claim, *Ring* was not announced until after petitioner's trial and direct appeal

were finished.  Under the *Strickland* standard, counsel are not required to anticipate

changes in law in order to avoid being ineffective.  The *Strickland* standard does not

require counsel to be clever or inventive, or to advocate a claim not yet announced

in the law.  Rejecting an argument that it was ineffective assistance for counsel to fail

to anticipate the Supreme Court's holding in *Apprendi v New Jersey*, 530 U.S. 466,

490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435 (2000), the court of appeals wrote

in *United States v. Levy*, 391 F.3d 1327, 1334 n. 3 (11th Cir. 2004), "While an

attorney's failure to anticipate a change in the law does not constitute ineffective

assistance of counsel, attorneys routinely make arguments based on reasonable extensions of existing Supreme Court case law." Thus, even though petitioner was required to preserve his claim to avoid procedural default, his attorneys were not constitutionally ineffective in failing to do so under these circumstances.

Because Claim L is both procedurally defaulted and meritless, it is due to be denied.

**Claim M.**   *The death penalty constitutes cruel and unusual punishment and violates the Eighth and Fourteenth Amendments to the United States Constitution.*

In this claim, petitioner argues that the death penalty in all forms violates the Eighth Amendment. "Today, the Eighth amendment [sic] can no longer be construed to condone government-sponsored killing of persons convicted of crimes." (Doc. 1, p. 59). This claim was not raised on direct appeal and was dismissed by the Rule 32 court as procedurally barred from consideration because it was not raised on direct appeal. The Alabama Court of Criminal Appeals affirmed the procedural dismissal in the Rule 32 appeal. (Rule 32 C.R. Vol. 14, Tab 60, p. 39 n. 15). Respondent now alleges that the claim is procedurally defaulted and cannot be considered in this action absent a showing of cause and prejudice. Petitioner contends that ineffective assistance of trial and appellate counsel was the cause for the default of this claim.

171

The court agrees that the claim is procedurally defaulted and that neither trial nor appellate counsel was ineffective for failing to press this claim at trial or on direct appeal. The fundamental constitutionality of the death penalty is now too well established to fault counsel for foregoing a full frontal attack on the death penalty as cruel and unusual punishment. Although the Supreme Court tinkers around the edges of the penalty, to make it fairer and more reliable, it has not entertained a challenge to the essential nature of capital punishment in more than 30 years. It would not be professionally unreasonable for counsel to believe that other issues offered more promise of success.

Thus, because this claim is procedurally defaulted and there was no ineffective assistance of counsel that caused the default, Claim M is due to be denied.

**Claim N**.    *Appellate counsel was ineffective, and this ineffectiveness resulted in the unjust and unconstitutional upholding of the death penalty and deprived petitioner of his Sixth and Fourteenth Amendment rights*.

Claim N is identical to its Rule 32 predecessor. *See* (Doc. 1, pp. 60-61) and (Rule 32 R. Vol. 9, Tab 39, p. 36). Borden alleges that his appellate counsel was ineffective because he focused on one narrow issue on appeal "while ignoring numerous inadequacies" elsewhere in the petition. (Doc. 1, pp. 60-61). He alleges appellate counsel "committed numerous errors, potentially waiving a great many of Mr. Borden's appellate rights, including arguments made elsewhere in this petition."

*Id.* at 61.   Borden then concludes that he was "undoubtedly prejudiced" by the failures in violation of his Fifth, Sixth, Eighth and Fourteenth Amendment constitutional rights.  *Id.*  The state appellate court affirmed the trial court's summary dismissal of the claim pursuant to Rule 32.6(b) because the claim was nothing more than "bare allegations and conclusions."  (Rule 32 C.R., Vol. 14, Tab 60, pp. 29-30).

Respondent argues in favor of the appellate court's ruling, contending that the state courts fairly applied a firmly established and regularly followed state procedural rule to find the claim procedurally barred from collateral review.  (Doc. 18, p. 89).

This court agrees that the claim asserted is composed of legal conclusions only and completely lacks any factual basis whatsoever.  The claim clearly did not comply with state procedural rules governing the specificity of pleadings, and the state court did not arbitrarily apply the rules to the claim.  It is therefore procedurally defaulted, unless petitioner can show cause and prejudice to excuse the inadequate pleading of the claim in the Rule 32 petition.  Petitioner has not done so, and cannot argue that ineffective assistance of Rule 32 counsel was the cause because there is no Sixth Amendment right to the assistance of counsel in collateral proceedings.  *See Pennsylvania v. Finley*,  481 U.S. 551, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987). Thus, lacking a showing of cause and prejudice, petitioner cannot overcome the procedural default of this claim.

Even if it can be argued that the claim was pleaded specifically in that it referred to "arguments made elsewhere in this petition" as examples of appellate arguments not raised by counsel, the court's careful examination of these claims has failed to demonstrate that appellate counsel's choice of issues to raise on direct appeal was professionally unreasonable under the *Strickland* standard. The court of appeals has described the use of the *Strickland* standard to appellate counsel this way:

> The standards applicable to [a petitioner's] claims of ineffectiveness against trial counsel apply equally to the charges leveled against his appellate lawyer. *See Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991); *Orazio v. Dugger*, 876 F.2d 1508, 1513 (11th Cir. 1989). To prevail, [a petitioner] must demonstrate both that his appellate counsel's performance fell below reasonable professional standards and that he was prejudiced by his attorney's substandard performance. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

*Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001). Calling this standard a "demanding" one, *id.* at 1188, the Eleventh Circuit said further:

> It is difficult to win a *Strickland* claim on the grounds that appellate counsel pressed the wrong legal arguments where the arguments actually pursued were reasonable in the circumstances. We have emphasized that even in a death penalty case, counsel must be "highly selective about the issues to be argued on appeal...." *United States v. Battle*, 163 F.3d 1, 1 (11th Cir.1998).

*Id.* at 1188. Thus, to the extent that appellate counsel raised arguments on appeal that were "reasonable in the circumstances," he cannot be faulted for failing to include other, arguably more fertile issues. The *Strickland* standard does not permit a

reviewing court to second-guess the choices made by appellate counsel unless those choices are objectively unreasonable in the circumstances.

In this case, appellate counsel raised an issue regarding the apparent multiple charging of the two deaths.  The Alabama Court of Criminal Appeals described the issue on appeal this way:

> Count I of the indictment charged the appellant with the capital offense of murder wherein two or more persons are murdered by one act or pursuant to one scheme or course of conduct.  § 13A-5-40(a)(10).  Count II of the indictment charged the appellant with the capital offense of murder committed by or through the use of a deadly weapon fired from outside a dwelling while the victim was inside the dwelling. § 13A-5-40(a)(16), Ala. Code 1975.  The jury returned verdicts finding the appellant guilty of capital murder, as charged in Count I of the indictment, and guilty of intentional murder, a lesser included offense of the capital murder charge in Count II of the indictment. *See* § 13A-6-2(a)(1), Ala. Code 1975.  The trial court entered judgments of convictions on both verdicts.
>
> * * *
>
> The appellant contends that Count I of the indictment — which charged him with the capital offense of murder wherein two or more persons are murdered by one act or pursuant to one scheme or course of conduct — was duplicitous and violated his due process rights.  Duplicative counts in an indictment result from the improper joinder of two or more separate and distinct offenses in one and the same count....   In his argument that Count I is duplicitous, the appellant maintains that the murder of Cheryl Borden and the murder of Roland Harris constituted separate offenses, which, he says, should not have been joined in Count I of the indictment.

*Borden v. State*, 711 So. 2d 498, 501 (Ala. Crim. App. 1997) [internal citations omitted]. Although the court went on to note that the issue had not been preserved at trial, it considered it under the plain error standard. Further, although the court found the petitioner's argument meritless, it concluded that petitioner could not be convicted both of the capital murder of Roland Harris under Count I and of the lesser-included intentional murder of Roland Harris in Count II. The court reasoned that the intentional killing of Roland Harris was an essential element of the capital offense in Count I, which charged petitioner with the intentional killing of two or more people in a single criminal transaction, and that the further conviction for the non-capital intentional killing of Roland Harris in Count II violated double jeopardy in that petitioner was charged with and convicted twice of the same intentional killing. In other words, the court held that the killing of Roland Harris was an element of the charge in Count I and that, once petitioner was convicted of <u>that</u> offense, he could not be convicted of the intentional killing of Roland Harris as a separate offense.

Petitioner raised a second issue on direct appeal, described by the Alabama Court of Criminal Appeals as follows:

> The appellant contends that the jury verdicts finding him guilty of the capital offense of double murder under Count I of the indictment and guilty of the lesser included offense of intentional murder under Count II of the indictment were "inconsistent." He argues that his conviction for capital murder under Count I of the indictment should, as a consequence, be vacated.

*Id.* at 504. The court also rejected this claim, explaining that it was not inconsistent for the jury to find that petitioner killed his wife and then intentionally killed his father-in-law as Roland Harris ran toward his house.

Although unsuccessful as challenges to the capital conviction, the court cannot say that the issues raised by appellate counsel were objectively unreasonable in the sense that no reasonable attorney would have chosen them over others to assert. As the Eleventh Circuit explained recently, it does not matter whether appellate counsel actually considered other appeal issues, as long as those asserted were "objectively reasonable," that is, such that any reasonable lawyer might argue. *See Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). The court of appeals stated:

> To establish that counsel's performance was deficient, a petitioner must meet a high burden. "There is a strong presumption that counsel's performance was reasonable and adequate." *Michael* [*v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005)]. To overcome that presumption, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). Because this standard is objective, *id.* at 1315 n. 15, it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight. The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 1037, 145 L. Ed. 2d 985 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."); *Darden v. Wainwright*, 477 U.S. 168, 186, 106 S. Ct. 2464, 2474, 91 L. Ed. 2d 144 (1986) (rejecting a claim of ineffective assistance because "there are several reasons why counsel reasonably could have chosen to rely on a simple plea for mercy from petitioner himself"). "Even if many

> reasonable lawyers would not have done as defense counsel did at trial,
> no relief can be granted on ineffectiveness grounds unless it is shown
> that no reasonable lawyer, in the circumstances, would have done so."
> *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

*Id.* at 1301-02.

Under the circumstances of this crime, the court cannot say that counsel's choice of appeal issues was objectively unreasonable. Plainly, from the beginning, trial and appellate counsel were concerned with the use of the killing of Roland Harris as the basis for *two* capital charges, and were struggling to find a way to limit it to a single crime. Arguments were made at trial that the indictment was multiplicious and violated double jeopardy. Appellate counsel took a different tack, that Count I was defective because it charged two separate and distinct crimes. Although this proved unsuccessful, appellate counsel mounted a reasonable attack on the *capital* conviction under Count I. His appeal arguments did not focus merely on the non-capital charge in Count II, but sought to construct a challenge to the more serious conviction under Count I. This was not objectively unreasonable and, hence, was not ineffective assistance of counsel.

Moreover, the court notes that the petitioner has advanced the argument in this petition that *trial* counsel were ineffective for the reason that they did not seek a jury instruction that the killings of Cheryl Borden and Roland Harris were two distinct and separate non-capital offenses. *See* Claim B.15, *supra*. This is a variant of the

argument raised on direct appeal, that the killings were separate and distinct crimes, and, thus, not capital offenses.  If it is a reasonable argument for petitioner to advance today, it was a reasonable argument for counsel to assert on appeal.  It cannot be said that *no* reasonable lawyer would have advanced this issue on appeal.  Because the issue was "reasonable in the circumstances," the fact that other appellate issues might have been raised does not demonstrate ineffectiveness.  *See Johnson v. Alabama*, 256 F.3d 1156 (11th Cir. 2001).

The court finds, therefore, that the claim of ineffective assistance by appellate counsel is both procedurally defaulted and meritless.  Claim N is due to be denied.

**Claim O.**   *The State failed to comply with its discovery obligations under* Brady v. Maryland*.*

Claim O is identical to its Rule 32 predecessor.  *See* (Doc. 1, p. 61-62) and (Rule 32 R. Vol. 9, Tab 39, pp. 37-38).  Borden's entire legal and factual basis for the claim is fundamentally supported by an assertion that the "State failed to provide [him] with crucial exculpatory and impeachment evidence[,]" and that this failure deprived him of his "Fifth, Sixth, Eighth and Fourteenth Amendment rights. . ." as set out in *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States,* 405 U.S. 150 (1972).  (Doc. 1, p. 61-62).

Respondent correctly answers that the claim "is procedurally defaulted because the Rule 32 court and the Alabama Court of Criminal Appeals held that the claim did

179

not contain a sufficient factual basis under Rule 32.6(b), Ala.R.Crim.P." (Doc. 18, p. 91). The Alabama Court of Criminal Appeals affirmed the procedural dismissal in the Rule 32 appeal. (Rule 32 R., Vol. 14, Tab 60, p. 12) and *Borden v. State*, mem. op., Rule 32 R., Vol. 14, p. 30. Borden presents no reply to respondent's assertion that the claim was deemed defaulted by the state courts in accordance with its procedural rules. This claim is composed of legal conclusions only and completely lacks any factual basis. The claim clearly did not comply with state procedural rules governing specificity of pleadings and is therefore procedurally defaulted.

The court also believes that this claim is insufficiently pleaded under Rule 2 of the Rules Governing § 2254 Proceedings and can be summarily dismissed on that ground. Although petitioner alleges conclusorily that the prosecution failed to reveal to him exculpatory evidence, he never identifies such evidence or explains how it made a material difference in the outcome of his trial.

This is an action for relief under 28 U.S.C. § 2254. "'[A] discrete set of Rules governs federal habeas proceedings launched by state prisoners.'" *Benjamin v. Secretary for Dept. of Corrections*, 151 Fed. Appx. 869, 872 (11th Cir. 2005) (quoting *Mayle v. Felix*, 545 U.S. 644, 654, 125 S. Ct. 2562, 2569, 162 L. Ed. 2d 582 (2005)). Under these rules, "[h]abeas corpus petitions must meet heightened pleading

180

requirements." *McFarland v. Scott*, 512 U.S. 849, 856, 114 S. Ct. 2568, 2572, 129

L. Ed. 2d 666 (1994).  Under Rule 2(c) of the Rules Governing § 2254 Proceedings,

the petition must specify the grounds for relief and "state the facts supporting each

ground."  In *Benjamin*, the court of appeals pointed to the Supreme Court's rejection

of "notice pleading" in *habeas* actions, saying:

> Quoting the Advisory Committee's Note on Rule 4, the Supreme Court
> recently explained in *Mayle* that "'notice' pleading is not sufficient, for
> the petition is expected to state facts that point to a real possibility of
> constitutional error."

*Benjamin v. Secretary for Dept. of Corrections*, 151 Fed. Appx. 869, 872 (11th Cir.

2005) (quoting *Mayle v. Felix*, 545 U.S. 644, 655, 125 S. Ct. 2562, 2570. 162 L. Ed.

2d 582 (2005)).

As explained above, this petition simply fails to allege any facts in support of

this claim.  The purportedly exculpatory evidence suppressed by the state is not

identified, and the effect it had on the outcome of the trial is not alleged.  Without

such facts as would  "point to a real possibility of constitutional error," the court is

left with no way of attempting to determine the potential merit of the claim.  In effect,

petitioner asks the court to set an evidentiary hearing without ever alleging the facts

that show the need for a hearing.  Claim O simply fails to state a claim warranting

*habeas* relief, and it is due to be denied.

**Claim P**.   *The cumulative effect of all claims of error prejudiced Borden and entitles him to a new trial and sentencing hearing.*

Borden raises this claim for the first time in this petition for writ of *habeas corpus*. (Doc. 1, pp. 62-63). "Any [failure] to raise th[e] claim[] until now means that [Borden] deprived the state courts of 'the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding.'" *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (citing *Picard v. Connor,* 404 U.S. 270, 276 (1971)). The claim is also "procedurally defaulted, even absent a state court determination to that effect, [because] it is clear from state law that any future attempts at exhaustion would be futile." *Id.*  (citing *Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir.), *cert. denied*, 525 U.S. 963 (1998)).  If Borden were to attempt to raise this claim in another Rule 32 petition, it would be defaulted on numerous grounds: namely, it would be an impermissibly successive petition, filed outside the statute of limitation applicable to post-conviction petitions, and a claim that petitioner was required to, but did not, raise at trial, on appeal, or during collateral proceedings.  Rule 32.2(a)(3) and (5), and Rule 32.2 (b),(c), and (d).   For the foregoing reasons, this court is precluded from further review of the claim because it would be barred under independent and adequate state procedural rules.

Alternatively, the allegation does nothing more that re-plead cumulatively all of the claims previously raised and addressed above.  Because the court has found

that none of the claims warrants relief, pleading them again in combination adds nothing to the analysis.  The sum is no greater than the parts.  Petitioner cannot fashion a meritorious claim for *habeas* relief out of a collection of unmeritorious claims.  Claim P is due to be denied.

## **CONCLUSION**

For all the reasons set out in this Memorandum of Opinion, Borden's petition for writ of *habeas corpus* (Doc. 1) and his motion for an evidentiary hearing (Doc. 24) are due to be denied.  A separate order denying the *habeas* relief he seeks will be entered.

**DONE** and **ORDERED** this the 9th day of September, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge